IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUNCIL FOR RESPONSIBLE NUTRITION, and ANNETTE DICKINSON <br><br> Plaintiffs, <br><br> v. <br><br> HARTFORD CASUALTY INSURANCE COMPANY <br><br> Serve on: <br> Hartford Casualty Insurance Company <br> Hartford Plaza, 690 Asylum Avenue <br> Hartford, CT 06115 <br><br> Defendant. | Civil Action No.: |

**COMPLAINT AND JURY DEMAND**

Plaintiffs Council for Responsible Nutrition ("CRN") and Annette Dickinson ("Dickinson") (herein after collectively referred to as "Plaintiffs") by and through their attorneys Whitney & Bogris, LLP and by way of this Complaint against Hartford Casualty Insurance Company ("Hartford"), allege and say:

**I.   INTRODUCTION**

1. This is a Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201 and §2202 respectively, in which Plaintiffs seek a determination of the scope and nature of coverage to be afforded under a certain policy of insurance issued by Hartford. Further, Plaintiffs seek damages for Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing.

**II.   PARTIES**

2. At all times hereinafter mentioned, CRN was and is a non-profit corporation duly formed and existing by virtue of the laws of the District of Columbia, with its principal place of business in the District of Columbia.

3. At all times hereinafter mentioned, Dickinson was a citizen and resident of Mount Airy, Maryland, or Minnesota where she currently resides.

4. At all times hereinafter mentioned, Hartford was and is a corporation duly formed and existing by virtue of the laws of the State of Indiana, with its principal place of business in Connecticut. At all times relevant to this Complaint, Hartford was and is licensed to conduct business, and is conducting business, in the District of Columbia.

### III. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391 (a) and (c).

### IV. FACTUAL BACKGROUND

**A.  The Hartford Policy**

7. Hartford issued a commercial business liability policy to CRN under policy number 42 SBA FT4964 (the "Hartford Policy"), whose policy period was April 1, 2004 through April 1, 2005.

8. Pursuant to Section C- "Who is an Insured" of The Hartford policy, CRN is an insured under the Hartford Policy.

9. Pursuant to Section C- "Who is an Insured" of The Hartford policy, Dickinson is an insured under the Hartford Policy.

10. In pertinent part, the Insuring Agreement of the Hartford Policy provides:

**A. COVERAGES**

**1. BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

**Insuring Agreement**

a. We will pay on behalf of the Insured those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages.

11. "Personal and advertising injury" is defined in the Hartford Policy as follows:

"Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:

*    *    *

d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's organization's goods, products or services;

12. On its website, Hartford represents to insurance consumers that "Personal Injury and Advertising Injury Coverage:"

Covers legal defense costs and damages from lawsuits that claim false, misleading statements, advertisements, promotional flyers or brochures, web sites, etc.

**B.    The ConsumerLab Lawsuit**

13. On or about April 5, 2005 ConsumerLab.com, LLC ("ConsumerLab") filed a Verified Complaint against CRN and Dickinson in the Supreme Court of New York, County of

3

Westchester (the "ConsumerLab Complaint"). A true and accurate copy of that lawsuit is attached hereto as Exhibit A.

14. As set forth more fully in the ConsumerLab Complaint and below, the ConsumerLab Complaint alleges that CRN and/or Dickinson made statements that were published orally, in writing, and/or electronically that slandered or libeled ConsumerLab and thereby disparaged ConsumerLab's services.

15. The ConsumerLab Complaint contains allegations that CRN and/or Dickinson, in publishing their allegedly defamatory statements, acted in a negligent manner and with a reckless disregard for the truth.

16. In particular, the ConsumerLab Complaint avers that CRN and/or Dickinson:

(a) made "defamatory statements . . . with knowledge of the falsity of such statements *or with reckless disregard of whether or not such statements were false.*"

(b) "published their defamatory statements without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties."

(c) "published their injurious falsehood in a grossly irresponsible manner."

(d) "published their injurious falsehoods without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties."

17. CRN and Dickinson have denied all substantive allegations of the ConsumerLab Complaint.

4

18.     Further, based on the allegations in the ConsumerLab Complaint, the ConsumerLab Complaint sets forth claims upon which CRN and Dickinson may be held liable for "slander" and "libel" and "disparage[ment]," as those terms are generally understood. Nothing in this Complaint is intended to suggest that the allegations of the ConsumerLab Complaint have any merit.

19.     The terms "slander" and "libel" and "disparage" are not defined in the Hartford Policy or in the ConsumerLab Complaint.

20.     The generally accepted and ordinary meaning of "slander" is "a spoken or oral defamation of another which is published to others and which tends to damage that person's reputation, ability to conduct that person's business or profession, and which holds that person up to disgrace and humiliation."

21.     The generally accepted and ordinary meaning of "libel" is a "false and unprivileged publication by letter, or otherwise, which exposes a person to distrust, hatred, contempt, ridicule or obloquy or which causes such person to be avoided, or which has a tendency to injure such person in his office, occupation, business or employment."

22.     The generally accepted and ordinary meaning of "disparage" is "to lower in esteem or reputation, to lower in rank by action or words, to speak slightly of, or to run down."

23.     On or about May 16, 2006, the Honorable Kenneth W. Rudolph of the Supreme Court of the State of New York, Commercial Division, Westchester County entered an order dismissing all but one count of the ConsumerLab Complaint for failure to state a claim upon which relief could be granted. A true and accurate copy of that Order is attached hereto as Exhibit B.

24. The Order permits ConsumerLab's count for defamation to remain and specifically notes that the ConsumerLab Complaint alleges that the statements made by the defendants "were false and were made with *actual malice* damaging plaintiff's business and reputation." (emphasis added).

25. In libel law, "actual malice" can be established by proving that the defamatory statements were made with reckless disregard of whether the statement was false or not.

26. In light of the allegations contained in the ConsumerLab Complaint and noted in the Judge's Order, the Complaint sets forth claims upon which CRN and/or Dickinson may be held liable for their conduct *without* demonstrating any intent or expectation on the part of CRN or Dickinson to injure ConsumerLab and based upon the lesser showing that they acted with reckless disregard of the truth.

27. Inasmuch as ConsumerLab's allegations of publication of allegedly false statements with reckless disregard of the truth by CRN and/or Dickinson falls within the Hartford Policies' definition of "personal and advertising injury," Hartford is obligated to defend and indemnify CRN and Dickinson with respect to the ConsumerLab Complaint.

28. ConsumerLab has alleged that CRN and/or Dickinson published statements that damaged ConsumerLab's reputation and its ability to conduct business. Inasmuch as such conduct falls within the Hartford Policy's definition of "personal and advertising injury" (i.e., that CRN and/or Dickinson's oral, written or electronic publication of material slander[ed] or libel[ed] [ConsumerLab] or disparaged [ConsumerLab's] organization's goods, products or services), Hartford is and at all times was obligated to defend CRN and Dickinson with respect to the ConsumerLab Complaint.

29.     Inasmuch as ConsumerLab has alleged that CRN and/or Dickinson negligently and recklessly made statements that damaged ConsumerLab's reputation, and that such statements were made with a reckless or negligent disregard for their truth or falsity, Hartford is and at all times was also obligated to defend CRN and Dickinson with respect to the ConsumerLab Complaint.

  **C.**    **The Hartford's Disclaimer**

30.     In April of 2005, CRN and Dickinson timely tendered the ConsumerLab Complaint to Hartford.

31.     On or about April 29, 2005, Hartford disclaimed any duty to defend or indemnify ConsumerLab with regard to the ConsumerLab Complaint.

32.     The sole basis Hartford's disclaimer and denial of coverage was Exclusion 2(a) of the Hartford Policy, which states "[t]his insurance does not apply to Personal and advertising injury arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting 'Personal and advertising injury.'"

33.     In particular, Hartford quoted certain limited portions of the ConsumerLab Complaint and stated that "it cannot reasonably be asserted that the claims being made are not within the scope of exclusion a(2)."

34.     As discussed above, the coverage grant of the Hartford Policy expressly provides coverage for injuries arising from "personal and advertising injury" including intentional conduct such as "libel," "slander" and "defamation."

35.     Further, the ConsumerLab Complaint contains allegations of negligent and reckless conduct that would fall outside of the terms of the exclusion relied on by Hartford.

36. CRN and Dickinson have repeatedly requested that Hartford reconsider Hartford's improper disclaimer and have specifically advised Hartford of the reasons the disclaimer was erroneous.

37. In particular, on June 16, 2005 counsel for CRN and Dickinson advised Hartford that because of the allegations of negligent and reckless conduct contained in the ConsumerLab Complaint, the exclusion relied on by Hartford had no application and coverage was triggered under the Hartford Policy.

38. In response to the letter of CRN's and Dickinson's counsel of June 16, 2005, Hartford reasserted and reaffirmed its disclaimer that the claims of ConsumerLab were not covered under the Hartford Policy.

39. On January 24, 2006, counsel for CRN and Dickinson sent yet another letter requesting that Hartford reconsider the disclaimer based on its broad, improper and unsustainable reading of the exclusions contained in the Hartford Policy.

40. Despite these repeated requests, Hartford has repeatedly rejected CRN and Dickinson's request that Hartford defend CRN and Dickinson.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment)**

41. Plaintiffs CRN and Dickinson incorporate as if fully set forth herein the allegations contained within Paragraphs 1 through 40 of this Complaint.

42. The allegations of the ConsumerLab Complaint constitute a claim against CRN and Dickinson for "personal and advertising injury" as defined by the Hartford Policy.

43. Hartford has failed to honor its defense obligations to CRN and Dickinson for the ConsumerLab Complaint under the Hartford Policy.

44. As a result of the foregoing, an actual controversy exists between the Plaintiffs and Hartford.

**WHEREFORE**, Plaintiffs CRN and Dickinson request that this Honorable Court enter judgment:

A. Declaring that Hartford is obligated, pursuant to the terms of the Hartford Policy to defend CRN and Dickinson with respect to the ConsumerLab Complaint;

B. Declaring that Hartford is obligated, pursuant to the terms of the Hartford Policy to reimburse CRN and Dickinson for all costs incurred by them to date in their defense in the ConsumerLab Action;

C. Awarding interest, attorneys fees and costs to CRN and Dickinson; and

D. Providing such other and further relief as this Honorable Court deems just and equitable.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

45. Plaintiffs CRN and Dickinson incorporate as if fully set forth herein the allegations contained within Paragraphs 1 through 44 of this Complaint.

46. CRN and Hartford entered into an insurance contract, the Hartford Policy, pursuant to which Hartford contractually obligated itself to defend and indemnify CRN and Dickinson against claims for "personal and advertising injury."

47. CRN and Dickinson have satisfied all conditions precedent to coverage under the Hartford Policies with respect to the ConsumerLab Complaint.

48. CRN and Dickinson repeatedly have demanded that Hartford satisfy its contractual obligations to them by promptly assuming the defense of CRN and Dickinson in the ConsumerLab Action.

49. Hartford has breached its contractual obligations under the Hartford Policy and continues to breach its obligations by refusing to defend CRN and Dickinson and by refusing to reimburse defense costs and expenses already incurred by CRN and Dickinson.

50. CRN and Dickinson have incurred significant costs and expense and continue to suffer losses as a consequence of Hartford's breach of contract.

**WHEREFORE**, Plaintiffs CRN and Dickinson request that this Honorable Court enter judgment:

A. Against Hartford and in favor of CRN and Dickinson and awarding to CRN and Dickinson all damages incurred by them as a result of Hartford's breach of contract and reimbursing CRN and Dickinson for all amounts spent in their defense of the underlying litigation;

B. Awarding interest, attorneys fees and costs to CRN and Dickinson; and

C. Providing such other and further relief as this Honorable Court deems just and equitable.

**THIRD CAUSE OF ACTION**
**(Breach of the Duty of Good Faith and Fair Dealing )**

51. Plaintiffs CRN and Dickinson incorporate as if fully set forth herein the allegations contained within Paragraphs 1 through 50 of this Complaint.

52. As insureds with a contractual relationship with Hartford, CRN and Dickinson were entitled to have Hartford exercise good faith and fair dealing in the performance of its contractual obligations to investigate and defend CRN and Dickinson with respect to claims made against CRN and Dickinson that fell within the insuring agreement of the Hartford Policy.

53. Hartford breached its obligation of good faith and fair dealing owed to the insureds, CRN and Dickinson, by, *inter alia*: failing to properly investigate claims and actions

for a determination of its coverage and defense obligations and instead denying coverage and defense pursuant to pro forma letters and without proper consideration of the specific facts of the claim.

54. In refusing to defend the ConsumerLab Complaint as alleged above, Hartford has knowingly acted in a manner that conflicted with the interests of CRN and Dickinson, and willfully and improperly elevated its own interests above the interests of CRN and Dickinson.

55. In breaching its obligation of good faith and fair dealing to CRN and Dickinson, Hartford's conduct was consciously wrongful, intentional, recklessly indifferent and willful, and its denial of coverage lacked a reasonable basis.

56. As a result of the intentional, reckless and willful conduct of Hartford, CRN and Dickinson have suffered and continue to suffer significant losses and damages.

**WHEREFORE**, Plaintiffs CRN and Dickinson request that this Honorable Court enter judgment:

A. Against Hartford and in favor of CRN and Dickinson and awarding to CRN and Dickinson all damages incurred by them and caused by the misconduct of Hartford;

B. Awarding CRN and Dickinson extra-contractual and punitive damages from the Hartford for its breach of its duty of good faith and fair dealing;

C. Awarding interest, attorneys fees and costs to CRN and Dickinson; and

D. Providing such other and further relief as this Honorable Court deems just and equitable.

## JURY DEMAND

Pursuant to Fed.R.Civ.P. 38, Plaintiffs request a trial by Jury on all issues so triable.

Respectfully submitted,

*/s/ Janet K. Coleman*

Janet K. Coleman
DC Bar No. 497902
WHITNEY & BOGRIS, LLP
401 Washington Avenue
Towson, Maryland 21204
410-583-8000
**ATTORNEYS FOR COUNCIL FOR RESPONSIBLE NUTRITION AND ANNETTE DICKINSON**