**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COUNCIL FOR RESPONSIBLE NUTRITION, | ) | |
| and ANNETTE DICKINSON | ) | |
| | ) | Civil Action No.: 06-1590 (RCM) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HARTFORD CASUALTY INSURANCE | ) | |
| COMPANY | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**STATEMENT OF MATERIAL FACTS IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Council for Responsible Nutrition ("CRN") and Annette Dickinson, Ph.D. ("Dr. Dickinson"), by and through their undersigned counsel, submit this statement of material facts in support of their motion for summary judgment against Hartford Casualty Insurance Company ("Hartford").

**STATEMENT OF FACTS**

**A.      The Underlying Complaint**

1.      This action arises out of the alleged injuries suffered by ConsumerLab as a result of CRN's and Dr. Dickinson's filing of a "Request for Investigation" with the FTC.  (See Underlying Complaint at ¶ 8, attached hereto as Exhibit A).

2.      On or about April 5, 2005, ConsumerLab filed an action in the Supreme Court of the State of New York captioned *ConsumerLab.com, LLC, v. The Council for Responsible Nutrition, et al.*, Index no. 05-04998 ("Underlying Action" or "Underlying Complaint") (Id.)

3.      This Underlying Complaint alleges that on or about January 12, 2005, CRN and Dr. Dickinson filed a "Request for Investigation" with the FTC that contained a number of false and defamatory statements.  (Id. at ¶¶ 8, 15).

4.      The Underlying Complaint further alleges that this "Request for Investigation" was purportedly simultaneously posted on CRN's website. (Id. at ¶ 9).

5.      The Underlying Complaint further alleges that CRN and Dr. Dickinson furnished copies of the "Request for Investigation" to reporters and, as a result, an article referring to it was published in the Wall Street Journal. (Id. at ¶ 12).

6.      ConsumerLab also alleged that CRN and Dr. Dickinson made a number of false statements with the purported principal purpose of silencing ConsumerLab, thereby cutting off the flow of consumer information published by ConsumerLab in an effort to shield CRN members from any adverse test results of products manufactured and distributed by CRN's members.  (Id. at ¶ 13).

7.      Importantly, ConsumerLab alleged that "[t]he defamatory statements were made by defendants with knowledge of the falsity of such statements or with reckless disregard of whether or not such statements were false." (Id. at ¶ 14).

8.      The Underlying Complaint avers that CRN and/or Dr. Dickinson made "defamatory statements . . . with knowledge of the falsity of such statements or with reckless disregard of whether or not such statements were false." (Id.)

9.      The Underlying Complaint also alleges that CRN and/or Dr. Dickinson "published their defamatory statements without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." (Id. at ¶¶31, 40).

10. The Underlying Complaint also contends that CRN and/or Dr. Dickinson "published their injurious falsehood in a grossly irresponsible manner." (Id. at ¶¶ 30, 39).

11. Further, the Underlying Complaint avers that CRN and/or Dr. Dickinson "published their defamatory statements with actual malice." (Id. at ¶¶ 29, 37, 49).

12. ConsumerLab's Underlying Complaint sought damages based on eight purported causes of action for: (1) defamation; (2) injurious falsehoods; (3) trade libel; (4) infliction of intentional harm; (5) unfair trade practices; (6) unfair competition; (7) tortious interference with existing contractual relationships; and (8) tortious interference with prospective contractual relationships. (Id.)

13. On May 16, 2006 the Court entered an order dismissing all but the first cause of action for defamation. (See Decision, attached hereto as Exhibit B).

14. In its decision, the Court expressly found that the Underlying Complaint alleged that the statements made to the FTC "were made with actual malice." (Id. at p. 5).

15. CRN and Dr. Dickinson vigorously disputed all of ConsumerLab's allegations on the merits. Ultimately, after some initial motion practice and discovery, ConsumerLab agreed voluntarily to dismiss its lawsuit with prejudice, with no finding or admission of liability, and with no money to be paid by CRN or Dr. Dickinson. (See Stipulation for Discontinuance and Releases executed by ConsumerLab, attached hereto as Exhibit C).

**B.     The Hartford Policy**

16. Hartford issued a Spectrum Business Insurance Policy to CRN, policy number 42 SBA FT 4964, in effect for the April 1, 2004 through April 1, 2005 policy period, and having personal and advertising injury limits of $1,000,000. (See Hartford Policy, attached hereto as Exhibit D).

17.    The insuring agreement of the Hartford Policy provides, in pertinent part:

**1.    BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

**Insuring Agreement**

a.    We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any suit seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage" or "personal and advertising injury" to which this insurance does not apply.

                    *        *        *

b.    This insurance applies to:

                    *        *        *

(2)    "Personal and advertising injury" caused by an offense arising out of your business, but only if the offense is committed in the "coverage territory" during the policy period.


(See Exhibit D, at HART000051).

18.    The Hartford Policy also contains the following exclusion, which Hartford has

contended applies to this matter:

**B.    EXCLUSIONS**

**1.    Applicable to Business Liability Coverage**

This insurance does not apply to:

**a.    Expected or Intended Injury**

                    *        *        *

4

      **(2)**    "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury."

(<u>Id.</u> at HART 000054).

19.      The Hartford Policy contains the following provision with respect to who is an "insured":

**C.**      **WHO IS AN INSURED**

      **1.**      If you are designated in the Declarations as:

                        *        *        *

          **d.**      An organization other than a partnership or joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect o their liability as stockholders.

(<u>Id.</u> at HART 000059).

20.      The Hartford Policy contains the following relevant definitions:

**G.**      **LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

      **15.**      "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

                        *        *        *

          **d.**      Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services

                        *        *        *

      **19.**      "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

(Id. at HART 000069-70).

**C.    Hartford's Refusal to Defend**

21.    In April of 2005, CRN and Dr. Dickinson timely tendered the Underlying Complaint to Hartford and requested that Hartford undertake their defense in the Underlying Action. (See ¶ 30 of the Declaratory Judgment Complaint, Document #1 on the docket of this matter).

22.    By letter dated April 29, 2005 Hartford, while acknowledging that the terms of the basic coverage grant were met, disclaimed any obligation to defend or indemnify CRN in connection with the Underlying Action based solely on Exclusion 1.a.(2) of the Policy, which provides:

> This insurance does not apply to Personal and advertising injury arising out of an offense committed by or at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury."

(See April 29, 2005 letter from Hartford attached hereto as Exhibit E).

23.    CRN and Dr. Dickinson's coverage counsel responded to Hartford's denial of coverage on June 16, 2005 and advised that, because the Underlying Action contained allegations of negligent, reckless and intentional conduct, the exclusion cited by Hartford did not extinguish its duty to defend.  (See June 16, 2005 letter from Covington & Burling attached hereto as Exhibit F).

24.    Hartford responded to this letter by again disclaiming any obligation under the Policy. (See September 29, 2005 letter from Hartford attached hereto as Exhibit G).

25.    In a further attempt to convince Hartford to reconsider its refusal to defend, coverage counsel for CRN and Dr. Dickinson wrote another letter to Hartford dated January 24, 2006.  (See January 24, 2006 letter attached hereto as Exhibit H).

26.    That letter drew Hartford's attention to the Memorandum of Law filed in support of CRN and Dr. Dickinson's motion to dismiss the Underlying Action, which had been previously provided to Hartford.  (See Exhibit H at p. 7 and Memorandum of Law attached hereto as Exhibit I).

27.    As noted in the January 24, 2006 letter, this Memorandum set forth additional facts that confirmed that the CRN and Dr. Dickinson did not harbor any expectation of committing the tort of libel or slander against ConsumerLab.  (Id.)

28.    The January 24, 206 letter and the Memorandum advised Hartford of the following facts:

- The insureds had objectively documented reasons to believe that their statements were either true or a legitimate expression of opinion (See Exhibit H at p.7);

- The insureds' statements were made in the context of a quasi-judicial proceeding in which CRN petitioned the FTC to investigate ConsumerLab's practices and take appropriate action and were thus privileged (Id.); and

- The insureds' purpose in petitioning the FTC was to protect the public from deceptive practices (Id.).

29.    Hartford contended that it need not consider any evidence extrinsic to the "eight corners" of the Underlying Complaint and the Hartford Policy, and it continued to deny any duty to defend (See Exhibit G at p.1).

Respectfully submitted,


_____/s Janet K. Coleman_____
Janet K. Coleman, Bar No. 497902
WHITNEY & BOGRIS, LLP
401 Washington Avenue
Towson, Maryland 21204
(410) 583-8000 (tel.)
*Counsel for Plaintiffs Council for Responsible*
*Nutrition and Annette Dickinson*