**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COUNCIL FOR RESPONSIBLE NUTRITION, and ANNETTE DICKINSON | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 06-1590 (RCM) |
| v. | ) ) | |
| HARTFORD CASUALTY INSURANCE COMPANY | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Council for Responsible Nutrition ("CRN") and Annette Dickinson, Ph.D. ("Dr. Dickinson"), by and through their undersigned counsel, submit this memorandum of law in support of their motion for partial summary judgment[1] against Hartford Casualty Insurance Company ("Hartford").

---

[1] This motion is made in accordance with the Court's Initial Scheduling Order. During the initial scheduling conference, the Court denied Plaintiffs' request for a brief discovery period and ordered the parties to move for Summary Judgment on a schedule entered by the Court. Plaintiffs respectfully reserve the right to seek any necessary discovery at the appropriate time.

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

I. INTRODUCTION .......................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................ 3

    A. The Underlying Complaint ..................................................................................... 3

    B. The Hartford Policy ................................................................................................ 5

        1. The Coverage Grant ........................................................................................ 5

        2. Exclusions ....................................................................................................... 6

        3. Who is an Insured .......................................................................................... 6

        4. Policy Definitions .......................................................................................... 6

    C. Hartford's Refusal to Defend ................................................................................. 7

III. ARGUMENT ............................................................................................................... 9

    A. Hartford Was Obligated to Defend CRN and Dr. Dickinson .............................. 9

        1. The Allegations of the ConsumerLab Complaint Trigger Hartford's
           Duty to Defend .............................................................................................. 9

        2. Hartford Cannot Satisfy its Burden of Demonstrating That
           Coverage is Precluded by any Policy Exclusion ........................................... 11

           a. Hartford Cannot Demonstrate That All Claims Asserted by
              ConsumerLabs Fall Wholly Within Exclusion 1.a.(2) .......................... 12

           b. The Hartford Policy is Ambiguous and Must be Construed
              Against Hartford ..................................................................................... 17

    B. Hartford Ignored Extrinsic Evidence that Confirmed its Duty to
      Defend ..................................................................................................................... 20

III. CONCLUSION ............................................................................................................ 22

## I.    <u>INTRODUCTION</u>

This is an insurance coverage dispute arising out of Hartford's refusal to defend its insureds, CRN and Dr. Dickinson, in a lawsuit filed by ConsumerLab.com, LLC ("ConsumerLab").    The underlying plaintiff has now voluntarily dismissed its suit with prejudice, with no finding or admission of liability and no settlement payment by CRN or Dr. Dickinson.    Accordingly, this coverage dispute is limited to the following questions:   Did Hartford have a duty to defend CRN and Dr. Dickinson?  If so, what amount does Hartford owe to reimburse its insureds for the cost of their defense and other damages resulting from its breach of the duty to defend?  Finally, did Hartford breach its duty of good faith and fair dealing by refusing to defend, and if so what damages are owed for that wrongful conduct?  This motion for partial summary judgment addresses the first of these questions, namely the key threshold question of whether Hartford owed a duty to defend CRN and Dr. Dickinson.

The ConsumerLab complaint sought damages for allegedly defamatory statements made by CRN and Dr. Dickinson in a "Request for Investigation" filed with the United States Federal Trade Commission ("FTC").  The Hartford Policy expressly promises, <u>inter alia</u>, to defend CRN and Dr. Dickinson for suits alleging "personal and advertising injury," a term that is defined to include "publication of material that slanders or libels a person or organization."

Hartford cannot and does not dispute that ConsumerLab's allegations of defamation fall squarely within this grant of coverage.  Instead, Hartford relies solely on exclusion 1.a.(2) of its Policy, which precludes coverage for "Personal and advertising injury arising out of an offense committed by or at the direction of or with the consent or acquiescence of the insured <u>with the expectation of inflicting 'personal and advertising injury</u>.'"  (Emphasis added.)

Hartford cannot meet its heavy burden of showing that ConsumerLab's allegations fall entirely within this exclusion.  First, if this exclusion has any effect at all – and some courts have given it none, because on its face it contradicts the policy's grant of "personal and advertising injury" coverage – it must be construed narrowly.  It cannot deprive an insured of defense protection against a defamation claim like this one, which the underlying plaintiff itself apparently concluded lacked sufficient merit to pursue further.  Second, ConsumerLab's complaint expressly alleged that the purported offending statements were made with "actual malice" – a term of art in the context of defamation that potentially includes, as a matter of law, "reckless disregard of whether [a statement] was false or not."  New York Times v. Sullivan, 376 U.S. 254, 280 (1964) (emphasis added).  Moreover, the complaint even included allegations amounting to merely negligent conduct, such as statements made "without due consideration for the standards . . . ordinarily followed by responsible parties."  Any of these allegations, if accepted by the tribunal, could have given rise to liability for conduct that fell far short of an expected or intended infliction of defamation injury – that is, far short of the egregious misconduct that might justify letting an insurer escape its own affirmative promise to cover defamation claims.

Even though the Complaint on its face established Hartford's duty to defend, CRN provided Hartford with additional information during the course of the underlying litigation. This information confirmed that CRN and Dr. Dickinson did not make the allegedly defamatory statements with the "expectation of inflicting 'personal and advertising injury.'"  Hartford, however, deliberately ignored that extrinsic evidence and persisted in erroneously denying its insureds the defense promised under its Policy.

## II.    STATEMENT OF FACTS

### A.    The Underlying Complaint

This action arises out of the alleged injuries suffered by ConsumerLab as a result of CRN's and Dr. Dickinson's filing of a "Request for Investigation" with the FTC.  (See Underlying Complaint at ¶ 8, attached hereto as Exhibit "A.") On or about April 5, 2005, ConsumerLab filed an action in the Supreme Court of the State of New York captioned *ConsumerLab.com, LLC, v. The Council for Responsible Nutrition, et al.*, Index no. 05-04998 ("Underlying Action" or "Underlying Complaint") (Id.)

This Underlying Complaint alleges that on or about January 12, 2005, CRN and Dr. Dickinson filed a "Request for Investigation" with the FTC that contained a number of false and defamatory statements.  (Id. at ¶¶ 8, 15.)  This "Request for Investigation" was purportedly simultaneously posted on CRN's website. (Id. at ¶ 9.)  The Underlying Complaint further alleges that CRN and Dr. Dickinson furnished copies of the "Request for Investigation" to reporters and, as a result, an article referring to it was published in the Wall Street Journal. (Id. at ¶ 12.) ConsumerLab also alleged that CRN and Dr. Dickinson made a number of false statements with the purported principal purpose of silencing ConsumerLab, thereby cutting off the flow of consumer information published by ConsumerLab in an effort to shield CRN members from any adverse test results of products manufactured and distributed by CRN's members.  (Id. at ¶ 13.) Importantly, ConsumerLab alleged that "[t]he defamatory statements were made by defendants with knowledge of the falsity of such statements *or with reckless disregard of whether or not such statements were false*." (Id. at ¶ 14) (emphasis added).

In particular, the Underlying Complaint avers that CRN and/or Dr. Dickinson:

- made "defamatory statements . . . with knowledge of the falsity of such statements *or with reckless disregard of whether or not such statements were false*." (Id.) (emphasis added);

- "published their defamatory statements *without due consideration* for the standards of information gathering and dissemination ordinarily followed by responsible parties." (Id. at ¶¶31, 40) (emphasis added);

- "published their injurious falsehood in a *grossly irresponsible* manner." (Id. at ¶¶ 30, 39) (emphasis added);

- "published their defamatory statements with *actual malice*." (Id. at ¶¶ 29, 37, 49) (emphasis added).

ConsumerLab's Underlying Complaint sought damages based on eight purported causes of action for: (1) defamation; (2) injurious falsehoods; (3) trade libel; (4) infliction of intentional harm; (5) unfair trade practices; (6) unfair competition; (7) tortious interference with existing contractual relationships; and (8) tortious interference with prospective contractual relationships. (Id.) On May 16, 2006 the Court entered an order dismissing all but the first cause of action for defamation. (See Decision, attached hereto as Exhibit B.) In its decision, the Court expressly found that the Underlying Complaint alleged that the statements made to the FTC "were made with *actual malice*." (Id. at p. 5.)

CRN and Dr. Dickinson vigorously disputed all of ConsumerLab's allegations on the merits. Ultimately, after some initial motion practice and discovery, ConsumerLab agreed voluntarily to dismiss its lawsuit with prejudice, with no finding or admission of liability, and with no money to be paid by CRN or Dr. Dickinson. (See Stipulation for Discontinuance and Releases executed by ConsumerLab, attached hereto as Exhibit C.)

B.    **The Hartford Policy**

Hartford issued a Spectrum Business Insurance Policy to CRN, policy number 42 SBA FT 4964, in effect for the April 1, 2004 through April 1, 2005 policy period, and having personal and advertising injury limits of $1,000,000. (See Hartford Policy, attached hereto as Exhibit D.)

1.    **The Coverage Grant**

The coverage grant of the Hartford Policy provides:

1.    **BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

**Insuring Agreement**

a.    We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any suit seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage" or "personal and advertising injury" to which this insurance does not apply.

*        *        *

b.    This insurance applies to:

*        *        *

(2)    "Personal and advertising injury" caused by an offense arising out of your business, but only if the offense is committed in the "coverage territory" during the policy period.

(See Exhibit D, at HART000051.)  Hartford has conceded that the allegations of the Underlying Complaint satisfy this Insuring Agreement.

## 2. <u>Exclusions</u>

The Hartford Policy also contains the following exclusion, which Hartford has contended applies to this matter:

**B. EXCLUSIONS**

    **1. Applicable to Business Liability Coverage**

        This insurance does not apply to:

        **a. Expected or Intended Injury**

            *    *    *

        **(2)** "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury."

(<u>Id.</u> at HART 000054.)

## 3. <u>Who is an Insured</u>

The Hartford Policy contains the following provision with respect to who is an "insured":

**C. WHO IS AN INSURED**

    **1.** If you are designated in the Declarations as:

            *    *    *

        **d.** An organization other than a partnership or joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect o their liability as stockholders.

(<u>Id.</u> at HART 000059.)

## 3. <u>Policy Definitions</u>

The Hartford Policy contains the following relevant definitions:

G.    **LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

15.    "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

\*        \*        \*

d.    Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services

\*        \*        \*

19.    "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

(Id. at HART 000069-70.)

C.    **Hartford's Refusal to Defend**

In April of 2005, CRN and Dr. Dickinson timely tendered the Underlying Complaint to Hartford and requested that Hartford undertake their defense in the Underlying Action. (See ¶ 30 of the Declaratory Judgment Complaint, Document #1 on the docket of this matter.) By letter dated April 29, 2005 Hartford, while acknowledging that the terms of the basic coverage grant were met, disclaimed any obligation to defend or indemnify CRN in connection with the Underlying Action based solely on Exclusion 1.a.(2) of the Policy, which provides:

This insurance does not apply to Personal and advertising injury arising out of an offense committed by or at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury."

(See April 29, 2005 letter from Hartford attached hereto as Exhibit E.)

CRN and Dr. Dickinson's coverage counsel responded to Hartford's denial of coverage on June 16, 2005 and advised that, because the Underlying Action contained allegations of negligent, reckless and intentional conduct, the exclusion cited by Hartford did not extinguish its

duty to defend.  (See June 16, 2005 letter from Covington & Burling attached hereto as Exhibit F.)  Hartford responded to this letter by again disclaiming any obligation under the Policy. (See September 29, 2005 letter from Hartford attached hereto as Exhibit G.)  In a further attempt to convince Hartford to reconsider its refusal to defend, coverage counsel for CRN and Dr. Dickinson wrote another letter to Hartford dated January 24, 2006.  (See January 24, 2006 letter attached hereto as Exhibit H.)  That letter drew Hartford's attention to the Memorandum of Law filed in support of CRN and Dr. Dickinson's motion to dismiss the Underlying Action, which had been previously provided to Hartford.  (See Exhibit H at p. 7 and Memorandum of Law attached hereto as Exhibit I.)  As noted in the January 24, 2006 letter, this Memorandum set forth additional facts that confirmed that the CRN and Dr. Dickinson did not harbor any expectation of committing the tort of libel or slander against ConsumerLab.  The January 24, 206 letter and the Memorandum advised Hartford of the following facts:

- The insureds had objectively documented reasons to believe that their statements were either true or a legitimate expression of opinion (See Exhibit H at p.7);

- The insureds' statements were made in the context of a quasi-judicial proceeding in which CRN petitioned the FTC to investigate ConsumerLab's practices and take appropriate action and were thus privileged (Id.); and

- The insureds' purpose in petitioning the FTC was to protect the public from deceptive practices (Id.).

The insureds' repeated requests for a defense and submissions of evidence confirming their right to that defense fell on deaf ears. Hartford contended that it need not consider any evidence outside of the "eight corners" of the Underlying Complaint and the Hartford Policy, and it continued to deny any duty to defend (See Exhibit G at p.1).

### III.    ARGUMENT

**A.    Hartford Was Obligated to Defend CRN and Dr. Dickinson**

### 1.    The Allegations of the ConsumerLab Complaint Trigger Hartford's Duty to Defend

As a fundamental tenet of insurance law, an insurer's duty to defend is conceptually distinct from and legally independent of its duty to indemnify. Sherman v. Ambassador Ins. Co., 670 F.2d 251, 258-59 (D.C. Cir. 1981). This duty, broadly construed, extends beyond the duty to indemnify and requires defense of all claims even if only a portion of those claims potentially fall within the terms and conditions of the policy. Commonwealth Lloyds Ins. Co. v. Marshall, Neil & Pauley, Inc., 32 F. Supp. 2d 14 (D.D.C. 1998) (citing Beltway Mgmt. Co. v. Lexington-Landmark Ins. Co., 746 F. Supp. 1145, 1149 (D.D.C. 1990); Wash. Occupational Health Assoc., Inc. v. Twin City Fire Ins. Co., 670 F. Supp. 12, 16 (D.D.C. 1987)).

In determining whether the duty to defend applies, the insurance policy is compared to the allegations of the complaint, an exercise often called the "eight-corners" approach. Interstate Fire & Cas. Co. v. 1218 Wisconsin, Inc., 136 F.3d 830, 833 (D.C. Cir. 1998). Further, where "the allegations of a plaintiff's complaint may bring the claim within the coverage of the defendant's policy, the insurance company must honor its duty to defend, even if ultimately relieved of any duty to indemnify." Sherman, 670 F.2d at 259. Moreover, any doubt with respect to the duty to defend must be resolved in favor of the insured. Am. Continental v. Pooya, 666 A.2d 1193, 1197 (D.C. 1995). As set forth by the Court in Pooya:

> it is appropriate to examine the complaint for *all plausible claims* encompassed within the complaint and to ascertain whether the allegations of the complaint state a cause of action within the policy coverage and give fair notice to the insurer that the insured is being sued upon an occurrence which gives rise to a duty to defend under the terms of the policy.

Id. (citing Washington v. State Farm & Cas. Co., 629 A.2d 24, 25-26 (D.C. 1993))(emphasis added).  The insurer must defend an entire claim if it appears that at least one count of a complaint potentially falls within the scope of policy coverage, even though the insurer might later be absolved of a duty to indemnify on certain counts. Continental Cas. Co. v. Cole, 809 F.2d 891, 895 (D.C.Cir.1987).

In this case, when the Court examines the Underlying Complaint under this liberal standard and focuses on all plausible claims that may ultimately be encompassed within its terms, it is self-evident that the allegations fall within its grant of "personal and advertising injury" coverage.  The insuring agreement provides, in pertinent part, that

> [Hartford] will pay on behalf of the insured those sums that [CRN] becomes legally obligated to pay as damages because of . . . personal and advertising injury to which this insurance applies . . . this insurance applies to . . . personal and advertising injury caused by an offense arising out of your business.

(See Exhibit D.)  The Hartford Policy further defines "personal and advertising injury" as "injury arising out of . . . oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." (Id.)

The Underlying Complaint alleges that CRN and Dr. Dickinson defamed ConsumerLab by filing a complaint with the FTC, which was subsequently posted on the CRN website.  (See Exhibit A at ¶16.) It further alleges that CRN and Dr. Dickinson furnished copies of its FTC Complaint to reporters, resulting in an article in the Wall Street Journal, and that CRN and Dr. Dickinson sent correspondence to the FTC on or about January 21, 2005 that contained additional defamatory statements.  (Id. at ¶¶ 12, 19).

Without question these allegations fall within Hartford Policy's insuring agreement providing coverage for "personal and advertising injury."  Hartford has essentially conceded as

much in each of its disclaimer letters to CRN and Dr. Dickinson, by relying solely on exclusion 1.a.(2) as the basis for its refusal to defend.  There can be no dispute that CRN and Dr. Dickinson have satisfied their initial burden of showing that the allegations of the Underlying Complaint fall within the Policy's coverage grant.

> ## 2.    Hartford Cannot Satisfy its Burden of Demonstrating That Coverage is Precluded by any Policy Exclusion

As CRN and Dr. Dickinson have demonstrated that that the Underlying Action falls within the policy's coverage grant, the burden shifts to Hartford to demonstrate that coverage is barred by a policy exclusion.  See Cameron v. USAA Prop. and Cas. Ins. Co., 733 A.2d 965 (D.C. 1999) (the burden is on the insurer to prove that the loss falls within an exclusion); Lang v. F.G. Arwood & Co., 65 A.2d 194, 196 (D.C.1949) (same); New York Life Ins. Co. v. Miller, 81 F.2d 263, 268 (D.C.Cir.1935) ("Where an insurer attempts to avoid liability under an insurance policy on the ground that the loss for which recovery is sought is covered by some exclusionary clause, the burden is on the insurer to prove the facts which bring the case within the specified exception.").  Thus, under District of Columbia law, for Hartford to be relieved of its duty to defend on the basis of a policy exclusion, Hartford bears the heavy burden of demonstrating that the allegations of the Underlying Complaint fall wholly within the exclusion, that the exclusion is unambiguous and subject to no other reasonable interpretation, and that there is no plausible factual or legal basis on which the insurer eventually may be held obligated to defend and indemnify the insured.  See Commonwealth Lloyds Ins. Co., 32 F. Supp. 2d at 14 (citing Carey Canada, Inc. v. Aetna Cas. & Sur. Co., 1988 WL 169287 (D.D.C. March, 31 1988) and Commercial Union Ins. Co. v. Albert Pipe & Supply Co., 484 F. Supp. 1153, 1155 (S.D.N.Y. 1980).  Hartford cannot sustain this burden.

In its disclaimers, Hartford has relied solely on Exclusion 1.a.(2), which precludes coverage only where an offense, such as defamation, is committed "with the expectation of inflicting 'personal and advertising injury'."  As set forth in greater detail below, resort to this exclusion fails in this case because Hartford cannot establish that ***all*** potential claims fall within the exclusion – even under Hartford's own broad reading of it.  Furthermore, the exclusion upon which Hartford seeks to disclaim coverage is inherently ambiguous and must be construed strictly against Hartford.

        **a.**      **Hartford Cannot Demonstrate That All Claims
Asserted by ConsumerLabs Fall Wholly
Within Exclusion 1.a.(2)**

As set forth above, the Underlying Complaint seeks damages based not only on allegations of intentional conduct, but also expressly alleges that the allegedly defamatory statements were made with "***reckless disregard*** of whether or not such statements were false," "in a ***grossly irresponsible*** manner," and "***without due consideration*** for the standards of information gathering and dissemination ordinarily followed by responsible parties." (See Exhibit A at ¶¶ 14, 30, 39, 40) (emphasis added).  The Underlying Complaint is also replete with allegations that CRN's and Dr. Dickinson's statements were made with **"*actual malice*."**  As this Court well knows, "actual malice" is a term of art in libel law that includes "reckless disregard of whether [a statement] was false."  New York Times v. Sullivan, 376 U.S. 254, 280 (1964).  Any of these alternative allegations in the underlying complaint would fall short of the "expectation of inflicting 'personal and advertising injury'," such that the policy exclusion would not apply.

In refusing to defend its insureds, Hartford focused on other allegations in the Underlying Complaint to the effect that CRN and Dr. Dickinson acted with the intention or expectation of harming ConsumerLab.  Such allegations appear routinely in complaints for defamation and

other intentional torts that fall within the definition of "personal and advertising injury," and an insurer is not permitted to "cherry-pick" the allegations against its insured in this manner. The entire complaint must be examined, and the insurer must defend if <u>any</u> of the allegations could potentially be covered. Here, the allegations of the Underlying Complaint presented the possibility that CRN and Dr. Dickinson could have been held liable without proof that they had expected to "inflict" tortious defamation injury on ConsumerLab. Thus, ConsumerLab's allegations do not all fall within the scope of exclusion 1.a.(2) of the Hartford Policy.

In short, the basic allegations of defamation in the ConsumerLab Complaint fall squarely within the terms of Hartford Policy coverage grant, and its alternative allegations of merely reckless or even negligent conduct fall outside the terms of exclusion 1.a.(2). Accordingly, Hartford cannot resort to this exclusion to avoid its obligation to defend CRN and Dr. Dickinson.

A number of decisions, including <u>Pooya</u>, 666 A.2d at 1193 and <u>Fuisz v. Selective Ins. Co. of Am.</u>, 61 F.3d 238 (4th Cir. 1995), support this conclusion.

In <u>Pooya</u>, an action was filed against Dr. Manoocherhr Pooya ("Pooya") alleging libel, slander and intentional infliction of emotional distress. <u>Pooya</u>, 666 A.2d at 1195. The first two counts contained allegations that Pooya "maliciously, knowingly and intentionally made false and defamatory statements about the plaintiffs, and/or that he wrote the Report with ***reckless disregard as to the truth or falsity*** of the statements contained therein." <u>Id.</u> (emphasis added). Pooya tendered this complaint to his insurance carrier, American Continental Insurance Co. ("American"), who disclaimed coverage based on the policy's exclusion for intentional and malicious acts. <u>Id.</u>

In determining whether American breached its duty to defend Pooya in the underlying action, the court expressly rejected American's contention that it must look solely to the literal

wording of the complaint and thereby disregard claims that may be included within the alleged causes of action. Id. at 1197. Noting that defamation may be either intentional or negligent, the court found that it was possible for Pooya to be found liable for defamation without intentional acts being proven. Id. at 1198-99 (citing Washington, 629 A.2d at 27, n.8; Moss v. Stockard, 580 A.2d 1011, 1022 n. 23 (D.C. 1990)). Accordingly, the court concluded that the allegations of the underlying complaint "unquestionably raised the possibility of coverage within the scope of the policy" and held that American breached its duty to defend Pooya in connection with the underlying action. Id. at 1199.

Similarly, in Fuisz, Terex Corporation ("Terex") filed an action against Dr. Richard A. Fuisz ("Fuisz") seeking damages arising out of the latter's defamatory statements. Id. at 240. The complaint alleged that Fuisz "'embarked on a scheme and plan to injure the plaintiffs by publicly disseminating false accusations designed to tarnish their good name and reputation in the business community.'" Id. Each of the four counts pled in this complaint expressly alleged that Fuisz "knew each of the statements were false, *or* published the statements with ***reckless disregard*** as to whether they were true or false." Id. at 241 (emphasis added). Fuisz's liability insurer, Selective Insurance Company of America ("Selective") denied coverage and refused to defend based solely on an exclusion similar to that relied on by Hartford. Id. Thereafter, Fuisz filed a declaratory judgment action seeking a determination of Selective's duty to defend. Id.

The Selective intentional acts exclusion, much like Hartford's exclusion, sought to preclude coverage for "any act committed by or at the direction of an insured with intent to cause . . . personal injury" Id. at 242. The court noted that the policy purportedly did not cover acts done with the intent to cause personal injury, yet at the same time covered personal injury including "injury arising out of . . . libel, slander or defamation of character," thus permitting

Selective to "give with the right hand and then take away with the left." <u>Id.</u> (citing <u>Curtis-Universal, Inc. v. Sheboygan Emergency Med. Serv., Inc.</u>, 43 F.3d 1119, 1123 (7th Cir. 1994)). Acknowledging the ambiguity, Selective expressly conceded that its policies "cover libel and slander unless the insured acted with the specific intent to cause harm." <u>Id</u> at 243.

 In adopting Selective's interpretation, the <u>Fuisz</u> court found:

> Coverage for injuries arising from defamation claims is excluded when the insured intends to cause that injury. Accordingly, if the Terex complaint *only* permits Terex to recover upon proof that Fuisz specifically intended to cause the company injury, then Selective has no duty to defend Fuisz.

<u>Id.</u>

 Thus, the Court found that Selective's position hinged on "whether [the complaint] alleges only causes of action based on common-law malice or whether the complaint also alleges causes of action based on actual malice." <u>Id.</u> As is the case with the Underlying Complaint in this action, the Terex complaint contained claims of common-law malice, defined as "behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made," as well as claims of "actual malice" as defined in <u>New York Times v. Sullivan</u>. <u>Id.</u> 243-44 (<u>citing</u> <u>Gazette, Inc. v. Harris</u>, 325 S.E.2d 713 (Va. 1985)). The court found that "although not as prevalent as the allegations of common-law malice, Terex also repeatedly alleges throughout the complaint that 'Fuisz knew his statements were false or *failed to take the proper steps to ascertain their accuracy* and instead published the statements *with reckless disregard as to whether they were true or false.*'" <u>Id.</u> at 244.

 The <u>Fuisz</u> court concluded that, notwithstanding the repeated allegations of willful and intentional actions, because Terex alleged that Fuisz acted with "actual malice," the intentional

acts exclusion was not triggered and Selective was bound to defend the underlying action.  Fuisz, 61 F.3d at 244-45.

The Fuisz court also noted that despite the fact it was not specifically pled, there was a possibility that Terex could have recovered under a theory of negligent defamation.  Id. at 244, n. 3 (citing Washington, 629 A.2d at 27, n. 8 (cause of action for negligent defamation recognized in the District of Columbia) and Signal Constr. Corp. v. Standbury, 586 A.2d 1204, 1208 (D.C. 1991) (noting that "there are very few discernable differences between Virginia and District of Columbia defamation law.").  Thus, because the Terex complaint stated a cause of action that potentially could result in liability based on a less culpable state of mind than specific intent, Selective failed to satisfy its burden of showing that the intentional acts exclusion eliminated its duty to defend Fuisz in connection with the underlying action.  Id. at 245.

The decisions in both Pooya and Fuisz provide sound and relevant guidance here.  The Underlying Complaint against CRN and Dr. Dickinson alleged that the defamatory statements were made with "***reckless disregard*** of whether or not such statements were false," "in a ***grossly irresponsible*** manner," and "***without due consideration*** for the standards of information gathering and dissemination ordinarily followed by responsible parties." (See Exhibit A at ¶¶ 14, 30, 39, 40)(emphasis added).  Hartford cannot simply ignore these allegations, or the fact that had ConsumerLab been able to prove these allegations at trial, a jury could have found the insureds liable without finding that they acted with the expectation of inflicting the defamation injuries alleged by ConsumerLab.  Based on this possibility, Hartford was obligated to defend CRN and Dr. Dickinson in the Underlying Action, as the allegations of the Underlying Complaint provided Hartford with "fair notice" that its insureds were "being sued upon an occurrence which [gave] rise to the duty to defend under the terms of the policy." Pooya, 666

A.2d at 1197.  Accordingly, CRN and Dr. Dickinson respectfully request that this Court grant summary judgment in their favor and find that Hartford was obligated to defend them in the Underlying Action.

> **b.    The Hartford Policy is Ambiguous and Must be Construed Against Hartford**

Further undermining Hartford's resort to its exclusion is the inherent contradiction that exists between that exclusion and the policy's insuring agreement -- a patent ambiguity in the Hartford Policy.  This ambiguity must be resolved in favor of CRN and Dr. Dickinson.

The Hartford Policy defines "personal and advertising injury" to include intentional torts such as false arrest, detention or imprisonment; malicious prosecution, defamation, and copyright infringement.  The insuring agreement of this same policy provides coverage for "personal and advertising injury" and promises that Hartford will defend its insureds in any suit seeking damages on account of such "personal and advertising injury."  Hartford's advertising and promotional materials on its website likewise promise its customers that "personal and advertising injury coverage covers legal defense costs and damages from lawsuits that claim false, misleading statements, advertisements, promotional flyers or brochures, web sites, etc." (See Document #1 on the docket of this matter at ¶ 12.)

But Hartford's broad interpretation of Exclusion 1.a(2) would operate to bar the same intentional torts that clearly fall within the coverage grant of the Hartford Policy.  This conflict renders the Policy ambiguous and, therefore, the exclusion should not be applied to preclude coverage for ConsumerLab's claims against CRN and Dr. Dickinson.

To the extent that Hartford may argue that one who acts with reckless disregard necessarily "expects" to inflict personal or advertising injury -- that is, expects to inflict injury by means of defamation or one of the other offenses encompassed in the definition of personal or

advertising injury -- Hartford's reading of the exclusion would render the promised coverage illusory.  A number of courts have rejected similar attempts to use an "intentional acts" exclusion to effectively eviscerate promised coverage for "intentional torts."  See Lineberry v. State Farm Fire & Casualty Co., 885 F. Supp. 1095 (M.D.Tenn.1995); Lincoln Nat'l Health & Casualty Ins. Co. v. Brown, 782 F. Supp. 110 (M.D.Ga.1992).

In Lineberry, two men had arranged to secretly videotape sexual activity with unsuspecting women using two-way mirrors.  Lineberry, 885 F. Supp. at 1096.  Four women who had been secretly videotaped sued the men who, in turn, filed an action against State Farm Fire & Casualty Co. ("State Farm") seeking defense and indemnification under their personal liability umbrella policy. Id.

The State Farm policy defined "loss" to mean "an accident that results in personal injury."  Id. at 1097.  In addition to bodily harm, "personal injury" was defined by the policy as:

  b.    false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution or humiliation;

  c.    libel, slander, defamation of character or invasion of rights of privacy; and

  d.    assault and battery.

Id.

The policy also provided that State Farm "will not provide insurance . . . for personal injury or property damage . . . which is either expected or intended by you." Id.

State Farm made the same argument to avoid coverage that Hartford makes here, namely that while its policy provided coverage for "personal injury," it expressly barred coverage for "personal injury" arising from the intentional acts of the insured.  Id. The Lineberry court rejected State Farm's arguments, holding:

> In the instant case, the umbrella policy expressly covered injuries resulting from invasion of the right of privacy, an inherently intentional tort, but excluded injuries which were intended or expected. Therefore, the Court finds the coverage is illusory, and the policy is ambiguous and must be interpreted against the insurer and in favor of the insured.

Id. at 1099.

Similarly, in Brown, the court, faced with the argument that Hartford has advanced in its disclaimers, flatly rejected attempts to enforce the intentional acts exclusion, stating that:

> [T]here is an inconsistency in the policy. The policy defines 'personal injury' to mean not only 'bodily injury' but also 'false arrest,' 'malicious prosecution,' and 'assault and battery.' When this definition is read with the provision that only unintentional and unexpected 'personal injury' is covered, then the policy only applies to unintentional false arrest, unintentional malicious prosecution, and unintentional assault and battery.  This is complete nonsense.

Id. at 112-13 (emphasis added).

Hartford's construction of exclusion 1.a.(2) creates the same patent ambiguity that was present in the Lineberry and Brown cases.  The coverage grant of Hartford's Policy expressly promises coverage for a number of intentional torts, including slander, libel and defamation, as well as false arrest, malicious prosecution and wrongful eviction.  Yet according to Hartford, Exclusion 1.a.(2) precludes coverage for those very same torts if the underlying plaintiff makes any allegations of intentional or expected harm -- even if it also pleads recklessness or negligence in the alternative.  Because virtually every plaintiff pleading the intentional torts listed in the definition of "personal and advertising injury" alleges intent to cause harm, Hartford's reading of the exclusion renders the policy self-contradictory on its face.  To avoid turning the coverage grant for "personal and advertising injury" into an utter illusion, Exclusion 1.a.(2) must either be read out of the policy altogether, as the courts in Lineberry and Brown did;

19

or at best for Hartford, it must be construed narrowly, so as to preserve the policy's promise of a defense wherever the underlying complaint at least includes allegations of less-than-intentional conduct.   Under either resolution of this patent ambiguity that Hartford has drafted into its contract language, the Plaintiffs respectfully submit that this Court should grant their motion for summary judgment.   See Continental Cas. Co. v. Beelar, 405 F.2d 377 (D.C. Cir. 1968) (ambiguities in insurance contracts are resolved favorably to the insured; if there are a number of reasonable readings of a policy provision, the insured is entitled to the one favoring coverage); Loeffler v. Boston Ins. Co., 120 A.2d 691 (D.C. App. 1956) (it is the duty of insurer to spell out in plainest terms any exclusionary or delimiting policy provisions; all ambiguities must be resolved against the insurer).

**B.      Hartford Ignored Extrinsic Evidence that Confirmed its Duty to Defend**

As discussed above, Hartford's duty to defend is clearly established under the "eight-corners" approach traditionally followed in the District of Columbia.  Plaintiffs further submit that consistent with the great weight of authority and this Court's own previously stated understanding of prevailing law, this Court can and should consider evidence outside the four corners of the Underlying Complaint demonstrating Hartford's duty to defend.   Here, information in Hartford's possession further confirmed its duty to defend, making Hartford's disclaimer even more egregious.  This situation resembles the state of affairs in Stevens v. United Gen. Title Ins. Co., 801 A.2d 61 (D.C. Ct. App. 2002), in which the majority opinion acknowledged the modern trend toward a "factual exception" to the eight-corners approach where evidence outside the pleadings would establish a duty to defend.  801 A.2d at 70.  The majority summarized the arguments for and against the factual exception and observed that "there may be merit" to both points of view, but ultimately held that "these matters are best

considered by our en banc court rather than a division of the court." *Id.* at 71.  In dissent, Judge

Schwelb championed the tempering of the rigid "eight corners" rules where the insurer has actual

knowledge of the facts establishing a reasonable possibility of coverage. <u>Stevens</u>, 801 A.2d at 72

(citing <u>Fitzpatrick v. Am. Honda Motor Co., Inc.</u>, 575 N.E.2d 90, 93-94 (N.Y. 1991)).[2]

In this case, Hartford was in possession of correspondence and a Memorandum of Law in

support of CRN and Dr. Dickinson's motion to dismiss the Underlying Action that confirmed its

duty to defend and belied any argument that its insureds "expected" to inflict personal and

advertising (e.g., defamation) injury.  In particular, this information made Hartford aware that:

- The insureds had objectively documented reasons to believe that their statements were either true or legitimate expression of opinion (<u>see</u> Exhibit H at p.7);

- The insureds' statements were made in the context of a quasi-judicial proceeding in which CRN petitioned the FTC to investigate ConsumerLab's practices and take appropriate action, and were thus privileged (<u>Id.</u>);

- The insureds' purpose in petitioning the FTC was to protect the public from deceptive practices. (<u>Id.</u>)

Despite the receipt of this information and its duty of good faith to its insured, Hartford

used the strict, albeit obsolescent, eight-corners rule as a shield to protect it from its contractual

duty to defend.  In light of Hartford's possession of this information, it is disingenuous for it to

claim that the Underlying Action falls entirely outside the terms and conditions of its policy.

As recently acknowledged by this Court in <u>Am. Registry of Pathology v. Ohio Cas. Ins.</u>

<u>Co.</u>, 461 F. Supp. 2d 61 (D.D.C. 2006), District of Columbia law has, at least to date, not kept

pace with an expanding majority of jurisdictions that allow courts to look beyond the pleadings

to assess the duty to defend.  <u>Id.</u> at 66.  However, Plaintiffs submit that the majority panel

opinion in <u>Stevens</u>, along with the more explicit dissenting opinion, suggests that the full District

---

[2]  It appears the parties in <u>Stevens</u> opted not to move for rehearing *en banc*.

of Columbia Court of Appeals would apply the "factual exception" to the eight-corners rule in order to preserve defense coverage in a case like this one, where CRN and Dr. Dickinson repeatedly advised Hartford of facts outside the Underlying Complaint that confirmed Hartford's duty to defend.  (<u>See</u> Exhibits E through I.)

In summary, as discussed above, the allegations contained in the Underlying Complaint easily establish a duty to defend under the "eight-corners" rule traditionally followed in the District of Columbia.  In addition, however, Plaintiffs submit that this Court can make an "<u>Erie</u> prediction" that the District of Columbia Court of Appeals would not let Hartford turn a blind eye to mounting extrinsic evidence of a covered claim as it did in this case.  Accordingly, this Court may freely consider that evidence as well.

### III.    <u>CONCLUSION</u>

For the foregoing reasons and based on the case law cited herein, it is respectfully requested that this Court grant partial summary judgment in favor of Plaintiffs, Council for Responsible Nutrition and Annette Dickinson, Ph.D., and find that Defendant Hartford breached its duty to defend the Plaintiffs in connection with the Underlying Action.


Respectfully submitted,


_____/s Janet K. Coleman_____
Janet K. Coleman, Bar No. 497902
WHITNEY & BOGRIS, LLP
401 Washington Avenue
Towson, Maryland 21204
(410) 583-8000 (tel.)
*Counsel for Plaintiffs Council for Responsible*
*Nutrition and Annette Dickinson*