COUNSEL FOR RESPONSIBLE NUTRITION and
ANNETTE DICKINSON

v.

HARTFORD CASUALTY INSURANCE COMPANY

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# EXHIBIT B

To commence the statutory time period of appeals as of right (CPLR 5513[a]), you are advised to serve a copy of this order, with notice of entry, upon all parties.

FILED AND ENTERED
on 5-16 2006
WESTCHESTER
COUNTY CLERK

# SUPREME COURT OF THE STATE OF NEW YORK
# COMMERCIAL DIVISION, WESTCHESTER COUNTY
Present: **HON. KENNETH W. RUDOLPH**
Justice.

---------------------------------------------------------X
CONSUMERLAB.COM, LLC, a New York        :     Index No. 4998/05
Limited Liability Company,                           Motion Date: 9/2/05
        Plaintiff,

    -against-                                              :     **DECISION**

THE COUNCIL FOR RESPONSIBLE
NUTRITION, a District of Columbia
Not-For-Profit Corporation, ANNETTE       :
DICKINSON, an individual resident of
Maryland, and JOHN AND JANE DOE
(1-20),

        Defendants.      :
---------------------------------------------------------X

The following papers numbered 1 to 34 read on this motion.

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/Affirmation/Exhibits 1A-E-10/Memorandum of Law | 1-17 |
| Affidavit in Opposition/Exhibits A-L/Memorandum of Law, Plaintiff | 18-31 |
| Reply Affirmation/Exhibit 1/Memorandum of Law, Defendants | 32-34 |

Upon the foregoing papers, it is ORDERED that this motion by defendants for an order pursuant to CPLR 3211(a) 1. and 7., dismissing plaintiff's complaint, is decided as follows.

Plaintiff, ConsumerLab.com, LLC, is a limited liability company with its principal place of business in Westchester County. Defendant, The Council For Responsible Nutrition ("CRN") is a not-for-profit trade association whose former president, is defendant Annette Dickinson ("Dickinson"). The complaint in this action alleges causes of action against defendants for defamation, injurious falsehoods, trade libel, infliction of intentional harm, unfair trade practices, unfair competition, tortious interference with existing contractual relationship and tortious interference with prospective contractual relationships. Plaintiff seeks in aggregate $6,500,000 in compensatory damages, inter alia, for injury to its business reputation, lost profits and future lost profits, and punitive damages in the amount of $5,000,000. Defendants pre-answer motion seeks dismissal of the complaint on the grounds it fails to state a cause of action and on defenses founded upon documentary evidence.

Plaintiff describes itself as a leading watch-dog of the nutritional supplement industry and a leading independent provider of consumer information and independent evaluation of products it tests. Plaintiff describes defendant, CRN as the largest trade group in the nutritional supplement industry.

On January 12, 2005 by its then president, Dickinson, CRN wrote a letter ("FTC letter") to the Federal Trade Commission (FTC) urging the FTC to investigate plaintiff and take enforcement action against plaintiff for consumer fraud, deceit and unfair business practices.

Plaintiff characterizes CRN's letter, inter alia, as a pretext to publish defamatory statements about plaintiff as part of a widespread media campaign primarily designed to stifle plaintiff's dissemination of truthful and crucial information to the public about deficiencies in products manufactured and sold by defendants' members, and to deflect criticism of the nutritional supplement industry. In addition to sending the letter to the FTC, defendants posted a copy of the letter with the heading "Enforcement Action against ConsumerLab.com" on their trade groups website. On January 13, 2005, defendants issued a press release ("press release") on a public newswire, which they also posted on the Internet and electronically linked to the letter. Defendants refused to issue a requested retraction. The defamatory letter and press release have inflicted substantial injury upon plaintiff.

On January 21, 2005, CRN filed with the FTC a letter to defendants' president responding to a letter defendant's CRN's president had circulated regarding the FTC complaint. ("response letter"). The response letter states that defendant's president's letter admits to the business practices plaintiff complained of and his description of CRN's business was consistent with CRN's description of plaintiff's business practices in CRN's FTC complaint.

The Court notes CRN's accusations of plaintiff's misleading the public by failing to provide material information and by advertising itself as independent of product manufacturers, who pay plaintiff to test their products. Too, plaintiff's name deceptively suggests that plaintiff operates a laboratory. The letter calls plaintiff's practices "unscrupulous" and ... "This entire business model represents an egregious form of consumer fraud and deception."... Too, plaintiff is highly dependent on payments from industry and "... hides what it is paid to hide and publicizes what it is paid to publicize." ... Finally, the letter cites two examples of legitimate third-party testing

2

and verification programs that operate in an honest and above-board manner: U.S. Pharmacopeia and NSF International, denoted by plaintiff as associated members of the CRN trade group.

In a March 15, 2005 letter to CRN, the FTC cites defendants' assertion, among other things that "[C]ompanies are pressed... into paying a fee" for testing under the Voluntary Certification program to avoid potential negative consequences of having their products tested under the Product Review program; and that ConsumerLab's Test Programs and its reporting of test results "are likely to mislead consumers into believing that ConsumerLab is operating in the public interest and cannot be influenced by any outside party." In the same letter, the FTC advised defendants that it was not recommending agency action at that time.

On a motion to dismiss pursuant to CPLR 3211, a court must accept as true the facts as alleged within the four corners of the complaint and accord the plaintiff the benefit of every possible favorable inference to determine whether the allegations fit within any cognizable legal theory, see, Leon v. Martinez, 84 NY2d 83, 87-88; Guggenheimer v. Ginzburg, 43 NY2d 268, 275; Rovello v. Orofino Realty Co., 40 NY2d 633, 634. However, bare legal conclusions and factual claims which are flatly contradicted by the evidence are not presumed to be true on such a motion (cites omitted). Palazzolo v. Herrick, 298 A.D.2d 372: "When the moving party offers evidentiary material, the court is required to determine whether the proponent of the pleadings has a cause of action, not whether she has stated one." Meyer v. Guinta, 262 AD2d 436 (2d Dept., 1999).

Underlying plaintiff's complaint are the FTC letter, the press release and the response letter. Initially, defendants contend that all of the subject communications herein are absolutely immunized from suit by the Noerr-Pennington doctrine, which holds that a person may not be subjected to liability for petitioning the government. Such a determination may be made as a matter of law on a motion to dismiss. All communications herein were made to convince the FTC to take action against plaintiff. Further, the three communications were absolutely privileged, the FTC letter and response letter as made in the course of a quasi judicial proceeding and the press release as a fair and true report of official proceedings. Civil Rights Law ("CRL") 74. Voluntary actions by a citizen preliminary to a statutory proceeding are so privileged, irrespective of whether formal charges are ever presented; as a matter of public policy the rights of citizens to participate freely in the public process must be protected from the threat of personal damages and litigation costs. The CRL extends to the release of background material with regard to a proceeding so long as the statement is a substantially accurate description of the allegations and the language does not differ in content from the statement.

### Defendant's Motion To Dismiss

In general, defendants contend that plaintiff's complaint should be dismissed for failure to state a cause of action either because the complaint's allegations are barred by privilege or immunity, or because one or more essential elements of its causes of action are not alleged, or because documentary evidence definitively disposes of the complaint's causes of action.

3

Plaintiff's oppose contending that plaintiff's integrity and reputation have been put at issue by defendants' smear campaign. The CRN letter sent by plaintiff to the FTC requesting an FTC investigation of plaintiff, falsely accused plaintiff of fraud and deception, maligning plaintiff's business reputation. Additionally, defendants posted a copy of the CRN letter, bearing the false heading "Enforcement Action against ConsumerLab.com" on their trade group's website, as well as issuing a press release on a public newswire, which was also posted on the Internet and electronically linked to the CRN letter, adding at least one additional false and defamatory statement. Defendants refused to issue a public retraction of their CRN letter and press release but defendant, Dickinson issued another press release stating that CRN stood by the facts set forth in its complaint.

In particular, defendants contend that all the communications at issue are immunized from suit under the Noerr-Pennington doctrine which holds that a person may not be subject to liability for petitioning the government, citing I.G. Second Generation Partners, L.P. v. Duane Reade, 17 AD3d 206. The Noerr-Pennington doctrine is a question of law that may be determined on a motion to dismiss. Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc., 268 AD2d 101. The immunity is absolute and defendants' motives are irrelevant.

The FTC complaint, press release and response letter were communications made as part of CRN's efforts to convince the FTC to take action against plaintiff. Each of plaintiff's causes of action are premised on the subject communications and are accordingly, dismissible.

Additionally, plaintiff's complaint is barred by the absolute privileges for communications pertinent to quasi-judicial proceedings and for fair and true reports of such proceedings. The press release is absolutely privileged pursuant to Civil Rights Law 74.

Plaintiff opposes specifically, contending that the Noerr-Pennington doctrine does not permit a party to defame or to petition the government in order to inflict injury. Defendants' underlying motivation was to cause injury to plaintiff and the injury sustained by plaintiff is not merely incidental. The right to petition the government does not certain an absolute privilege to commit defamation, citing McDonald v. Smith, 472 U.S. 479. Too, defendants' petitioning activity was a sham used to compete against plaintiff and promote and advertise the products and services of its two associate services, supra. Finally, the press release was not a genuine part of defendants' petitioning activity.

Plaintiff denies that there was any quasi-judicial proceeding to minimize defendants' conduct. Nor are the false and malicious statements circulated by defendants protected by CRL 74 citing Williams v. Williams, 23 NY2d 592, in particular where defendants published their letter before the FTC received defendants' complaint letter. Plaintiff cite a litany of patently false statements of fact, which defendants contend were not merely opinion

On a motion to dismiss pursuant to CPLR 3211, a court must accept as true the facts as alleged within the four corners of the complaint and accord the plaintiff the benefit of every possible favorable inference to determine whether the allegations fit within any cognizable legal theory, see, Leon v. Martinez, 84 NY2d 83, 87-88, Guggenheimer v. Ginzburg, 43 NY2d 268, 275;

4

Rovello v. Orofino Realty Co., 40 NY2d 633, 634. However, bare legal conclusions and factual claims which are flatly contradicted by the evidence are not presumed to be true on such a motion (cites omitted). Palazzolo v. Herrick, 298 A.D.2d 372. "When the moving party offers evidentiary material, the court is required to determine whether the proponent of the pleadings has a cause of action, not whether she has stated one." Meyer v. Guinta, 262 AD2d 436.

Applying the foregoing including assuming the truth of the allegations of plaintiff's complaint and upon consideration of evidentiary material submitted by plaintiff, the Court determines whether plaintiff has cause(s) of action as follows.

### Plaintiff's Complaint

### First Cause of Action: Defamation

Plaintiff alleges that defendants made and published statements that were defamatory to plaintiff. Plaintiff contends that the statements made in the January 12, 2005 FTC letter, the January 13, 2005 press release and the January 21, 2005 letter from CRN's Dickinson to plaintiff's president, Tod Cooperman, M.D., CC, were false and were made with actual malice damaging plaintiff's business and reputation, per se and actually.

Accepting plaintiff's allegation as true for purposes of this motion, the Court finds that plaintiff has stated a cause of action for defamation, which the Court cannot find at this juncture of the litigation is barred by the Noerr-Pennington doctrine privilege or the Civil Rights Law. Nor can the Court find that facts contained in the subject communications were matters of opinion and not expressed as fact.

The branch of defendant's motion seeking dismissal of plaintiff's first cause of action is denied.

### Second Cause of Action: Injurious Falsehoods

Plaintiff alleges that the defamatory statements, supra, made by defendants were factually false, published with malice in a grossly irresponsible manner with intent of misleading others into action detrimental to plaintiff causing plaintiff actual damage to its business income, profits and reputation.

This branch of defendant's motion is granted, plaintiff having failed to adequately plead or identify its special damages with sufficient particularity. See, Ted Roll v. Daniel Hellman, 284 AD2 113.

Plaintiff's second cause of action is dismissed.

5

### Third Cause of Action: Trade Libel

Plaintiff alleges that the defamatory statements were false, published to third parties with actual malice to disparage plaintiff's business and services, causing plaintiff to lose past and future profits. The tort which the common law referred to as slander of title or trade libel and which is sometimes also denominated "disparagement", supra, initially concerned only ownership or quality of property. By analogy it has been extended to include non-property injuries resulting from intentional falsehood: The tort of injurious falsehood (plaintiff's second cause of action, supra).

Insofar as plaintiff's third cause of action does not specifically plead a communication falsely casting doubt upon plaintiff's real property, the cause of action is duplicitious of plaintiff's cause of action for injurious falsehood and is similarly dismissed, for its failure to allege special damages with sufficient specificity. Ted Roll, supra.

### Fourth Cause of Action: Infliction of Intentional Harm

Plaintiff alleges that defendants published statements regarding plaintiff without justification or excuse without justification or excuse with the intent of causing and actually causing actual harm to plaintiff. The foregoing is also often referred to as "prima facie tort". The court finds that plaintiff's complaint fails to allege facts sufficient to show that defendants' sole motive was "disinterested malevolence", as well as failing to plead damages with the requisite specificity. See, Burns Jackson Miller Summit & Spitzer v. Lindner, 59 NY2d 314, 333; Freihofer v. Hearst Corp., 65 NY2d 135, 143.

Plaintiff's fourth cause of action is dismissed.

### Fifth Cause of action: Uniform Trade Practices

Plaintiff alleges that defendants' defamatory complaint and press release were filed with the intent of injuring plaintiff while benefitting the business of one or more of the members of CRN identified by name in the complaint and press release. Defendants' unlawful and bad faith conduct constitutes unfair trade practices entitling plaintiff to damages.

Plaintiff's complaint does not expound on the legal or statutory theory of this cause of action. Plaintiff's attorney refers to this cause of action as a violation of General Business Law 349 New York's unfair trade practice statue which provides that the challenged act or practice was consumer - oriented or part of a pattern directed at the public generally, that it was misleading in a material way and that plaintiff suffered injury as the result of the deceptive act. See, Stutman v. Chemical Bank, 93 NY2d 24, 29. The complaint pleads none of the foregoing elements and plaintiff's evidentiary submissions fail to rescue its dismissal.

Plaintiff's fifth cause of action is dismissed.

6

### Sixth Cause of Action: Unfair Competition

Plaintiff alleges that the unlawful and bad faith conduct of defendants constitutes unfair competition for which defendants are liable to plaintiff for damages under the statutory and common law of the State of New York.

The law of unfair competition applied by New York State is based primarily upon state statutes and decisions and generally involves equitable relief. There are five categories of unfair competition: trade secrets, trademark or trade name infringement, palming off, misappropriation and false labeling or advertising. Plaintiff's complaint does not allege that defendants' did any of the foregoing, nor does it allege that defendants unfairly competed by restraining trade or by monopoly.

Plaintiff's sixth cause of action is accordingly dismissed.

### Seventh Cause of Action: Tortious Interference with Contractual Relationships

Plaintiff alleges that defendants acted in bad faith and engaged in acts of intentional interference with plaintiff's subscribers and contracting customers causing plaintiff to lose the economic benefit of certain subscriptions and contracts.

This tort initially requires the existence of a valid contract between plaintiff and a third-party. See, Lama Holding Co. v. Smith Barney, Inc., 88 NY2d 413. Thereafter, plaintiff must allege that defendant had knowledge of the contract and intentionally procured its breach, causing plaintiff to suffer damages.

Plaintiff does not plead that there was a contract (s) that was actually breached by defendants' intentional procurement of a breach or that defendants had knowledge of any such contract. Lama, supra. Plaintiff's evidentiary submissions herein fail to rescue this cause of action.

Plaintiff's seventh cause of action is dismissed.

### Eighth Cause of Action: Tortious Interference with Prospective Contractual Relationships

Plaintiff alleges that defendants acted in bad faith and engaged in acts of intentional interference with plaintiff's obtaining new contractual relationships with subscribers and contracting clients, causing plaintiff to lose the future economic benefit of prospective subscriptions, contracts and business.

7

This tort requires allegations that defendants knew of a proposed contract between plaintiff and another party, that defendant acted intentionally to interfere with plaintiff's prospective contractual relationships and that but for such interference a contract would have been entered into. Too, defendants' interference was done by wrongful means and plaintiff suffered damages thereby. See, Carvel Corp. V. Noonan, 3 NY3rd 182.

Plaintiff's allegations are bereft of factual allegations satisfying the elements of this business tort. Plaintiff's evidentiary submissions do not cure this factual dearth.

Plaintiff's eighth cause of action is dismissed.

The foregoing constitutes the Decision and Order of this Court.

Dated: White Plains, New York
       May 15, 2006

                                                    ENTER,

                                                    _____
                                                    HON. KENNETH W. RUDOLPH
                                                    Justice of the Supreme Court

TO: COOPERMAN LESTER MILLER, LLP
    Attorneys for Plaintiff
    1129 Northern Boulevard, Suite 402
    Manhasset, New York 11030

    COVINGTON & BURLING
    Attorneys for Defendants
    1330 Avenue of the Americas
    New York, New York 10019