COUNSEL FOR RESPONSIBLE NUTRITION and
ANNETTE DICKINSON

v.

HARTFORD CASUALTY INSURANCE COMPANY

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# EXHIBIT E

Via Fax To: (202) 204-7980

April 29, 2005

Annette Dickinson
President
Council For Responsible Nutrition
1828 L Street, N.W.
Suite 900
Washington, D.C. 20036

RE: Hartford file no. YCHKL46461
    Insured: Council for Responsible Nutrition
    Claimant: ConsumerLab.Com

Dear Ms. Dickinson,

On behalf of Hartford Casualty Insurance Company (Hartford), this will acknowledge receipt of a copy of the Summons and Complaint filed in Westchester County Supreme Court, index no. 05-04998, captioned ConsumerLab.Com v. Council For Responsible Nutrition, et al. I regret to advise you that Hartford will not provide a defense to this suit, nor will Hartford pay any damages defendants become liable to pay or to contribute to any settlement of this suit.

Hartford issued commercial business liability insurance coverage to Council for Responsible Nutrition (CNR) under contract number 42 SBA FT4964, with a policy period of April 1, 2004 to April 1, 2005. The commercial business liability coverage part is form SS 00 08 04 01. This coverage part provides primary insurance for business liability exposures which are within the scope of the insurance contract's terms. Umbrella Liability coverage was also issued to CNR, under form SX 80 02 04 01 as amended by form SX 80 12 07 03.

The primary insurance coverage part defines the scope of the coverage afforded in the Insuring Agreement section of the contract. The contract provides that Hartford will pay damages that the insured may become obligated to pay and will defend suits seeking such damages, to which the insurance applies. The insurance applies to, among other things, damages because of "personal and advertising injury." This term is defined to mean damages resulting from the commission of specified, enumerated offenses that are listed in the definitions section of the policy. Please refer to a copy of the SS 08 04 01 coverage part which is attached.

You will note that one of the defined offenses falling within the scope of the term "personal and advertising injury" is "Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organizations goods, products or services."

Hartford Plaza
Hartford, CT 06115
Telephone 860-547-5000

It is important to understand that the obligations undertaken by Hartford by issuance of this insurance contract are limited by all the terms and conditions of the policy. The policy states what is covered in the Insuring Agreement and makes clear what is not covered in the "Exclusions" section, which serves to limit the scope of the Insuring Agreement. Of particular import to this case is exclusion a (2), found on page 4 of the policy form.

Exclusion a(2) states " This insurance does not apply to Personal and advertising injury arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury."

Hartford's obligations under the insurance contract issued should be interpreted in accordance with the law of the District of Columbia because CNR is a D.C. corporation with its principal place of business in D.C. The insurance contract was issued out of Hartford's underwriting office in D.C. Thus, the District of Columbia has a greater interest in the outcome of this case than any other state, and the most substantial contacts with the parties involved. Under such circumstances, its law controls the parties respective contractual duties to each other.

The law of the District is well settled with respect to determining when an insurer has a duty to defend its insured. Case law makes clear that the duty to defend is determined by a comparison of the allegations of the complaint with the terms of the insurance contract. If the complaint asserts any claims covered by the insurance contract, the insurer has a duty to defend. However, if the claims alleged in the complaint fall within the scope of a policy exclusion, the insurer has no duty to defend. We believe this to be the case.

A fair reading of the complaint establishes that plaintiff seeks to hold CNR, and you personally, liable for damages resulting from the commission of the offenses of libel and disparagement. However, it is equally apparent that plaintiff is alleging conduct that falls squarely within the scope of exclusion 2(a).

Paragraph 13 of the complaint states " a principal purpose of Defendant's defamatory media campaign against CL was to silence CL and thereby cut off the flow of legitimate consumer information published by CL...". On page 10, paragraph 22, plaintiff quotes the content of its counsel's letter to CNR, dated March 15, 2005, stating that CNR "had as their essential purpose, to silence CL and to wreak vengeance upon CL for disclosing the failings of some in your industry...". Paragraphs 41 and 52 states respectively: "Defendants published their injurious falsehoods with the intent of misleading others into action detrimental to Plaintiff" and, "Defendants published statements of and regarding Plaintiff with the intent of causing harm to Plaintiff."

Based upon these allegations, it can not reasonably be asserted that the claims being made are not within the scope of exclusion a (2).

The facts in, and conclusions of law reached by the District Of Columbia Court of Appeals, in IJG Inc. v. Penn-America Insurance, 803 A.2d 430 are the most analogous. There, Penn-America issued a liability insurance policy to IJG. A patron in the nightclub owned by IJG has injured when struck with a bottle thrown in the course of a fight. Penn-America refused to defend based upon an exclusion for injury resulting from assault and battery or physical altercations that occur in or on the insured premises. The insured alleged the insurer had improperly refused to defend because the complaint did not allege that plaintiff's injury was proximately caused by an assault and battery, and should have defended until more was known about whether the injury did result from the fight.

In response to plaintiffs arguments the Court stated despite the insured's "resourceful and inventive exegesis of the pleading, no amount of explication de texte (sic) can enlarge or alter the plain meaning of the complaint." The Court continued:

"The Court, of course, ought not to look solely to the literal wording of the complaint and thereby disregard claims that are clearly included within the alleged causes of action. Here, nonetheless, careful inspection of the complaint for all plausible claims encompassed within the complaint, and close consideration of whether the allegations of the complaint state a cause of action within the policy coverage and give fair notice to the insurer that the insured is being sued upon an occurrence which gives rise to the duty to defend under the terms of the contract, *compel a conclusion that what is alleged by Ms. Lai falls within what is excluded from coverage by Penn-American.*" (Italics added.)

So too is the case here. The complaint explicitly alleges that our insured acted with the intention of harming ConsumerLab.Com. The complaint alleges that the statements made were published with actual malice and were defamatory per se. There is not an inkling that the conduct complained of was expected or intended by the insured to be innocuous.

Coverage available under the Umbrella liability coverage part is also excluded. Exclusion 4 provides "This policy does not apply to personal and advertising injury. The exception to the exclusion is also inapplicable because the underlying insurance does not apply. See attached exclusion 4.

If you have any questions concerning Hartford's coverage position, please contact me. If you believe that Hartford has erroneously declined to defend, pay damages or settle this case, please advise me as to the reasons for your position.

Very Truly Yours,

Warren Trelman,
Complex Case Manager
860-547-8890