COUNSEL FOR RESPONSIBLE NUTRITION and
ANNETTE DICKINSON

v.

HARTFORD CASUALTY INSURANCE COMPANY

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# EXHIBIT F

# COVINGTON & BURLING

1201 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004-2401
TEL 202.662.6000
FAX 202.662.6291
WWW.COV.COM

WASHINGTON
NEW YORK
SAN FRANCISCO
LONDON
BRUSSELS

JOHN G. BUCHANAN III
TEL 202.662.5366
FAX 202.778.5366
JBUCHANAN@COV.COM

June 16, 2005

Mr. Warren Freiman
Complex Case Manager
The Hartford
Hartford Plaza
Hartford, CT 06115

Re:  *ConsumerLab.Com v. Council for Responsible Nutrition*,
Index No. 05-04998 (N.Y. Supreme Ct.,
Westchester Cty.)
Policy No. 42 SBA FT4694
Your File No. YCHKL46461

Dear Mr. Freiman:

Your letter of April 29, 2005 to Annette Dickinson of the Council for Responsible Nutrition ("CRN") has been forwarded to me for review. Please be advised that Ms. Dickinson is now the Past President of CRN and currently holds the title of Consultant. Her successor as President is Mr. Steven Mister.

In the April 29 letter, Hartford concedes that the above-referenced policy contains a grant of coverage for claims of "personal and advertising injury," and that this term includes the offense alleged in the underlying complaint: "[o]ral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Nonetheless, Hartford then proceeds to deny coverage for the *ConsumerLab* libel suit on the basis of Exclusion 1.a.(2), which applies to " '[p]ersonal and advertising injury' arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting 'personal and advertising injury'."

This exclusion has no application here. First, CRN had no expectation of inflicting "personal and advertising injury" -- *i.e.*, in this case, of committing the tort of libel. As explained in the appended Memorandum of Law in Support of [the CRN] Defendants' Motion to Dismiss (filed June 13, 2005; hereinafter, "Motion to Dismiss"), CRN had -- and continues to have -- objectively documented reasons to believe that its statements about the plaintiff were all either true statements of fact or legitimate expressions of opinion or advocacy. (Motion to Dismiss at 15-25.) Thus, as a matter of law, CRN's statements were not libelous or defamatory.

COVINGTON & BURLING

Mr. Warren Freiman
June 16, 2005
Page 2

(*Id.* at 16.) Furthermore, those statements were absolutely immune or privileged communications in or concerning a quasi-judicial proceeding, in which CRN petitioned the FTC to investigate ConsumerLab's business practices and take appropriate action. (*Id.* at 6-14.) Contrary to Hartford's assertion that CRN expected to inflict "personal and advertising injury," CRN's purpose was, and is, to protect the public from deceptive practices. In sum, far from expecting or intending to libel ConsumerLab, CRN fully expects ConsumerLab's libel claims to be rejected on their face as groundless.

Second, Hartford misreads the ConsumerLab Complaint when it asserts that it alleges exclusively intentional infliction of injury. ConsumerLab's very first cause of action, for Defamation, alleges only "actual malice," as distinct from simple "malice" in the common law sense of intent to injure. (Complaint at ¶ 29.) "Actual malice" is a term of art readily understood by any First Amendment practitioner.[1] As defined by the Supreme Court, this term does not necessarily require specific ill will or intent to injure; it also includes "reckless disregard of whether [a statement] was false or not." *See New York Times v. Sullivan*, 376 U.S. 254, 280 (1964). Accordingly, ConsumerLab expressly alleges that CRN's statements were made "with knowledge of the falsity of such statements *or with reckless disregard* of whether or not such statements were false." (Complaint at ¶ 14.) It also alleges "grossly irresponsible" statements (*id.* at ¶ 30), and the New York libel-law equivalent of negligence -- publication "without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties" (*id.* at ¶ 31). Nowhere in its First Cause of Action (Defamation), nor in its Sixth Cause of Action (Unfair Competition), does ConsumerLab allege intent or common law "malice." It is simply incorrect, therefore, to deny coverage on the basis that the Complaint alleges intentional injury alone. Fairly read, the Complaint also alleges less than intentional infliction of injury, ranging from recklessness down to mere negligence.

As case authority for its denial, Hartford relies solely on *I.J.G., Inc. v. Penn-America Insurance Co.*, 803 A.2d 430 (D.C. 2002).[2] This reliance is plainly misplaced. *I.J.G.* involved a claimant with an eye injury suffered in a barroom brawl, and an insured whose policy specifically excluded coverage for injuries "resulting from assault and battery *or physical*

---

[1] ConsumerLab implicitly distinguishes between common law "malice" and the defamation-law term "actual malice" in its Complaint. In one of its eight causes of action, it alleges only that CRN acted with simple "malice" (*see* Complaint at ¶ 38); in another, it alleges simple "malice" and "actual malice" in successive paragraphs (*see id.* at ¶¶ 48-49); and in its defamation claim, it alleges only "actual malice" (*see id.* at ¶ 29).

[2] We need not address here the questionable choice of law analysis that would apply D.C. law to a New York lawsuit alleging tortious acts in New York and injuries purportedly suffered in New York. (*See* Complaint at ¶ 5.)

COVINGTON & BURLING

Mr. Warren Freiman
June 16, 2005
Page 3

*altercations* that occur in, on, or near the insured's premises." 803 A.2d at 433 (emphasis added).[3] The court specifically held that this exclusion applied regardless of intent:

> "the issue of intent . . . is not determinative where coverage excludes injury which results -- or arises -- from 'physical altercations that occur in, on, or near the insured's premises.'"

*Id.* at 436.

Here, in contrast to *I.J.G.*, the exclusion at issue can apply only if intent is found, and that finding may only be made in the underlying case in the first instance. Hartford may not prejudge the issue by accepting ConsumerLab's allegations as fact, when CRN vigorously contends, and firmly believes, that those allegations are groundless.

We note further that most of the offenses enumerated in the definition of "personal and advertising injury" are intentional torts. Therefore, any plaintiff pleading these torts will inevitably allege intent to injure somewhere in the complaint, particularly where, as here, the plaintiff seeks punitive damages. If the intentional acts exclusion could apply as broadly as Hartford seeks to extend it here, the grant of coverage for "personal and advertising injury" in its insuring agreements would be illusory. An insurer cannot with one hand offer coverage for enumerated intentional torts, and with the other hand withhold a defense when such torts are alleged -- merely because they are intentional.

Accordingly, we respectfully request that Hartford reconsider and withdraw its denial of coverage for this lawsuit. CRN believes that defense coverage for this law suit is afforded under both Hartford's CGL policy and CRN's Director's & Officer's coverage, and that both carriers are jointly and severally obligated to pay the reasonable costs of CRN's defense. To protect its interest, CRN has retained as independent defense counsel Eric Hellerman and his colleagues in the New York office of Covington & Burling, who prepared the appended Motion

---

[3] The exclusion further provided that assault and battery and physical altercations were excluded regardless of the insured's fault:

> "1) Whether or not caused by, at the instigation of, or with the direct or indirect involvement of the insured, the insured's employees, patrons or other persons on the insured's premises, or
>
> "2) Whether or not caused by or arising out of the insured's failure to properly supervise or keep the insured's premises in a safe condition."

*Id.*

COVINGTON & BURLING

Mr. Warren Freiman
June 16, 2005
Page 4

to Dismiss. CRN plans to tender its legal defense bills to both carriers for payment as they are incurred.

    We look forward to your considered response.

                                                  Yours sincerely,

                                                  John Buchanan

Enclosure

cc (w/o enc.):  Mr. Steven Mister
                  Eric Hellerman, Esq.