COUNSEL FOR RESPONSIBLE NUTRITION and
ANNETTE DICKINSON

v.

HARTFORD CASUALTY INSURANCE COMPANY

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# EXHIBIT H

# COVINGTON & BURLING

| | | |
|---|---|---|
| 1201 PENNSYLVANIA AVENUE NW<br>WASHINGTON, DC 20004-2401<br>TEL 202.662.6000<br>FAX 202.662.6291<br>WWW.COV.COM | WASHINGTON<br>NEW YORK<br>SAN FRANCISCO<br>LONDON<br>BRUSSELS | JOHN G. BUCHANAN III<br>TEL 202.662.5366<br>FAX 202.778.5366<br>JBUCHANAN@COV.COM |

January 24, 2006

**BY FEDERAL EXPRESS**

Mr. Warren Freiman
Complex Case Manager
The Hartford
Hartford Plaza
Hartford, CT 06115

      Re:    **ConsumerLab.com v. Council for Responsible Nutrition**
             **Policy No. 42 BA FT4696**
             **Your File No. YCHKL46461**

Dear Mr. Freiman:

      We have revisited Hartford's refusal to defend its insureds, Council for Responsible Nutrition ("CRN") and its past President, Annette Dickinson. It is fair to say that all concerned, including another insurer of CRN, remain perplexed by Hartford's position on this potential multi-million dollar claim.

      Specifically, we find no persuasive authority or support for that position in your letter of September 29, 2005 (the "9/29 Letter"). If anything, the cases there cited reinforce our conviction that Hartford's refusal to defend is unfounded, and indeed could be held by a court to be in bad faith. Since my prior phone messages to you have not been returned, we are outlining our views in this letter.

      To review briefly, Hartford concedes, as it must, that ConsumerLab.com's underlying complaint purports to allege an offense within the scope of the insuring agreement, namely "[o]ral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Hartford relies solely on Exclusion 1.a.(2), for "'Personal and advertising injury' arising out of an offense committed by, at the direction of, or with the consent or acquiescence of the insured with the expectation of inflicting 'personal and advertising injury.'" In the 9/29 Letter (at p. 2), Hartford asserts that this exclusion applies "where the complaints [sic] allegations are that the insured's conduct, regardless of its [malicious or reckless] nature, results in injury which is probable, substantially certain to result in harm or is the natural result of the conduct itself." Contending that the allegations of the ConsumerLab.com complaint all fall within this exclusion so construed, and further contending that a strict "eight-corners" rule permits it to ignore any

evidence outside those allegations that might potentially bring the claim within coverage, Hartford has refused to defend this lawsuit.

We believe Hartford's position fails for five independent reasons: 1) if Hartford's broad reading of Exclusion 1.a.(2) in its primary CGL policy were correct, the exclusion and the insuring agreement's grant of coverage for defamation-related torts would be mutually repugnant, and courts applying the basic canons of insurance policy construction would enforce the coverage grant over the exclusion; 2) Hartford's broad reading is at odds with the wording of the exclusion, which at best for Hartford is limited to highly culpable conduct; 3) even under a strict "eight-corners" test, the ConsumerLabs.com complaint on its face includes allegations of recklessness and other less culpable conduct falling outside the exclusion; 4) in any event, even a D.C. court would likely apply the "fact exception" to the eight-corners test and find a duty to defend on the evidence we have previously submitted, which demonstrates that the insureds could not have expected or intended their publications to cause defamation injury; and finally 5) even if Hartford succeeded in escaping defense coverage under its primary CGL policy, it would still owe a duty to defend under its umbrella policy.

**1. Hartford's broad reading of Exclusion 1.a.(2) would not survive under the repugnancy doctrine.**

With respect to the first of the five points above, Hartford is undoubtedly familiar with the legal ground rules that determine its defense obligations under the CGL policy. Both New York and the District of Columbia, like virtually all other jurisdictions, enforce a broad duty to defend and resolve any doubts about the duty to defend in favor of the insured.[1] Policy exclusions are strictly construed, and in cases of ambiguity, the insured's reasonable expectation of coverage will be enforced.[2]

---

[1] *E.g., Continental Cas. Co. v. Rapid-American Corp.*, 609 N.E.2d 506, 513 N.Y. (1993) ("since the pollution exclusion is ambiguous in these circumstances and could be construed against the insurer-drafter and in favor of potential coverage for the policyholder, CNA cannot escape its duty to defend"); *Spoor-Lasher Co. v. Aetna Cas. & Sur. Co.*, 39 N.Y.2d 875, 876, 352 N.E.2d 139 (1976) (insurer may escape duty to defend "only if it could be concluded as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify"); *Stevens v. United General Title Ins. Co.*, 801 A.2d 61, 67 (D.C. 2002) ("Any doubt as to whether there is a duty to defend must be resolved in favor of the insured."); *Boyle v. National Cas. Co.*, 84 A.2d 614, 616 (D.C. 1951) ("doubt [regarding the duty to defend] ought to be resolved in the insured's favor.").

[2] *E.g., Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 476 N.E.2d 272 (1984) (policy exclusions "are to be accorded a strict and narrow construction"); *Chase v. State Farm*

COVINGTON & BURLING

Mr. Warren Freiman
Complex Case Manager
January 24, 2006
Page 3

      These black-letter rules, we submit, spell doom at the outset for Hartford's position. As we understand that position, Hartford contends that -- notwithstanding its explicit grant of coverage for the intentional torts of libel and slander, and despite its promise to defend any suit seeking damages for those torts -- Exclusion 1.a.(2) relieves Hartford from any obligation to defend if the alleged injury to the plaintiff's reputation is the "natural result of" the insured's purportedly false statements, whether intentionally, recklessly or even negligently made. But a plaintiff cannot logically plead the torts of libel or slander without pleading the reputational harm that is an inherent element of those torts -- that is, "probable, substantially certain to result . . . or the natural result of" the defamatory conduct alleged. Under Hartford's extraordinarily broad reading of this exclusion, its insuring agreement and its exclusion are mutually repugnant as to coverage for the enumerated defamation torts, as well as for virtually all the other intentional torts enumerated in the insuring agreement. At best, in other words, Hartford is contending that its policy form suffers from a patent ambiguity, because two of its terms irreconcilably conflict.

      In such cases, applying the basic principles above, the courts simply resolve the ambiguity in favor of the coverage promised in the insuring agreement. *See, e.g., Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 361, 314 N.E.2d 37 (1974) (rejecting interpretation of exclusion that would "render the coverage nearly illusory"); *Knowles v. United Services Automobile Association*, 113 N.M. 703, 832 P.2d 394 (1992) ("the clause excluding coverage for 'expected or intended' harm is repugnant to the clause offering coverage for wrongful eviction, and, as such, is ineffective to preclude coverage"; insurer had duty to defend); *Lincoln National Health and Cas. Co. v. Brown*, 782 F. Supp. 110, 113 (M.D. Ga. 1992) (rejecting as "complete nonsense" insurer's reliance on a provision limiting coverage to unexpected and unintended injury, where policy afforded coverage for "false arrest," "malicious prosecution" and "assault and battery"); *Lineberry v. State Farm Fire & Cas. Co.*, 885 F. Supp. 1095, 1099 (M.D. Tenn. 1995) (policy that covered "invasion of privacy, an inherently intentional tort but excluded injuries which were expected or intended" was "illusory"; insurer required to defend and indemnify).

      In other words, the courts have shown little patience for insurers arguing that the coverage they expressly promised at the front of the policy was rendered illusory by this exclusion buried at the back. We believe that a court could conclude on summary judgment that

---

(cont'd) *Fire and Cas. Co.*, 780 A.2d 1123, 1127 (D.C. 2001) ("ambiguities in an insurance policy are construed against the insurer and in favor of the 'reasonable expectations of the purchaser of the policy'.... 'It is the insurer's duty to spell out in plainest terms-terms understandable to the man in the street-any exclusionary or delimiting policy provisions.'") (citations omitted).

COVINGTON & BURLING

Mr. Warren Freiman
Complex Case Manager
January 24, 2006
Page 4

Hartford's basic position here is, in the words of the *Lincoln National Health* decision cited above, "complete nonsense."

> 2. **Hartford's broad reading of Exclusion 1.a.(2) is at odds with the wording of the exclusion.**

The extraordinarily broad reading of Exclusion 1.a.(2) proposed in the 9/29 Letter -- that it excludes defense for allegations of reckless, or even negligent conduct whose "natural result" is reputational injury -- not only leads to nonsensical results, but it is at odds with the plain language of that exclusion. The exclusion, in conjunction with the definition of "personal and advertising injury" that it incorporates by reference, expressly delineates a particular type of conduct and a particular state of mind, both of which must be present for the exclusion to apply -- and both of which incorporate the legal criteria for the torts listed in that definition. Thus, the insured must: (a) commit an enumerated offense, or direct its commission, or consent to or acquiesce in its commission, *and* (b) do so "with the expectation of inflicting 'personal and advertising injury'," as that term is defined in the policy. In accordance with that definition, and in order to have the requisite expectation where defamation is alleged, the insured must further (c) understand or expect that it is committing (or directing or consenting to) "publication of material that *slanders or libels* a person or organization" -- that is, material that is false, nonprivileged, uttered with the requisite degree of disregard for truth, resulting in the requisite degree of reputational harm, and otherwise meeting all the legal criteria for the tort of slander or libel in the relevant jurisdiction. In other words, if this exclusion could have any meaning at all in light of the CGL policy's express grant of coverage for "personal and advertising injury," it could only apply after the underlying court had determined that the insured met all the prerequisites for tort liability, *and* in fact knew or expected that it would meet them when it published the defamatory matter. Absent extraordinary allegations that are plainly lacking in the ConsumerLab.com complaint, this exclusion could not apply to the duty to defend, without coming into hopeless conflict with the insuring agreement that promises a defense for suits alleging slander or libel.

In short, Hartford is making a risky bet that a court would construe its exclusion to apply even to negligent or reckless conduct. Were this issue to be litigated, we think the court would reject Hartford's aggressive interpretation on the plain wording of the exclusion, if it does not do so on grounds of repugnancy or ambiguity.

> 3. **The ConsumerLabs.com complaint on its face includes allegations of recklessness and other less culpable conduct falling outside Exclusion 1.a.(2).**

As we understand the 9/29 Letter, if (as we think likely) the exclusion were held not to preclude defense coverage for complaints alleging mere recklessness or negligence, then Hartford would rely on a two-part argument to escape coverage: *first*, that D.C. law would

COVINGTON & BURLING

Mr. Warren Freiman
Complex Case Manager
January 24, 2006
Page 5

require a court to determine Hartford's duty to defend solely from the eight corners of the policy and the underlying complaint, without any reference to extrinsic facts known to Hartford; and *second*, that under the strict eight-corners approach, it is beyond doubt that Hartford has no duty to defend. In fact neither proposition finds support in the law or in the allegations of the ConsumerLabs.com complaint. We address the latter proposition first.

  Even if we assume arguendo that a court would apply both D.C. law and a rigid eight-corners approach, the underlying complaint is hardly confined to allegations that Hartford's insureds made the alleged statements "with the expectation of" inflicting injury by means of defamation or disparagement. Of course the complaint, like virtually all defamation complaints, is sprinkled with allegations of intentional falsehood and malice in the ordinary sense. But it also alleges in the alternative that the statements complained of were made with "***reckless disregard*** of whether or not such statements were false," "in a ***grossly irresponsible*** manner," and "***without due consideration*** for the standards of information gathering and dissemination ordinarily followed by responsible parties." Complaint, ¶¶ 14, 30, 39, 40 (emphasis added). The complaint also repeatedly alleges that the statements were made with "actual malice," a term of art in the context of defamation that potentially includes, as a matter of law, "reckless disregard of whether [a statement] was false or not." *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964).

  These allegations fall far short of the conduct contemplated by the exclusion, namely an offense undertaken "with the expectation" that an enumerated tort will in fact be committed *and* will in fact inflict compensable reputation injury. This state of mind can hardly be present when an insured acts with "reckless disregard" or "in a grossly irresponsible manner."[3]

  *American Continental Ins. Co. v. Pooya*, 606 A.2d 1193 (D.C. 1995) ("*Pooya*") -- the case upon which Hartford relies in the 9/29 Letter -- is in fact compelling authority for a duty to defend here. In *Pooya*, the D.C. Court of Appeals held that an insurer had a duty to defend a defamation suit against its insured on facts not meaningfully different from those here. Echoing the allegations in this case, the underlying plaintiffs in *Pooya* alleged that the policyholder "'maliciously, knowingly and intentionally' made false and defamatory statements about the plaintiffs and/or that he wrote the Report 'with ***reckless disregard*** as to truth or falsity' of the statements contained therein." 606 A.2d at 1195 (emphasis added). Despite both a "fraudulent, criminal or malicious act" exclusion and an "expected or intended" exclusion in the policy, *id.* at 1194-1195, the court found a duty to defend. It reasoned that "if Pooya's conduct was reckless,

---

[3]  See *Fuisz v. Selective Ins. Co. of America*, 61 F.3d 238, 243 (4th Cir. 1995), construing a similar exclusion.

COVINGTON & BURLING

Mr. Warren Freiman
Complex Case Manager
January 24, 2006
Page 6

and not malicious, knowing or willful, his actions would be covered under the insurance policy. Similarly, if liability were to rest on negligent publication, this would be covered...." *Id.* at 1199.

This case is virtually identical to *Pooya* because ConsumerLab.com alleges that the insureds acted with "reckless disregard" and also alleges lesser degrees of wrongful conduct, namely that the insureds acted in a "grossly irresponsible manner" and "without due consideration," etc. Similarly, in *Fuisz v. Selective Ins. Co. of America*, 61 F.3d at 244, the court -- applying Maryland law, which the D.C. courts follow in the absence of applicable D.C. law -- held that the insurer had a duty to defend a complaint alleging that the insured "acted with actual malice [in the *New York Times* sense] by recklessly disregarding the falsehood of his statements," even though that complaint also "alleged that the insured 'willfully intended to injure'."

We further note that, under *Pooya* and other D.C. precedents, it does not even matter whether the underlying complaint alleges recklessness or negligence in so many words -- although the complaint at issue here obviously does. The *Pooya* court refused to "look solely to the literal wording of the complaint and thereby disregard claims that clearly are included within the alleged causes of action"; instead, the Court "examine[d] the complaint for *all plausible claims encompassed within the complaint*...." *Pooya*, 606 A.2d at 1197 (emphasis added). In other words, the Court recognized that allegations of an expectation or intent to engage in tortious conduct or inflict injury do not necessarily preclude liability predicated on "lesser included offenses" such as negligence; and that a duty to defend may arise whether or not the word "negligent" appears in the underlying complaint.[4] In making this point, the *Pooya* court followed a path well-trodden by other courts, and cited the seminal case of *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 54 Cal. Rptr. 104 (1966). As the *Gray* court explained four decades ago, an insurer "cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. . . . Since the instant action presented the potentiality of a judgment based upon nonintentional conduct, and since liability for such conduct would fall within the indemnification coverage, the duty to defend became manifest at the outset." 65 Cal. 2d at 276.

---

[4] *Washington v. State Farm Fire & Cas. Co.*, 629 A.2d 24 (D.C. 1993), on which Hartford also relies, is to similar effect. There the court summarily rejected the insurer's alternative argument that there was no duty to defend because "defamation is an intentional tort," noting that "defamation may be either intentional or negligent." *Id.* at 27 n. 8.

COVINGTON & BURLING

Mr. Warren Freiman
Complex Case Manager
January 24, 2006
Page 7

### 4. A D.C. Court is likely to consider extrinsic evidence showing that the insureds did not expect or intend their publications to cause defamation injury for purposes of finding a duty to defend.

We turn back to Hartford's assumption that a court applying D.C. law would apply the eight-corners rule rigidly, with no exception for other facts known or reasonably available to Hartford. Hartford relies on *Stevens v. United General Title Ins. Co.*, 801 A.2d 61 (2002) for this assumption. But it is clear from the divided three-judge panel's opinions there that this issue is now "up for grabs" in D.C. and only awaits a suitable case before the full Court of Appeals for resolution. The *Stevens* majority opinion acknowledged the modern trend toward a "factual exception" in New York and other states, where facts outside the pleadings would establish a duty to defend. 801 A.2d at 70. The majority summarized the arguments for and against the factual exception, observed that "there may be merit" to both points of view, but held that "these matters are best considered by our en banc court rather than a division of the court." *Id.* at 71. Judge Schwelb, in dissent, would not have hesitated to apply the factual exception: "this court should temper the rigors of the 'eight corners' rule where the insurer has actual knowledge of facts establishing a reasonable possibility of coverage." *Id.* at 72. One may easily infer that the insurer in *Stevens* hastened to settle the case before the full court sitting *en banc* could review the issue.

Here, of course, Hartford has knowledge of facts outside the complaint that it implicitly concedes would establish a duty to defend. We have previously provided you with a copy of the Memorandum in support of the motion to dismiss filed by CRN and Ms. Dickinson, setting forth facts that demonstrate that the insureds did not harbor any "expectation" of committing defamation or disparagement or otherwise inflicting "personal and advertising injury" within the meaning of the exclusion. (Another copy of that Memorandum can be provided on request.) As set forth therein, and as stated in my prior correspondence:

- The insureds had objectively documented reasons to believe that their factual statements were true and that their expressions of advocacy and opinion were legitimate. Memorandum at pp. 15-25. It follows that they could not have acted "with the expectation" of committing the offenses of slander, libel or disparagement.

- The insureds' statements were made in the context of a quasi-judicial proceeding in which CRN petitioned the FTC to investigate ConsumerLab.com's practices and take appropriate action, and hence were absolutely immune or privileged. The insureds' purpose in petitioning the FTC was to protect the public from deceptive practices. (Memorandum, pp. 6-14.) Statements made for a privileged purpose cannot have been made "with the expectation" of committing the offenses of slander, libel or disparagement.

COVINGTON & BURLING

Mr. Warren Freiman
Complex Case Manager
January 24, 2006
Page 8

In summary, even if, contrary to fact, the complaint here alleged solely intentional conduct, the courts in most states[5] would not let Hartford "retreat behind the fortress of the underlying complaint," assume the worst of its insureds, and ignore the extrinsic facts that exonerate them and impose a duty to defend. In light of *Stevens*, Hartford can hardly be confident that a D.C. court will permit that result either.[6]

>   5.  **Even if Hartford could escape defense coverage under its primary CGL policy, it would still owe a duty to defend under its umbrella policy.**

Finally, Hartford appears to have ignored entirely Umbrella Liability Policy No. 42 SBA FT4964 (the "Umbrella Policy") that it issued to the insureds for the applicable policy period. This policy covers "personal and advertising injury" liability in excess of the $10,000 self-insured retention "when no 'underlying insurance' applies." (Spectrum Umbrella Liability Supplemental Contract, Insuring Agreements, Section I.A.1.) Under Section II of the Umbrella Policy, Hartford has a duty to defend -- not subject to the retention, and payable in addition to applicable indemnity limits -- if "no coverage is provided under any 'underlying insurance'." (Insuring Agreements, Section II.A.1.) The Umbrella Policy incorporates the definition of "personal and advertising injury" contained in the "underlying insurance" (Definitions, Section VII), and "underlying insurance" is defined to include Hartford's own primary CGL policy (*id.*; Extension Schedule of Underlying Insurance Policies). Thus, like the primary CGL, the Umbrella Policy's coverage grant extends to "personal and advertising injury," including by definition slander, libel and disparagement. Unlike the CGL form, however, the Umbrella Policy does *not* contain an exclusion for "'personal and advertising injury' arising out of an offense committed . . . with the expectation of inflicting 'personal and advertising injury'," which Hartford relies on to preclude primary coverage. Therefore, even if Hartford's no-coverage position for defamation claims were somehow upheld under the primary policy, Hartford would still have an unlimited defense obligation under its Umbrella Policy.

---

[5] *See, e.g., Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 575 N.E.2d 90, 93 (1991) (an insurer who has "knowledge of facts establishing a reasonable possibility of coverage" must defend; the insurer "cannot use a third party's pleadings as a shield to avoid its contractual duty to defend its insured").

[6] Not only is the factual exception to the eight-corners rule in keeping with the modern trend, it is the only way to reconcile the insurer's statutory duty to conduct a "reasonable investigation" before refusing to pay a claim. D.C. Code Ann. § 31-2231.17(b)(4). It makes no sense to require insurers to conduct a reasonable investigation if they are then permitted to ignore facts learned during that investigation when deciding whether a defense is owed.

COVINGTON & BURLING

Mr. Warren Freiman
Complex Case Manager
January 24, 2006
Page 9

\* \* \* \* \*

In closing, we ask Hartford to review carefully its refusal to provide a defense in this case, either under its primary CGL policy or its Umbrella Policy, and to tell us by February 10, 2006 whether it plans to persist in that position. In reviewing this matter, Hartford should keep in mind that in the District of Columbia and elsewhere, an insurer who wrongfully withholds coverage, and who continues to do so even after being afforded an opportunity to reconsider, exposes itself to extracontractual damages.[7] We also note that, even in the absence of punitive damages, the justices of the D.C. Court of Appeals have previously shown themselves inclined to make insurers pay the attorneys' fees incurred by policyholders who are forced to vindicate their coverage rights in court.[8] We urge Hartford to consider whether its interests would be served by making this a "test case" for both the eight-corners rule and fee-shifting in the District of Columbia.

Yours sincerely,

John Buchanan

cc:  Mr. Mister
     Mr. Hellerman

---

[7] *E.g., Central Armature Works, Inc. v. American Motorists Ins. Co.*, 520 F.Supp. 283, 295 (D.D.C. 1985).

[8] A panel of the District of Columbia Court of Appeals recognized such a fee-shifting rule in *Potomac Residence Club v. Western World Insur. Co.*, 711 A.2d 1228, *vacated*, 711 A.2d 1250 (D.C. 1998),. That decision was vacated pending rehearing *en banc*, and the insurer settled the case out of court after oral argument *en banc*, but before a decision was issued.

Mr. Warren Freiman
Complex Case Manager
January 24, 2006
Page 10

bc:   Mr. LoParrino
      Ms. Wilcox