COUNSEL FOR RESPONSIBLE NUTRITION and
ANNETTE DICKINSON

v.

HARTFORD CASUALTY INSURANCE COMPANY

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# EXHIBIT I

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CONSUMERLAB.COM, LLC, a New York Limited  :
Liability Company,                        :
                                          :
                                          :   Index No. 05-04998
                      Plaintiff,          :
                                          :
           -against-                      :
                                          :
THE COUNCIL FOR RESPONSIBLE NUTRITION,    :
a District of Columbia Not-For-Profit Corporation,  :
ANNETTE DICKINSON, an individual resident of  :
Maryland, and JOHN AND JANE DOE (1-20),   :
                                          :
                                          :
                      Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS


COVINGTON & BURLING
1330 Avenue of the Americas
New York, New York 10019
(212) 841-1000

*Attorneys for Defendants*
*The Council for Responsible*
*Nutrition and Annette Dickinson*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.  PRELIMINARY STATEMENT ................................................................................... 1

II.  FACTUAL BACKGROUND ........................................................................................ 2

    A.  The Parties ........................................................................................................... 2

    B.  The Statements at Issue ...................................................................................... 3

    C.  The Three Communications in Which the Statements Were Made ............... 3

        1.  The FTC Complaint ................................................................................. 3

        2.  The Press Release .................................................................................... 4

        3.  The Response Letter ............................................................................... 4

    D.  The Complaint's Allegations and Claims for Relief ....................................... 5

    E.  The Documentary Evidence Submitted in Support of this Motion ............... 5

III.  ARGUMENT ................................................................................................................ 6

    A.  The Complaint Is Barred by the *Noerr-Pennington* Doctrine ...................... 6

    B.  The Complaint Is Barred by the Absolute Privileges for Communications
        Pertinent to Quasi-Judicial Proceedings and for Fair and True Reports of
        Those Proceedings ............................................................................................... 8

        1.  The FTC Filings Are Absolutely Privileged Because They Were Made
            in Connection With a Quasi-Judicial Proceeding .............................. 8

        2.  The Press Release is Absolutely Privileged Pursuant to Civil
            Rights Law § 74 ..................................................................................... 13

    C.  All of the Allegedly Defamatory Communications or the Allegedly
        Defamatory Statements Contained in These Communications Are
        Otherwise Not Actionable ................................................................................. 15

        1.  The FTC Filings and Press Release Are Not Actionable Because a
            Reasonable Reader Would Have Understood That CRN Was
            Advocating for an FTC Enforcement Action in Them ................... 16

        2.  None of the Allegedly Defamatory Statements in the FTC Complaint
            Are False Statements of Fact About ConsumerLab ......................... 18

3. None of the Allegedly Defamatory Statements in the CRN Press Release Are False Statements of Fact About ConsumerLab .......................... 24

4. Neither of the Allegedly Defamatory Statements in the Response Letter Is a False Statement of Fact About ConsumerLab ............................... 25

D. The Remaining Claims Also Should Be Dismissed for Failure to State a Cause of Action ................................................................................................. 25

1. The Causes of Action for Injurious Falsehood, Trade Libel and "Infliction of Intentional Harm" Should Be Dismissed Because the Complaint Does Not Allege Special Damages With Particularity .......... 26

2. The Causes of Action for Tortious Interference with Existing Contractual Relationships and Tortious Interference with Prospective Contractual Relationships Should Be Dismissed For Failure to Allege Essential Elements ......................................................................................................... 27

3. The Unfair Trade Practices and Unfair Competition Claims Should Be Dismissed for Failure to State a Cause of Action ........................................... 29

IV. CONCLUSION ........................................................................................................ 30

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page**

*Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.,*
268 A.D.2d 101, 707 N.Y.S.2d 647 (2d Dep't 2000) ................................................6, 7

*Allan and Allan Arts Ltd. v. Rosenblum,*
201 A.D.2d 136, 615 N.Y.S.2d 410 (2d Dep't 1994) ....................................6, 8, 11, 12

*Arts4All, Ltd. v. Hancock,*
5 A.D.3d 106, 773 N.Y.S.2d 348 (1st Dep't 2004) ...............................................12

*ATI, Inc. v. Ruder & Finn, Inc.,*
42 N.Y.2d 454, 398 N.Y.S.2d 864 (1977) ...........................................................26

*Boulous v. Newman,*
302 A.D.2d 932, 754 N.Y.2d 510 (4th Dep't 2003) ...............................................22

*Branca v. Mayesh,*
101 A.D.2d 872, 476 N.Y.S.2d 187 (2d Dep't 1984) ....................................13, 14, 15

*Brian v. Richardson,*
87 N.Y.2d 50, 637 N.Y.S.2d 347 (1995) ........................................16, 17, 18, 23

*Brown v. Bethlehem Terrace Associates,*
136 A.D.2d 222, 525 N.Y.S.2d 978 (3d Dep't 1988) ...............................................29

*Concourse Nursing Home v. Engelstein,*
181 Misc.2d 85, 692 N.Y.S.2d 888 (Sup. Ct. New York County 1999) ...........................7

*Cordell-Reeh v. Nannies of St. James, Inc.,*
13 A.D.3d 140, 785 N.Y.S.2d 694 (1st Dep't 2004) ...............................................14

*Dancer v. Bergman,*
246 A.D.2d 573, 668 N.Y.S.2d 213 (2d Dep't 1998) .........................................18, 19

*Davis & Co. Auto Parts, Inc. v. Allied Corp.,*
651 F. Supp. 198 (S.D.N.Y. 1986)...................................................................29

*Dunn v. Ladenburg Thalmann & Co.,*
259 A.D.2d 544, 686 N.Y.S.2d 471 (2d Dep't 1999) ...............................................8

*Fishoff v. Abady,*
280 A.D.2d 417, 720 N.Y.S.2d 505 (1st Dep't 2001) ...............................................14

*Friends of Falun Gong v. Pacific Cultural Enterprise, Inc.,*
288 F. Supp. 2d 273 (E.D.N.Y. 2003) .................................................................................27

*Gatto v. Callaghan,*
231 A.D.2d 552, 647 N.Y.S.2d 290 (2d Dep't 1996) ......................................................16, 18

*Glendora v. Gannett Suburban Newspapers,*
201 A.D.2d 620, 608 N.Y.S.2d 239 (2d Dep't 1994) ......................................................8, 13

*Harms v. Riordan-Bellizi,*
223 A.D.2d 624, 636 N.Y.S.2d 839 (2d Dep't 1996) .........................................................12

*Herzfeld & Stern, Inc. v. Beck,*
175 A.D.2d 689, 572 N.Y.S.2d 683 (1st Dep't 1991) .....................................................9, 11

*Holy Spirit Association for the Unification of World Christianity v. New York Times Co.,*
49 N.Y.2d 63, 424 N.Y.S.2d 167 (1979) ............................................................................13

*Howlett v. Bloom,*
239 A.D.2d 389, 657 N.Y.S.2d 433 (2d Dep't 1997) .........................................................22

*Hughes Training Inc. v. Pegasus Real-Time Inc.,*
255 A.D.2d 729, 680 N.Y.S.2d 721 (3d Dep't 1998) .........................................................14

*I.G. Second Generation Partners, L.P. v. Duane Reade,*
17 A.D.3d 206, 793 N.Y.S.2d 379 (1st Dep't 2005) ............................................................6

*Leder v. Feldman,*
173 A.D.2d 317, 569 N.Y.S.2d 702 (1st Dep't 1991) ........................................................13

*Joseph v. Larry Dorman, P.C.,*
177 A.D.2d 618, 576 N.Y.S.2d 588 (2d Dep't 1991) ..........................................................9

*Korn v. Princz,*
226 A.D.2d 278, 641 N.Y.S.2d 283 (1st Dep't 1996) ........................................................28

*Love v. William Morrow and Co.,*
193 A.D.2d 586, 597 N.Y.S.2d 424 (2d Dep't 1993) .........................................................16

*Lovisa Construction Co. v. Metropolitan Transportation Authority,*
198 A.D.2d 333, 603 N.Y.S.2d 886 (2d Dep't 1993) ...........................................................6

*L.W.C. Agency, Inc. v. St. Paul Fire and Marine Insurance Co.,*
125 A.D.2d 371, 509 N.Y.S.2d 97 (2d Dep't 1986) ...........................................................26

*Matherson v. Marchello,*
100 A.D.2d 233, 473 N.Y.S.2d 998 (2d Dep't 1984) ................................................26

*McDonald v. East Hampton Star,*
10 A.D.3d 639, 781 N.Y.S.2d 694 (2d Dep't 2004) .................................................14

*Miness v. Alter,*
262 A.D.2d 374, 691 N.Y.S.2d 171 (2d Dep't 1999) ..............................................25

*Miracle Mile Associates v. City of Rochester,*
No. 78-592, 1979 WL 1649 (W.D.N.Y. May 18, 1979) ............................................7

*M.J. & K. Co. v. Matthew Bender and Co.,*
220 A.D.2d 488, 631 N.Y.S.2d 938 (2d Dep't 1995) ..............................................29

*Park Knoll Associates v. Schmidt,*
89 A.D.2d 164, 454 N.Y.S.2d 901 (2d Dep't 1982) ..........................................9, 10, 11

*Park Knoll Associates v. Schmidt,*
59 N.Y.2d 205, 464 N.Y.S.2d 424 (1983) ...............................................................9

*Robinson v. Robinson,*
303 A.D.2d 234, 757 N.Y.S.2d 13 (1st Dep't 2003) ................................................6

*Schuckman Realty, Inc. v. Marine Midland Bank, N.A.,*
244 A.D.2d 400, 664 N.Y.S.2d 73 (2d Dep't 1997) ............................................27, 28

*Shinn v. Williamson,*
225 A.D.2d 605, 639 N.Y.S.2d 105 (2d Dep't 1996) ...............................16, 22, 23, 24

*Small v. Lorillard Tobacco Co.,*
94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999) ..............................................................30

*Soule v. Norton,*
299 A.D.2d 827, 750 N.Y.S.2d 692 (4th Dep't 2002) ..........................................6, 30

*Stilsing Electric, Inc. v. Joyce,*
113 A.D.2d 353, 495 N.Y.S.2d 999 (3d Dep't 1985) ...............................................9

*Stutman v. Chemical Bank,*
95 N.Y.2d 24, 709 N.Y.S.2d 892 (2000) ..............................................................30

*Sung v. Hong,*
254 A.D.2d 271, 678 N.Y.S.2d 116 (2d Dep't 1998) ...............................................6

*Susskind v. IPCO Hospital Supply Corp.,*
49 A.D.2d 915, 373 N.Y.S.2d 627 (2d Dep't 1975) ........................................................27, 28, 29

*Vengroff v. Coyle,*
231 A.D.2d 624, 647 N.Y.S.2d 530 (2d Dep't 1996) ................................................................16

*Washington Avenue Associates, Inc. v. Euclid Equipment, Inc.,*
231 A.D.2d 624, 647 N.Y.S.2d 530 (2d Dep't 1996) ................................................................16

*Waste Distillation Technology, Inc. v. Blasland & Bouck Engineers, P.C.,*
229 A.D.2d 486, 645 N.Y.S.2d 511 (2d Dep't 1996) ........................................................28, 29, 30

*Yan v. Potter,*
2 A.D.3d 842, 769 N.Y.S.2d 379 (2d Dep't 2003) ................................................................16

**Statutes and Rules**

CPLR 3211(a)(1) ........................................................................................................1, 6

CPLR 3211(a)(7) ......................................................................................................1, 6, 25

N.Y. Civil Rights Law § 70-a ................................................................................................12

N.Y. Civil Rights Law § 74 ............................................................................................8, 13, 14

N.Y. Civil Rights Law § 76-a ................................................................................................12

N.Y. General Business Law § 349 ............................................................................................29

15 U.S.C. § 45(b) ....................................................................................................10, 11

15 U.S.C. § 45(c) ....................................................................................................10, 11

15 U.S.C. § 53(c) ....................................................................................................10, 11

**Miscellaneous**

http://www.crnusa.org/who_about.html ...........................................................................................2

http://www.crnusa.org/who_staff_bios.html ....................................................................................2

Defendants The Council for Responsible Nutrition and Annette Dickinson (collectively, "CRN") respectfully submit this memorandum of law in support of their motion pursuant to CPLR 3211(a)(1) and (7) to dismiss the complaint, with prejudice and without leave to replead, on the grounds that the action is barred by constitutional, statutory and common law privileges and immunities and defenses founded upon documentary evidence, and that the complaint otherwise fails to state a cause of action.[1]

## I.    PRELIMINARY STATEMENT

In this action, a website operator seeks to silence and punish victims of its coercive and deceptive business practices who reported these practices to a federal agency and petitioned the agency to initiate an enforcement proceeding, by imposing damages and injunctive relief for alleged defamation and various business torts. The complaint fails to state a cause of action and should be dismissed in its entirety, for several independent reasons:

*First*, the allegedly defamatory and other tortious communications were made as part of an effort to petition the federal government to take action, and therefore are immune from suit under the *Noerr-Pennington* doctrine.

*Second*, the communications were filings made in connection with a quasi-judicial proceeding and a fair and true report of the proceeding, and therefore are all absolutely privileged under New York law.

*Third,* the communications are not actionable because a reasonable person, reading each communication as a whole, would have understood them to be expressions of CRN's opinions when it was advocating for an enforcement action against ConsumerLab.

---

[1]     A copy of the complaint is attached to the accompanying Affirmation of Eric Hellerman dated June 13, 2005 (the "Hellerman Affirmation" or "Hellerman Aff.") as Exhibit 1. Citations to the exhibits attached to the complaint are to "Compl. Ex. __." Citations to the documentary evidence attached as exhibits to the Hellerman Affirmation are to "Hellerman Aff. Ex. __."

*Fourth*, the complaint fails to state a cause of action for defamation or related torts because each of the allegedly defamatory statements contained in these communications is either true, as shown by documentary evidence, or is a non-actionable expression of opinion.

*Fifth*, the remaining claims, alleging various business torts, all must be dismissed for failure to state a cause of action because the complaint fails to allege special damages and other essential elements.[2]

## II.     FACTUAL BACKGROUND

### A.     The Parties

Defendant The Council for Responsible Nutrition is a trade association that represents ingredient suppliers and manufacturers in the dietary supplement industry. Its "mission is to improve the environment for member companies to responsibly market dietary supplements." http://www.crnusa.org/who_about.html (last accessed June 13, 2005). Defendant Annette Dickinson, Ph.D., is the Council's Past President; she retired in May 2005 and now serves as a Consultant. *See* http://www.crnusa.org/who_staff_bios.html (last accessed June 13, 2005).

Plaintiff ConsumerLab.com, LLC ("ConsumerLab") operates a website on which it publishes tests of health and nutrition products, including products manufactured by CRN members. *See* Hellerman Aff. Ex. 2. ConsumerLab alleges in this action that statements in three communications – a complaint CRN filed with the Federal Trade Commission ("FTC") concerning ConsumerLab's business practices, a press release CRN issued regarding its filing and a letter CRN filed with the FTC in response to widely-disseminated letter from ConsumerLab's president – are defamatory and otherwise tortious.

---

[2]     Determination that the complaint should be dismissed because the communications are immune under the *Noerr-Pennington* doctrine or that they are absolutely privileged under New York law obviates the need to reach the third, fourth or fifth grounds for dismissal.

B.     The Statements at Issue

The complaint practically quotes the communications wholesale, making it difficult to ascertain precisely which statements are alleged to be defamatory. For purposes of this motion, however, the statements that ConsumerLab appears to be complaining of can be categorized in four groups:

1.     **The "Business Model" statements**, the substance of which is that ConsumerLab's business model is deceptive because it coerces supplement manufacturers to pay ConsumerLab not to disclose that their products have "failed" tests it arranges and to pay ConsumerLab to publicize the results of the tests if their products "pass," and that if a manufacturer refuses to pay ConsumerLab's fees, it risks having ConsumerLab choose to test its products and publicize failing results;

2.     **The "Independence" statements**, the substance of which is that ConsumerLab's public statements that it is independent of the supplement industry are deceptive because ConsumerLab actually relies on fees from manufacturers, paid as a result of these coercive practices;

3.     **The "Laboratory" statements**, the substance of which is that ConsumerLab's name and public statements are deceptive because they imply that it is a laboratory when in fact it is not, and its business address is a mail drop;

4.     **The "Employees" statement**, the substance of which is that ConsumerLab has only three key employees, who were the only employees identified on ConsumerLab's website.

All of these statements are absolutely privileged. They also are proven true by documentary evidence or are non-actionable allegations or statements of opinion.

C.     **The Three Communications in Which the Statements Were Made**

1.     **The FTC Complaint**

On January 12, 2005, CRN filed with the FTC a request for "an investigation of, and enforcement against, ConsumerLab.com." Compl. Ex. A (the "FTC Complaint"). The FTC Complaint argued that ConsumerLab's business model, acts and name are deceptive and misleading in violation of the FTC Act, and sought an order compelling ConsumerLab to cease these violations. *See id.*

3

The FTC Complaint asserted that ConsumerLab operates two separate testing programs, one that tests products whose manufacturers have paid ConsumerLab a fee to publicize positive test results and conceal negative results, and a second in which ConsumerLab itself chooses the products to test and then publishes the results whether positive or negative. *Id.* at 2-4. The FTC Complaint described how "companies are pressured by ConsumerLab into paying a fee," because they fear that ConsumerLab will chose to test their products and publicize negative results on its website if they do not pay ConsumerLab's fee. *Id.* at 4. Attached as an exhibit to the FTC Complaint was a copy of what it described as a typical ConsumerLab testing agreement (which ConsumerLab does not contest).[3] *See* Compl. Ex. A at 2 n.3 & 13-16. The Complaint also asserted that ConsumerLab's claims of independence and its very name are deceptive, because it relies on fees from companies who pay it to test their products and hide failing results, and because it is not and does not operate a laboratory. *See id.* at 2-3, 5-6.

## 2.    The Press Release

On January 13, 2005, CRN issued a press release entitled "FTC Urged to Investigate Purported Consumer Watchdog: Trade Association Petitions Agency to Stop ConsumerLab.com's Deceptive Business Practices," which announced the filing of, and summarized, the FTC Complaint. Compl. Ex. B (the "Press Release").

## 3.    The Response Letter

On January 21, 2005, CRN filed with the FTC a letter to Tod Cooperman, ConsumerLab's president, responding to a letter he had widely circulated regarding the FTC Complaint. *See* Compl.

---

[3]      As stated in the FTC Complaint, CRN received this contract from one of its member companies. *See* Compl. Ex. A at 2 n.3, 13. The version annexed to the FTC Complaint was retyped to protect that company from feared retaliation by ConsumerLab. A copy of the original contract, as received by CRN but with the fax header redacted for the same reason, is attached as Exhibit 3 to the Hellerman Affirmation.

Ex. C (the "Response Letter"). As stated in the Response Letter, Tod Cooperman's letter "admits to the very business practices about which we are complaining," and his description of his company's business practices was "entirely consistent with [CRN's] description of [ConsumerLab's] business practices in our FTC Complaint." *Id.* at 1.

Subsequently, the FTC stated in a letter addressed to Dr. Dickinson dated March 15, 2005, that its "staff is not recommending agency action *at this time.* The Commission reserves the right, however, to take such further action as the public interest may require." Compl. Ex. D. at 2 (emphasis added). The letter did not state why the FTC staff did not recommend agency action at that time. ConsumerLab commenced this action three weeks later.

### D.    The Complaint's Allegations and Claims for Relief

The complaint in this action alleges that the two documents CRN filed with the FTC and the Press Release are false, defamatory and otherwise tortious. *See* Compl. ¶¶ 15, 18, 20. The complaint purports to assert eight causes of action, all of which are based on the same allegedly defamatory communications. *See id.* ¶¶ 26-71. The complaint seeks as relief damages in various forms aggregating $6,500,000, and $5,000,000 in punitive damages, and injunctive relief against dissemination of the statements at issue. *See* Compl. Prayer for Relief ¶¶ a-e, g.

### E.    The Documentary Evidence Submitted in Support of this Motion

Attached as exhibits to the Hellerman Affirmation is documentary evidence that proves the truth of the allegedly defamatory statements. These documents – a contract, website postings and marketing documents created by ConsumerLab and a press release issued by a company that was victimized by ConsumerLab – prove that ConsumerLab discloses to the general public passing test results only for products whose manufacturers pay its fees, conceals failing test results for companies that pay its fees, and publicizes failing test results unless a manufacturer pays ConsumerLab for its silence. The documentary evidence also proves that ConsumerLab identified

only three employees on its website, that it is not and has no laboratory, and that its published business address is a UPS drop box.

### III.   ARGUMENT

CPLR 3211(a)(7) provides for dismissal of a cause of action where the allegations of the complaint fail to state a cause of action either because it is barred by privilege or immunity or because one or more essential elements of the cause of action are not alleged. *See Allan and Allan Arts Ltd. v. Rosenblum*, 201 A.D.2d 136, 137, 615 N.Y.S.2d 410, 411 (2d Dep't 1994); *Lovisa Constr. Co. v. Metropolitan Transp. Auth.*, 198 A.D.2d 333, 333-34, 603 N.Y.S.2d 886, 886-87 (2d Dep't 1993); *Soule v. Norton*, 299 A.D.2d 827, 828, 750 N.Y.S.2d 692, 694-95 (4th Dep't 2002). CPLR 3211(a)(1) provides for dismissal where documentary evidence refutes any essential element of a cause of action, or definitively disposes of a cause of action, or resolves all factual issues with respect to that cause of action as a matter of law. *See Sung v. Hong*, 254 A.D.2d 271, 272, 678 N.Y.S.2d 116, 117 (2d Dep't 1998); *Robinson v. Robinson*, 303 A.D.2d 234, 235, 757 N.Y.S.2d 13, 15 (1st Dep't 2003). For the reasons set forth below, each of ConsumerLab's causes of action, and the complaint in its entirety, should be dismissed with prejudice and without leave to replead.

### A.   The Complaint Is Barred by the *Noerr-Pennington* Doctrine

All of the communications at issue are immunized from suit under the *Noerr-Pennington* doctrine, which holds that a person "may not be subjected to liability for petitioning the government." *I.G. Second Generation Partners, L.P. v. Duane Reade*, 17 A.D.3d 206, __, 793 N.Y.S.2d 379, 381 (1st Dep't 2005) (affirming dismissal of complaint after holding that *Noerr-Pennington* barred all causes of action based on defendants' prior declaratory judgment action). The application of the *Noerr-Pennington* doctrine is a question of law that may be determined on a motion to dismiss. *Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*, 268 A.D.2d 101, 107, 707 N.Y.S.2d 647, 652 (2d Dep't 2000).

"Although the *Noerr-Pennington* doctrine initially arose in the antitrust field, the courts have expanded it to protect First Amendment petitioning of the government from claims brought under Federal and State law." *Id.* It immunizes direct statements to the government as well as statements made in the course of a campaign designed to influence public opinion and encourage government action. *See id.* at 104, 707 N.Y.S.2d at 650; *Miracle Mile Assocs. v. City of Rochester*, No. 78-592, 1979 WL 1649, at *7 (W.D.N.Y. May 18, 1979), *aff'd as modified*, 617 F.2d 18 (2d Cir. 1980).

The immunity provided by the *Noerr-Pennington* doctrine is *absolute. See Alfred Weissman Real Estate*, 268 A.D.2d at 108, 707 N.Y.S.2d at 653; *see also Concourse Nursing Home v. Engelstein*, 181 Misc.2d 85, 90, 692 N.Y.S.2d 888, 891 (Sup. Ct. New York County 1999) ("Under the *Noerr-Pennington* doctrine, defendants' motives . . . are irrelevant."), *aff'd*, 278 A.D.2d 35, 717 N.Y.S.2d 154 (1st Dep't 2000).[4]

The FTC Complaint, the Press Release and the Response Letter were communications made as part of CRN's efforts to convince the FTC to take action against ConsumerLab. *See* Compl. Ex. A (FTC Complaint) at 1 ("The Council for Responsible Nutrition hereby requests an investigation of, and enforcement against, ConsumerLab.com"); Compl. Ex. B (Press Release) at 1 ("The Council for Responsible Nutrition (CRN) has asked the Federal Trade Commission (FTC) to investigate deceptive business practices by ConsumerLab.com and take appropriate action."); Compl. Ex. C (Response Letter) at 2. Therefore, all of the communications at issue are immunized from suit by the *Noerr-Pennington* doctrine. Because each cause of action is premised on these communications, the *Noerr-Pennington* doctrine requires that the complaint be dismissed in its

---

[4]     The complaint is replete with allegations of bad faith, malice and intent to injure. CRN's alleged intent, motives and state of mind are not at issue on this motion. However, CRN will, if necessary, deny and refute any and all such allegations and any other allegation of wrongdoing at the appropriate time.

entirety.

**B.     The Complaint Is Barred by the Absolute Privileges for Communications Pertinent to Quasi-Judicial Proceedings and for Fair and True Reports of Those Proceedings**

The three communications on which all of ConsumerLab's causes of action are based are absolutely privileged under New York law. CRN's two FTC filings were made in the course of a quasi-judicial proceeding, and therefore are absolutely privileged. The Press Release is absolutely privileged because it is a "fair and true report" of official proceedings, protected from suit by Civil Rights Law § 74. New York courts have repeatedly applied this privilege to bar claims based on a party's circulation or summary of a complaint that it has filed. The application of these privileges to CRN's communications is a question of law for the Court that may be decided on a motion to dismiss. *See Allan and Alan*, 201 A.D.2d at 137, 615 N.Y.S.2d at 411; *Glendora v. Gannett Suburban Newspapers*, 201 A.D.2d 620, 620-21, 608 N.Y.S.2d 239, 240-41 (2d Dep't 1994).

**1.     The FTC Filings Are Absolutely Privileged Because They Were Made in Connection With a Quasi-Judicial Proceeding**

"It is well settled that public policy mandates that certain communications, although [allegedly] defamatory, cannot serve as the basis for the imposition of liability in a defamation action. In accord with this principle, it has been held that due to compelling public policy reasons, statements uttered in the course of judicial or quasi-judicial proceedings are absolutely privileged so long as they are material and pertinent to the questions involved and notwithstanding the motive with which they are made." *Dunn v. Ladenburg Thalmann & Co.*, 259 A.D.2d 544, 544-45, 686 N.Y.S.2d 471, 472 (2d Dep't 1999) (citations and internal quotation marks omitted).

The absolute immunity for statements made in quasi-judicial proceedings has been applied to statements made in connection with "a wide array of hearings held by administrative agencies." *Allan and Allan*, 201 A.D.2d at 139, 615 N.Y.S.2d at 412 (collecting cases). This "absolute

8

privilege attaches not only the hearing stage, but to every step of the proceeding in question even if

it is preliminary and/or investigatory and irrespective of whether formal charges are ever

presented." *Herzfeld & Stern, Inc. v. Beck*, 175 A.D.2d 689, 691, 572 N.Y.S.2d 683, 685 (1st Dep't

1991); *see also Park Knoll Associates v. Schmidt*, 89 A.D.2d 164, 171, 454 N.Y.S.2d 901, 906 (2d

Dep't 1982) (absolute privilege "attaches to every step thereof until final disposition, including

situations in which voluntary action by the citizen is a preliminary to a statutory proceeding")

(internal citations and quotation marks omitted), *rev'd on other grounds*, 59 N.Y.2d 205, 464

N.Y.S.2d 424 (1983). "The absolute privilege will apply to any statement that may possibly or

plausibly be relevant or pertinent, with the barest rationality." *Joseph v. Larry Dorman, P.C.*, 177

A.D.2d 618, 618-19, 576 N.Y.S.2d 588, 589 (2d Dep't 1991).

      Whether a proceeding is "quasi-judicial" and whether a communication in such a proceeding

is protected by an absolute privilege are determined by the criteria set by the Second Department in

*Park Knoll Associates*:

> The shield of absolute immunity extends to the proceedings of administrative
> agencies where such proceedings are *adversarial*, result in a determination based upon
> the *application of* appropriate provisions in the *law to the facts* and which are
> susceptible to *judicial review*. . . . [O]ur inquiry must not only consider the particular
> characteristics of the proceeding in which they were made, it must also focus upon the
> particular policy considerations attendant upon such grant.

89 A.D.2d at 171, 454 N.Y.S.2d at 906.[5] CRN's two FTC filings were preliminary steps in an FTC

---

[5]    In *Park Knoll Associates*, the Court of Appeals held that the letters submitted to the State
Commission of Housing and Community Renewal by the president of a tenant's association who
was not a party to the Commission proceeding were covered by a qualified, not an absolute,
privilege, because she was merely helping parties to the proceeding prepare their letters, and she
was not herself a party to that proceeding. 59 N.Y.2d at 210, 464 N.Y.S.2d at 427. Here, in
contrast, CRN filed the FTC Complaint and Response Letter with the FTC itself. The Court of
Appeals did not criticize the criteria used by the Second Department to determine whether a
communication is absolutely privileged. These criteria have subsequently been cited with approval
by many courts, including the Second Department. *See, e.g., Allan and Allan*, 201 A.D.2d at 141,
615 N.Y.S.2d at 413; *Herzfeld & Stern*, 175 A.D.2d at 691, 572 N.Y.S.2d at 685; *Stilsing Elec., Inc.*

enforcement proceeding that meets all of the criteria for a quasi-judicial proceeding set forth in *Park Knoll Associates*.

The FTC Complaint "request[ed] an investigation of, and enforcement against, ConsumerLab.com," and "urge[d] prompt investigation and swift enforcement to curtail ConsumerLab.com's unfair business practices," Compl. Ex. A at 1, 8. The FTC Act and the FTC regulations authorize the FTC staff to respond to complaints such as CRN's with either an administrative enforcement proceeding or a direct judicial enforcement action.[6]  An FTC administrative enforcement proceeding is tried in the first instance before an administrative law judge ("ALJ") in a trial-type proceeding. Upon the conclusion of the hearing, the ALJ issues an initial decision setting forth his findings of fact and conclusions of law, and recommending either entry of an order to cease and desist or dismissal of the complaint. Either the FTC trial counsel or the respondent, or both, may appeal the ALJ's initial decision to the full FTC. The FTC receives briefs, holds oral argument, and then issues its own final decision. If the FTC rules against the respondent, the respondent may seek review by a United States Court of Appeals. *See* Hellerman Aff. Ex. 4 at 3-5; *see also* 15 U.S.C. §§ 45(b), 45(c), 53(c). The FTC also can respond to a complaint such as CRN's by seeking a preliminary and permanent injunction from a United States District Court. *See* Hellerman Aff. Ex. 4 at 5; *see also* 15 U.S.C. § 53(c).

In either case – administrative enforcement proceeding or injunctive action – the FTC proceedings satisfy all of the *Park Knoll Associates* criteria. *See* 89 A.D.2d at 171, 454 N.Y.S.2d at 906. The FTC administrative proceedings are adversarial. The respondent "has the right to appear . . . and show cause why an order should not be entered by the Commission requiring [the

*v. Joyce*, 113 A.D.2d 353, 356, 495 N.Y.S.2d 999, 1001-02 (3d Dep't 1985). Under these criteria, CRN's FTC filings are absolutely privileged.

[6]     A summary of the FTC's enforcement procedures issued by the FTC Office of the General Counsel and published on the FTC website is attached as Exhibit 4 to the Hellerman Affirmation.

respondent] to cease and desist from the violation of the law so charged in [the] complaint." 15

U.S.C. § 45(b).  District court injunctive proceedings are similarly adversarial.  The proceedings

involve the application of law (the statutes and regulations enforced by the FTC) to facts.  And both

the FTC administrative proceedings and rulings in FTC district court injunctive actions are subject

to judicial review.  *See* 15 U.S.C. §§ 45(c), 53(b).

     It is irrelevant for purposes of applying the absolute privilege that the FTC staff

subsequently stated that it was "not recommending agency action at this time [but] reserves the right

. . . to take such further action as the public interest may require," Compl. Ex. D at 2.  The absolute

privilege applies "to every step" of the proceedings "including situations in which voluntary action

by the citizen is a preliminary to a statutory proceeding," *Park Knoll Assocs.*, 89 A.D.2d at 171,

454 N.Y.S.2d at 906, and "irrespective of whether formal charges are ever presented." *Herzfeld &*

*Stern*, 175 A.D.2d at 691, 572 N.Y.S.2d at 685.  CRN's FTC Complaint and Response Letter urging

the FTC to take action against ConsumerLab were such "voluntary actions by [a] citizen . . .

preliminary to a statutory proceeding," and therefore are absolutely privileged.

     An absolute privilege for communications to the FTC regarding deceptive business practices

serves important policy considerations, which the Second Department has stated a court must

consider.  *See Park Knoll Assocs.*, 89 A.D.2d at 171, 454 N.Y.S.2d at 906; *Allan and Allan*, 201

A.D.2d at 141, 615 N.Y.S.2d at 413.  Concerned citizens, businesses, trade organizations and

consumer groups must be able to bring potential violations of the laws against deceptive business

practices to the attention of the government without fear that the subject of their complaints will

retaliate with a defamation or similar suit.  *See Allan and Allan*, 201 A.D.2d at 143, 615 N.Y.S.2d at

415 (absolute privilege for statements made in a quasi-judicial proceeding "advance[es] the

important public policy of encouraging the active participation of the citizenry in issues affecting

11

the welfare of that community"). In *Allan and Allan*, the Second Department cited the legislative

findings and purpose of the codification of a related protection (New York's recently-enacted anti-

SLAPP statutes (Civil Rights Law §§ 70-a and 76-a)), that articulate why, as a matter of public

policy, CRN's statements to the FTC must be absolutely privileged:

> The legislature hereby declares it to be the policy of the state that the rights of citizens to participate freely in the public process must be safeguarded with great diligence. The laws of the state must provide the utmost protection for the free exercise of speech, petition and association rights, particularly where such rights are exercised in a public forum with respect to issues of public concern.
>
> The legislature further finds that the threat of personal damages and litigation costs can be and has been used as a means of harassing, intimidating, or punishing individuals, unincorporated associations, not-for-profit corporations and others who have involved themselves in public affairs.

*Id.* at 143-44, 615 N.Y.S.2d at 415 (quoting L. 1992, ch. 767, § 1). CRN's FTC filings are squarely

within the ambit of these legislative findings. Without this absolute privilege, ConsumerLab can

use this lawsuit and the threat of similar suits as "means of harassing, intimidating, or punishing"

CRN for bringing a matter of public concern to a government agency. *Id.*; *see also* Compl. Ex. A at

4-6 (describing harm to consumers caused by ConsumerLab).

Accordingly, CRN's FTC filings are absolutely privileged and thus immune from a

defamation suit. The absolute privilege also bars all of ConsumerLab's other causes of action

because they all are based on those privileged statements, and thus requires the dismissal of the

complaint in its entirety. *See* Compl. ¶¶ 56-57, 61, 63, 68. *See, e.g., Harms v. Riordan-Bellizi*, 223

A.D.2d 624, 625, 636 N.Y.S.2d 839, 840 (2d Dep't 1996) (dismissing defamation and injurious

falsehood claims); *Arts4All, Ltd.* v. *Hancock*, 5 A.D.3d 106, 773 N.Y.S.2d 348 (1st Dep't 2004)

(dismissing defamation and prima facie tort claims).

2.      The Press Release is Absolutely Privileged Pursuant to Civil
        Rights Law § 74

The Press Release is absolutely privileged under Civil Rights Law § 74, which provides that

"[a] civil action cannot be maintained against any person, firm or corporation, for the publication of

a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding."

"Section 74 protection extends to [reports of] any pleading made within the course of the

proceeding." *Branca v. Mayesh*, 101 A.D.2d 872, 873, 476 N.Y.S.2d 187, 188 (2d Dep't 1984).

The Court may determine whether an allegedly defamatory communication is a fair and true report

within the meaning of this statute on a motion to dismiss. *See Glendora*, 201 A.D.2d at 620-21, 608

N.Y.S.2d at 240-41.

"[T]he privilege set forth in Civil Rights Law § 74 is *absolute*, and is not defeated by the

presence of malice or bad faith." *Id.* at 620, 608 N.Y.S.2d at 241 (emphasis added).  The privilege

is not limited to reports of court proceedings; by the statute's plain terms, it applies to a report of

"any judicial proceeding, legislative proceeding or *other official proceeding*," including a quasi-

judicial proceeding. *See, e.g., Leder v. Feldman*, 173 A.D.2d 317, 318, 569 N.Y.S.2d 702, 703 (1st

Dep't 1991) (Section 74 immunizes articles summarizing testimony at administrative hearing and

ALJ's decision).  The protection is not limited to members of the media; "a 'fair and true report' of

the proceeding may be published by 'any person', *including those connected with the suit*."

*Branca*, 101 A.D.2d at 873, 476 N.Y.S.2d at 189 (emphasis added).

The "fair and true" requirement is liberally construed.  The Court of Appeals has stated that

"[f]or a report to be characterized as 'fair and true' within the meaning of the statute, thus

immunizing its publisher from a civil suit sounding in libel, it is enough that the substance of the

article be substantially accurate.  A fair and true report admits of some liberality; the exact words of

every proceeding need not be given if the substance be substantially stated." *Holy Spirit Assoc. for*

13

*the Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 67, 424 N.Y.S.2d 165, 167 (1979); *see also McDonald v. East Hampton Star*, 10 A.D.3d 639, 639-40, 781 N.Y.S.2d 694, 695 (2d Dep't 2004) (same).

Section 74 applies to CRN's Press Release. The Appellate Division repeatedly has held that Section 74 provides an absolute privilege for the public circulation by a party of its complaint or a document summarizing its contentions. *See, e.g., Fishoff v. Abady*, 280 A.D.2d 417, 417-18, 720 N.Y.S.2d 505, 506 (1st Dep't 2001) (holding that Section 74 applies to a party's circulation of pleadings to the media at a press conference; "[t]he absolute privilege under [Section 74] also extends to the release of background material with regard to the case, so long as the statement is a substantially accurate description of the allegation"); *Branca*, 101 A.D.2d at 873, 476 N.Y.S.2d at 188 (Section 74 immunizes the distribution of a complaint at a bar association seminar); *Cordell-Reeh v. Nannies of St. James, Inc.*, 13 A.D.3d 140, 140, 785 N.Y.S.2d 694, 694 (1st Dep't 2004) (Section 74 immunizes statements made by the plaintiff and her attorney to the media describing the allegations of her complaint); *Hughes Training Inc. v. Pegasus Real-Time Inc.*, 255 A.D.2d 729, 730, 680 N.Y.S.2d 721, 723 (3d Dep't 1998) (Section 74 immunizes party's posting of memorandum summarizing litigation).

It is beyond question that the Press Release was a fair and true summary of the FTC Complaint. *Compare* Compl. Ex. A (FTC Complaint) *with* Compl. Ex. B (Press Release). It stated at the outset that CRN submitted a petition asking the FTC to take action against ConsumerLab. It then summarized the contents of the FTC Complaint, including CRN's allegations regarding ConsumerLab's business model, how ConsumerLab treats the results of its "voluntary" testing program differently from the results of its no-fee testing programs, and how ConsumerLab misleadingly suggests in its written materials that it conducts its own tests of supplements. It then

14

identified the relief that CRN asked the FTC to impose. The Press Release also contained two

quotations from Dr. Dickinson summarizing other statements in the Press Release that describe the

FTC Complaint and stating the reasons why CRN filed the FTC Complaint. *See* page 25, *infra.* The

Press Release also stated that "[c]ontrary to the image it projects of an actual testing facility,

ConsumerLab.com essentially is a three-person operation, and its business address is a UPS drop box

in White Plains, N.Y," Compl. ¶ 18(e), language that does not differ in substance from the content of

the Complaint itself. (Nor is it defamatory.) The fact that the Press Release contained statements that

were not in the FTC Complaint does not make the privilege inapplicable to the Press Release or these

statements. *See Branca*, 101 A.D.2d at 873, 476 N.Y.S.2d at 189 ("We also reject plaintiff's

contention that the report cannot be regarded as 'fair and true' in view of the comments [defendant]

added to it. For a report to be characterized as 'fair and true', 'it is enough that the substance of the

article be substantially accurate' and the language 'should not be dissected and analyzed with a

lexicographer's precision.'") (quoting *Holy Spirit Assoc.*, 49 N.Y.2d at 67-68, 424 N.Y.S.2d at 168).

### C.  All of the Allegedly Defamatory Communications or the Allegedly Defamatory Statements Contained in These Communications Are Otherwise Not Actionable

The causes of action for defamation (First Cause of Action), injurious falsehood (Second

Cause of Action) and trade libel (Third Cause of Action) should be dismissed for the independent

reason that these communications and the allegedly defamatory statements in them are otherwise

not actionable. A reasonable reader of the FTC Complaint, the Press Release and the Response

Letter would have concluded that they were communications by CRN as part of its efforts to

convince the FTC to act. Each statement, viewed as a whole, is a non-actionable piece of advocacy.

Furthermore, each of the allegedly defamatory statements in these three communications is proven

true by documentary evidence, or is non-actionable.

The essential elements of the tort of defamation include (i) a false statement of fact, (ii)

15

made by the defendants, (iii) about the plaintiff. *See Brian v. Richardson*, 87 N.Y.2d 50, 51, 637

N.Y.S.2d 347, 350 (1995). A false statement of fact also is an element of the tort of trade libel,

sometimes called injurious falsehood. *See Waste Distillation Tech., Inc. v. Blasland & Bouck*

*Engineers, P.C.*, 136 A.D.2d 633, 634, 523 N.Y.S.2d 875, 877 (2d Dep't 1988). Accordingly,

"[t]ruth is an absolute defense to a cause of action based on defamation." *Yan v. Potter*, 2 A.D.3d

842, 843, 769 N.Y.S.2d 379, 379 (2d Dep't 2003). "[T]ruth need not be established to an extreme

literal degree. Provided that the defamatory material on which the action is based is substantially

true (minor inaccuracies are acceptable), the claim to recover damages for libel must fail." *Love v.*

*William Morrow and Co.*, 193 A.D.2d 586, 587, 597 N.Y.S.2d 424, 426 (2d Dep't 1993) (citations

omitted) (affirming dismissal of complaint because allegedly defamatory statements were

substantially true). Statements of opinion that are accompanied by a recitation of the facts upon

which they are based or that do not imply that they are based on undisclosed facts are not

actionable. *Shinn v. Williamson*, 225 A.D.2d 605, 606, 639 N.Y.S.2d 105, 106 (2d Dep't 1996).

Nor may a defamation claim be based on statements that are "rhetorical hyperbole . . . when

evaluated in the context in which the statements were made." *Gatto v. Callaghan*, 231 A.D.2d 552,

552, 647 N.Y.S.2d 290, 291 (2d Dep't 1996) (internal quotation marks omitted). Application of

these principles requires the dismissal of the defamation claims for failure to state a cause of action.

### 1. The FTC Filings and Press Release Are Not Actionable Because a Reasonable Reader Would Have Understood That CRN Was Advocating for an FTC Enforcement Action in Them

The FTC Complaint, Response Letter and Press Release, each read as a whole, were non-

actionable communications advocating for FTC action against ConsumerLab and expressing CRN's

opinions. "Where it is apparent to the reasonable reader that the allegedly defamatory material

'represented the opinion of the author' and that its 'specific charges * * * were allegations and not

demonstrable fact', a libel cause of action does not lie." *Vengroff v. Coyle*, 231 A.D.2d 624, 626,

647 N.Y.S.2d 530, 532 (2d Dep't 1996) (quoting *Brian*, 87 N.Y.2d at 54, 637 N.Y.S.2d at 352)

(alteration in original). This is a determination that can be made by the Court on a motion to

dismiss. *See id.* Because a reasonable person would have understood each of CRN's three

communications to be advocating for FTC action against ConsumerLab, none of these

communications are actionable:

> "[T]he courts must consider the content of the communication as a whole, as
> well as its tone and apparent purpose. *Rather than sifting through a communication
> for the purpose of isolating and identifying assertions of fact, the court should look
> to the overall context in which the assertions were made* and determine on that basis
> whether the reasonable reader would have believed that the challenged statements
> were conveying facts about the libel plaintiff. In addition to considering the
> immediate context in which the disputed words appear, the courts are required to
> take into consideration the larger context in which the statements were published,
> including the nature of the particular forum.

*Brian*, 87 N.Y.2d at 51-52, 637 N.Y.S.2d at 351 (internal quotation marks and citations omitted;

emphasis added). It is clear from CRN's FTC filings and Press Release that CRN was advocating

for an FTC enforcement action against ConsumerLab because manufacturers such as CRN's

members were being victimized by ConsumerLab's coercive and deceptive business practices:

- "The Council for Responsible Nutrition hereby requests an investigation of, and enforcement against, ConsumerLab.com (ConsumerLab)." Compl. Ex. A (FTC Complaint) at 1.

- "This entire business model represents an egregious form of consumer fraud and deception. We therefore request that the FTC investigate ConsumerLab and its method of business operations thoroughly and bring appropriate enforcement action to assure that these deceptive practices do not continue." *Id.* at 7.

- "The Council for Responsible Nutrition (CRN) has asked the Federal Trade Commission (FTC) to investigate deceptive business practices by ConsumerLab.com and take appropriate action." Compl. Ex. B (Press Release) at 1.

- "To pressure the companies to pay a fee to obtain maximum public exposure for positive results and to quash negative results amounts to a shake-down, which we are asking the FTC to stop." Compl. Ex. C (Response Letter) at 2.

Because a reasonable reader would have understood that CRN was advocating for an

enforcement action, ConsumerLab cannot state a cause of action for defamation, trade libel or

injurious falsehood based on any of these three documents. *See Brian*, 87 N.Y.2d at 53, 637

N.Y.S.2d at 352 (affirming dismissal of libel action in part because the author of the op-ed essay

alleged to be defamatory "disclosed that he had been [plaintiff's competitor's] attorney, thereby

signaling that he was not a disinterested observer"); *Gatto*, 231 A.D.2d at 552, 647 N.Y.S.2d at 291

("in light of the nature of the fora in which these allegedly defamatory statements were published, it

should have been immediately plain to the readership that the articles contained in these

publications, which reflected union opposition to the growth of private bus lines employing

nonunion drivers, were expressions of individual opinion"); *Dancer v. Bergman*, 246 A.D.2d 573,

574, 668 N.Y.S.2d 213, 214 (2d Dep't 1998) ("the tenor of the editorial alerted the reader that the

piece contained expressions of opinion").

> **2.     None of the Allegedly Defamatory Statements in the FTC
> Complaint Are False Statements of Fact About ConsumerLab**

The causes of action for defamation, injurious falsehood and trade libel should be dismissed

for the independent reason that even if the Court "sifts through [these] communication[s] for the

purpose of isolating and identifying assertions of fact," *Brian*, 87 N.Y.2d at 51, 637 N.Y.S.2d at

351, the statements alleged to be defamatory all are either proven true by documentary evidence or

are not statements of fact upon which a defamation claim may be based.

Only a false statement of fact can be the basis for a defamation claim. *See id.* The plaintiff

has the burden of proving that the statements at issue are false statements of fact. Moreover, where

a plaintiff in a defamation case is a public figure, it must prove falsity by clear and convincing

evidence, a much higher standard of proof than preponderance of the evidence.[7] *See Cancer Action*

---

[7]     ConsumerLab's status as a public figure also requires it to prove with convincing clarity that
CRN acted with "actual malice," *i.e.*, knowledge of falsity or reckless disregard of the truth. *See*

*NY v. St. Lawrence County Newspapers Corp.*, 12 A.D.3d 880, 880-81, 784 N.Y.S.2d 727, 728-29 (3d Dep't 2004). There can be no question that ConsumerLab is a public figure. *See, e.g.*, Hellerman Ex. 8 at 1 (ConsumerLab's claim that "it has been at the forefront of exposing problems in the supplement industry"); Compl. ¶ 25 (alleging that CRN caused ConsumerLab to lose "publicity and media coverage"). In the face of the documentary evidence submitted in support of this motion, ConsumerLab cannot conceivably meet its burden of proving falsity with convincing clarity.

ConsumerLab cannot establish that any of the statements in the FTC Complaint at issue are false statements of fact, because the statements at issue are either true or not statements of fact:

### a)      The Business Model Statements

The FTC Complaint alleged that ConsumerLab treats test results differently, depending on whether a manufacturer has paid ConsumerLab's "voluntary" fee. If a manufacturer pays this fee and its product passes ConsumerLab's test, the passing result will be publicized in ConsumerLab's press releases and publications, and on both the public and subscription-only portions of ConsumerLab's website. However, if a manufacturer does not pay ConsumerLab's fee, ConsumerLab chooses to test the product, and the product passes, this information is available only on the paid subscriber-only portion of ConsumerLab's website. *See* Compl. ¶¶ 15(d), (f)-(h).

ConsumerLab cannot meet its burden of proving that these are false statements of fact, because documentary evidence proves that they are true. ConsumerLab's own words on its website and in the January 13, 2005 letter from Tod Cooperman, its President, state that ConsumerLab operates two parallel testing programs: its "Voluntary Certification Program" which tests products whose manufacturers pay ConsumerLab to test, and its program of testing products that it "chooses

---

*Dancer*, 246 A.D.2d at 574-75, 668 N.Y.S.2d at 214-15. CRN's state of mind, however, is not at issue on this motion.

to test" without being paid to do so. *See* Hellerman Aff. Ex. 2 at 2; *id.* Ex. 8 at 2.

ConsumerLab's own words also prove that it publicizes passing results of products it is paid
to test. The typical ConsumerLab contract attached to the FTC Complaint states that the testing fee
is $3,750 per product and states that, "If a Product Passes the Testing: (a) Requestor [*i.e.*, the
manufacturer] hereby grants to [ConsumerLab] the perpetual right to publish all or some of the
Results, *including the name of the Requestor and the name of the Product.*" Compl. Ex. A at 15
(emphasis added); *see also* Hellerman Aff. Ex. 3 at 3. In addition, an email sent by Lisa Sabin,
ConsumerLab's "VP, Business Development," announcing a new product test states that the testing
fee is $3,250 per product and that the "[b]enefits of having a finished product voluntarily tested *(for
products that pass)*" include "[l]isting as Approved on the popular ConsumerLab.com website,"
"[l]isting in the 2005 edition of ConsumerLab.com's Guide to Buying Vitamins & Supplements"
and "[p]roduct mention in potential media coverage." Hellerman Aff. Ex. 5 at 1 (emphasis added).

It is clear from ConsumerLab's website that that it does not publicly disclose passing results
of products that it "chooses to test," *i.e.* for which it is not paid a fee. There are two versions of test
reports available on ConsumerLab's website, a public version and a version accessible only to
paying subscribers. *See* Hellerman Ex. 2 at 10, 36. A ConsumerLab marketing document trumpets
the fact that products made by manufacturers who do not pay ConsumerLab's fee receive lesser
treatment for passing results. It states that, "Products that participate in CL's licensing and/or
testing programs appear as examples of products from CL Lists, which are available to all Web site
visitors. Otherwise, the product will only appear on the portion of the Web site available to paid
subscribers." Hellerman Aff. Ex. 6. And that is how it works in practice: All of the passing
products listed in the versions of the Vitamin E and multivitamin reports accessible to non-
subscribers that were posted on ConsumerLab's website in August 2004 were those products tested

through this so-called "Voluntary Certification Program." Other passing products, not tested through this "for pay" program, only were listed on the paid subscriber-only versions. *Compare* Hellerman Aff. Ex. 2 at 6-9, 32-36 (public reports) *with id.* at 13-20, 39-45 (subscriber-only reports).[8]

Documentary evidence also proves that ConsumerLab conceals failing results of products whose manufacturers have paid ConsumerLab's testing fee. *See* Compl. ¶¶ 15(d), (f)-(h). The typical ConsumerLab contract attached to the FTC Complaint states that "[i]f a product does not Pass the Testing, Requestor hereby grants to [ConsumerLab] the perpetual right to publish all or some of the Results *without indicating the name of the Requestor or the name of the Product*." Compl. Ex. A at 16 (emphasis added); *see also* Hellerman Aff. Ex. 3 at 3. Consistent with this deal, none of the products listed as "not approved" in the subscriber-only versions of the Vitamin E and multivitamin reports were tested pursuant to the fee-based "Voluntary Certification Program." *See* Hellerman Aff. Ex. 2 at 13-19, 40, 43-45.

Documentary evidence also proves that if a manufacturer refuses to pay ConsumerLab's fee, it risks having ConsumerLab choose to test its product and publicize any failing result. A May 27, 2004 press release issued by Northwest Natural Products (NNP), a company that is not a CRN member, *see* Compl. Ex. A at 10-12, states that ConsumerLab publicized a failing result for a NNP product only after NNP refused to pay ConsumerLab's $22,000 testing fee. *See* Hellerman Aff. Ex. 7 at 2. This failing result was highlighted on the first page of the public version of ConsumerLab's multivitamin report. *See* Hellerman Aff. Ex. 2 at 5.

Other statements about which ConsumerLab complains need not be proved true, because

---

[8]    Products tested through the ConsumerLab "Voluntary Certification Program" are noted with asterisks in the reports posted the ConsumerLab website. The fact that they were tested pursuant to this program is noted in small print at the end of the product listings. *See* Hellerman Aff. Ex. 2 at 9, 19, 36, 45.

they are not statements of fact. The assertions that "ConsumerLab's promotional activities are unfair and deceptive under section 5 of the Federal Trade Commission Act" (Compl. ¶ 15(b)), that "ConsumerLab's name is so deceptive that excision may be warranted" (*id.* ¶ 15(k)), that ConsumerLab's actions harm consumers (*id.* ¶ 15(*l*)), and that ConsumerLab's business practices are unfair, deceptive, and fraudulent (*id.* ¶¶ 15(m)-(p)), are not actionable statements of fact but rather allegations, legal conclusions, or statements of opinion. *See Shinn*, 225 A.D.2d at 606, 639 N.Y.S.2d at 106; *Howlett v. Bloom*, 239 A.D.2d 389, 390, 657 N.Y.S.2d 433, 433-34 (2d Dep't 1997) (affirming dismissal of complaint because "[t]he defendant's statement that the defendant's article was 'tainted' constituted pure opinion"); *Boulous v. Newman*, 302 A.D.2d 932, 933, 754 N.Y.2d 510, 512 (4th Dep't 2003) ("allegations, rather than objective statements, are not actionable").

### b)     The Independence Statements

ConsumerLab cannot meet its burden of establishing that CRN's statements that ConsumerLab misleadingly represents that it is "independent" of industry, Compl. ¶¶ 15(f), (h), (i), are false statements of fact. Those statements are not statements of fact at all. Rather, they are non-actionable statements of opinion "accompanied by a recitation of the facts upon which [they] are based" – the Business Model statements. *See Shinn*, 225 A.D.2d at 606, 639 N.Y.S.2d at 106. The documentary evidence that proves the truth of the Business Model factual statements also proves that ConsumerLab is not independent because it receives testing fees from manufacturers and highlights or hides a test result depending on whether a manufacturer has paid ConsumerLab's fees. *See* pages 19 to 21, *supra*.

### c)     The Laboratory Statements

Nor can ConsumerLab prove that the statements that its name is misleading because it does not operate a laboratory are false statements of fact, *see* Compl. ¶¶ 15(e), (f), (j), (k), because they

too are not statements of fact but rather non-actionable statements of opinion accompanied by a recitation of the facts upon which they are based. *See Shinn*, 225 A.D.2d at 606, 639 N.Y.S.2d at 106. The statement that Consumerlab's name is misleading is a non-actionable statement of CRN's opinion, not a statement of fact. The truth of the recited fact – that ConsumerLab does not operate a laboratory – is proven by Tod Cooperman's January 13, 2005 letter, which admits that "we use outside, expert laboratories" and "we do not publicly disclose the names of these labs." Hellerman Aff. Ex. 8 at 2. ConsumerLab cannot prove that the statement that ConsumerLab suggests to the public that it conducts tests of products itself is a false statement of fact, because documentary evidence proves its truth. The Vitamin E report published on ConsumerLab's website in August 2004 states that "*ConsumerLab.com* . . . purchased many of the leading vitamin E products sold in the U.S. and *tested them* for their quality." Hellerman Aff. Ex. 2 at 31 (emphasis added); *see also* Compl. Ex. A at 6 & n.10. Nowhere in this report does ConsumerLab disclose that it did not perform these tests itself.

### d)    The Other Allegedly Defamatory Statements

ConsumerLab alleges that the FTC complaint's subject line ("Enforcement Action Against ConsumerLab.com") is false and defamatory because it implies that ConsumerLab already was the subject of an enforcement action. *See* Compl. ¶ 15(a). No reasonable reader could have read this subject line and reached this conclusion, since the very first sentence of the FTC Complaint stated that CRN was requesting an investigation and enforcement action against ConsumerLab. The paragraph in the FTC Complaint regarding other "legitimate third-party testing and verification programs," *id.* ¶ 15(n) is not "of and concerning" ConsumerLab, and therefore is not actionable. *See Brian*, 87 N.Y.2d at 51, 637 N.Y.S.2d at 350. The statement at the end of this paragraph discussing other testing programs ("The Consumer Lab business, by contrast, is unfair and deceptive") is a non-actionable statement of opinion accompanied by a recitation of the facts upon

23

which it is based – the Business Model statements. *See Shinn*, 225 A.D.2d at 606, 639 N.Y.S.2d at 106.

### 3.  None of the Allegedly Defamatory Statements in the CRN Press Release Are False Statements of Fact About ConsumerLab

ConsumerLab cannot state a cause of action based on the CRN Press Release for the same reasons that it cannot state a cause of action based on the FTC Complaint. All of the allegedly defamatory statements in the Press Release are proven true by documentary evidence or are non-actionable statements of opinion, and therefore none can be false statements of fact.

The first two allegedly defamatory statements simply reported that CRN had filed its complaint with the FTC. *See* Compl. ¶¶ 18(a)-(b). These statements are not actionable because they are not "of and concerning" ConsumerLab. Furthermore, documentary evidence – the FTC Complaint itself – proves that these statements are true. *See* Compl. Ex. A. Similarly, the FTC Complaint proves the truth of the statement that "CRN is asking the FTC to make ConsumerLab.com: . . . 4) change its name to one that does not falsely imply that it does its own testing." Compl. ¶ 18(i) (ellipsis in original).

The Business Model statements in the Press Release, *see id.* ¶¶ 18(c), (e)-(g) are not defamatory because documentary evidence proves that these statements are true. *See* pages 19 to 21, *supra*. The only factual statement in the Press Release alleged to be defamatory that is not contained in the FTC Complaint is the statement that, "Contrary to the image it projects of an actual testing facility, ConsumerLab.com essentially is a three-person operation, and its business address is a UPS drop box in White Plains, N.Y." Compl. ¶ 18(e). Documentary evidence proves that the address ConsumerLab identifies as its principal place of business is merely a UPS Store. *Compare* Hellerman Aff. Ex. 3 at 1 *with* Hellerman Aff. Exs. 9, 10. Documentary evidence also proves that before CRN filed the FTC Complaint, only three employees were listed on ConsumerLab's website.

24

*See* Hellerman Aff. Ex. 2 at 4.

The Press Release's two quotations from Dr. Dickinson[9] are not actionable because "the facts upon which these allegedly defamatory statements were based are fully and accurately set forth in the [Press Release] and it is clear to a reasonable reader that the accusations are merely opinion . . . built upon those facts." *Miness v. Alter*, 262 A.D.2d 374, 375, 691 N.Y.S.2d 171, 173 (2d Dep't 1999).

> **4.    Neither of the Allegedly Defamatory Statements in the Response Letter Is a False Statement of Fact About ConsumerLab**

ConsumerLab alleges that two statements in the Response Letter are false and defamatory.[10] ConsumerLab cannot state a causes of action based on either of these statements because they are non-actionable assertions of opinion based on statements of fact set forth in the Response Letter. *See* Compl. ¶ 20; *Miness*, 262 A.D.2d at 375, 691 N.Y.S.2d at 173.

> **D.    The Remaining Claims Also Should Be Dismissed for Failure to State a Cause of Action**

ConsumerLab's causes of action other than for defamation also should be dismissed pursuant to CPLR 3211(a)(7) because the complaint does not allege essential elements of these causes of action or because they are not cognizable claims under New York law.

---

[9]    The two quotations from Dr. Dickinson are (a) "Until now, nobody has looked behind the curtain and exposed ConsumerLab.com's tactics. It is a business, not a watchdog – one that intimidates manufacturers to pay for its services. We ask the FTC to lift the veil this company uses to disguise its true nature" and (b) "ConsumerLab.com's entire business model is based upon threat and deception. Forcing it to come clean will take away its ability to mislead the media and the public." Compl. ¶¶ 18(d), (j).

[10]    These two statements are: (a) "To pressure the companies to pay a fee to obtain a maximum public exposure for positive results and to quash negative results amounts to a shake-down, which we are asking the FTC to stop" and (b) "The deception of consumers occasioned by this business model lie[s] in leading the public to believe that ConsumerLab is independent of industry, which it is not, and that all test results are revealed, which they are not." Compl. ¶ 20.

1.    **The Causes of Action for Injurious Falsehood, Trade Libel and "Infliction of Intentional Harm" Should Be Dismissed Because the Complaint Does Not Allege Special Damages With Particularity**

ConsumerLab's causes of action for injurious falsehood, trade libel and "infliction of intentional harm"[11] (Second, Third and Fourth Causes of Action) should be dismissed because ConsumerLab has not alleged that it has incurred special damages as a result of CRN's statements, which is an essential element of all three of these causes of action.

To state a cause of action for injurious falsehood, trade libel or "infliction of intentional harm" (*i.e.*, prima facie tort), a complaint must allege special damages with particularity, and these claims should be dismissed if a complaint only includes conclusory allegations of lost profits or lost business. *See DiSanto v. Forsyth*, 258 A.D.2d 497, 498, 684 N.Y.S.2d 628, 629 (2d Dep't 1999); *Waste Distillation Tech.*, 136 A.D.2d at 634, 523 N.Y.S.2d at 877 (same). "When loss of business is claimed, the persons who ceased to be customers must be named and the losses itemized. 'Round figures' or a general allegation of a dollar amount as special damages do not suffice." *Matherson v. Marchello*, 100 A.D.2d 233, 235, 473 N.Y.S.2d 998, 1000-01 (2d Dep't 1984) (citations and internal quotation marks omitted); *see also L.W.C. Agency, Inc. v. St. Paul Fire and Marine Ins. Co.*, 125 A.D.2d 371, 373, 509 N.Y.S.2d 97, 100 (2d Dep't 1986) (same).

This complaint does not allege special damages at all. Instead, the complaint alleges merely that, "ConsumerLab has lost both existing and future subscribers, lost business from both present and future customers, lost both existing and future advertising, publicity and media coverage, lost business opportunities, suffered damage to its alliances and relationships, which losses and damages

---

[11]    ConsumerLab's cause of action for "infliction of intentional harm" appears to be a duplicative attempt to state a cause of action for prima facie tort. *See ATI, Inc. v. Ruder & Finn, Inc.*, 42 N.Y.2d 454, 458, 398 N.Y.S.2d 864, 866 (1977) ("The key to the prima facie tort is the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful") (citations and internal quotation marks omitted).

are continuing." Compl. ¶ 25. This conclusory allegation is insufficient as a matter of law. *See DiSanto*, 258 A.D.2d at 498, 684 N.Y.S.2d at 629; *Waste Distillation Tech.*, 136 A.D.2d at 634, 523 N.Y.S.2d at 877.

The cause of action for "infliction of intentional harm" (*i.e.*, prima facie tort) should be dismissed for the additional reason that it is duplicative of ConsumerLab's other claims. "It is well settled that any claim that is covered by a traditional tort cannot be the basis for a claim of prima facie tort -- even if the traditional tort claims turn out not to be viable." *Friends of Falun Gong v. Pac. Cultural Enter., Inc.*, 288 F. Supp. 2d 273, 284 (E.D.N.Y. 2003) (citation and internal quotation marks omitted); *Susskind v. IPCO Hosp. Supply Corp.*, 49 A.D.2d 915, 915, 373 N.Y.S.2d 627, 629 (2d Dep't 1975) (dismissing duplicative prima facie tort claim).

### 2. The Causes of Action for Tortious Interference with Existing Contractual Relationships and Tortious Interference with Prospective Contractual Relationships Should Be Dismissed For Failure to Allege Essential Elements

To state a cause of action for "tortious interference with existing contractual relationships" or "tortious interference with prospective contractual relationships" (Seventh and Eighth Causes of Action), a complaint must include detailed allegations about the contracts that were breached or that would have been consummated but for the defendant's actions. ConsumerLab's complaint includes no such detailed allegations. Therefore, these causes of action should be dismissed.

ConsumerLab's cause of action for "tortious interference with existing contractual relationships" (*i.e.*, interference with contractual relations) should be dismissed because "the allegations in support of this cause of action are devoid of a factual basis and are vague and conclusory. [Plaintiff] ha[s] not alleged that the defendant[s] 'intentionally procured' the breach of any contract, that any contract was in fact 'breached', or that the 'contract would not have been breached 'but for' the defendant[s'] conduct.'" *Schuckman Realty, Inc. v. Marine Midland Bank,*

27

*N.A.*, 244 A.D.2d 400, 401, 664 N.Y.S.2d 73, 75 (2d Dep't 1997) (citations omitted); *see also Washington Ave. Assocs., Inc. v. Euclid Equipment, Inc.*, 229 A.D.2d 486, 487, 645 N.Y.S.2d 511, 512 (2d Dep't 1996).

ConsumerLab's allegations are just the type of conclusory assertions that the Second Department rejected in *Schuckman Realty* and *Washington Avenue Associates.* The complaint alleges that "ConsumerLab has contractual relationships with subscribers and contracting clients, and such contractual relationships were known to Defendants and the time of Defendants' tortious interference with those relationships," Compl. ¶ 63, but it does not identify the contracts, subscribers or clients. Nor does the complaint allege that any contract was breached or that the contracts would not have been breached but for CRN's actions. These failures to allege these essential elements are fatal to this cause of action. *See Schuckman Realty*, 244 A.D.2d at 401, 664 N.Y.S.2d at 75; *Washington Ave. Assocs.*, 229 A.D.2d at 487, 645 N.Y.S.2d at 512.

The "tortious interference with prospective contractual relationships" claim should be dismissed for the same reason. "[T]here is no allegation [in the complaint] that plaintiff was actually and wrongfully prevented from entering into or continuing in a *specific* business relationship." *Korn v. Princz*, 226 A.D.2d 278, 278-79, 641 N.Y.S.2d 283, 283 (1st Dep't 1996) (emphasis added) (dismissing cause of action); *see also Susskind*, 49 A.D.2d at 915, 373 N.Y.S.2d at 629. Instead, the complaint merely alleges in a conclusory fashion that "Plaintiff's business involves obtaining new contractual relationships with subscribers and contracting clients," Compl. ¶ 68, and that CRN engaged in "acts of intentional interference with the Plaintiff's prospective contractual relationships with Plaintiff's subscribers and contacting customers," *id.* ¶ 69. The complaint does not identify any specific contract that would have been entered into or extended but for CRN's actions. Therefore, this cause of action should be dismissed. *See Korn*, 226 A.D.2d at

28

278-79, 641 N.Y.S.2d at 283; *Susskind*, 49 A.D.2d at 915, 373 N.Y.S.2d at 629.

The complaint also does not allege two other essential elements of this tort — that CRN made its statements *solely* with malicious motives[12] and that third parties would have entered into or extended contracts with ConsumerLab *but for* CRN's actions. *See M.J. & K. Co. v. Matthew Bender and Co.*, 220 A.D.2d 488, 490, 631 N.Y.S.2d 938, 940 (2d Dep't 1995); *Brown v. Bethlehem Terrace Assocs.*, 136 A.D.2d 222, 225, 525 N.Y.S.2d 978, 980 (3d Dep't 1988).

### 3.     The Unfair Trade Practices and Unfair Competition Claims Should Be Dismissed for Failure to State a Cause of Action

The other two causes of action — for "unfair trade practices" and "unfair competition" (Fifth and Sixth Causes of Action) appear to be attempts to state causes of action under General Business Law § 349, New York's unfair trade practices statute, and for common law unfair competition. Both should be dismissed for failure to state a cause of action.

"Under New York law, in order to sustain a claim for unfair competition, plaintiff must show that defendant misappropriated [plaintiff's] labors or expenditures . . . ." *Davis & Co. Auto Parts, Inc. v. Allied Corp.*, 651 F. Supp. 198, 203 (S.D.N.Y. 1986). The complaint does not state a cause of action for common law unfair competition because it does not allege that CRN misappropriated ConsumerLab's labor or expenditures. This claim must be dismissed for the further reason that the complaint does not allege special damages with particularity. *See Waste Distillation Tech.*, 136 A.D.2d at 634, 523 N.Y.S.2d at 877.

Nor does the complaint state a cause of action under General Business Law § 349. "A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was

---

[12]     The closest the complaint comes is the allegation that "a principal purpose" of CRN's actions "was to silence [ConsumerLab]" to "shield[] CRN's members from any adverse findings" in ConsumerLab's tests. Compl. ¶ 13. But the allegation that this was "a principal purpose" is fatally inconsistent with it being the sole purpose, thereby defeating this cause of action. *See M.J. & K. Co. v. Matthew Bender and Co.*, 220 A.D.2d 488, 490, 631 N.Y.S.2d 938, 940 (2d Dep't 1995).

29

consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 895 (2000). "Generally, claims under the statute are available to an individual consumer who falls victim to misrepresentations made by a seller of consumer goods through false or misleading advertising." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55, 698 N.Y.S.2d 615, 620 (1999). The complaint does not state a cause of action under this statute because it does not allege that CRN engaged in any misleading consumer-oriented conduct. *See Stutman,* 95 N.Y.2d at 29, 709 N.Y.S.2d at 895; *Soule,* 299 A.D.2d at 828-29, 750 N.Y.S.2d at 695. Instead, the section 349 claim is merely another reiteration of the legally insufficient defamation and business tort claims, and should be dismissed. *See Waste Distillation Tech.,* 136 A.D.2d at 634, 523 N.Y.S.2d at 877 (after dismissing common law business tort claims, holding that "plaintiff has failed to demonstrate why it is entitled to maintain a cause of action under General Business Law § 349 and accordingly the plaintiff's claim thereunder was properly dismissed").

## IV.    CONCLUSION

For the foregoing reasons, CRN's motion should be granted, and the Court should dismiss the complaint in its entirety, with prejudice and without leave to replead.

Dated:    New York, New York
          June 13, 2005

                                        COVINGTON & BURLING


                                        By:  *Eric Hellerman*
                                             Eric Hellerman
                                             Jason P. Criss
                                        1330 Avenue of the Americas
                                        New York, New York 10019
                                        (212) 841-1000

                                        *Attorneys for Defendants The Council for*
                                        *Responsible Nutrition and Annette Dickinson*

30

31