EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

**IV. DISCOVERY CLAUSE**

If during the **Policy Period** or the **Extended Reporting Period**, if purchased, any **Insured** first becomes aware of a specific **Wrongful Act**, and if the **Insured** during the **Policy Period** or the **Extended Reporting Period**, if purchased, gives written notice to **us** of:

A. the specific **Wrongful Act**;

B. the **Damages** which have or may result from such **Wrongful Act**; and

C. the circumstances by which the **Insured** first became aware of such **Wrongful Act**,

then any **Claim** made subsequently arising out of such **Wrongful Act** shall be deemed for the purposes of this insurance to have been made on the date on which written notice was given to **us**.

**V. EXTENDED REPORTING PERIOD**

Subject to provisions A. through E. below, if this policy is canceled or non-renewed other than for non-payment of premium, **you** shall have the right to purchase an extended period to report **Claims** under this coverage form for any **Claim** first made during the period of time set forth in the Supplemented Extended Reporting Period Endorsement, and following the effective date of such cancellation or nonrenewal and reported in writing during such period or within 60 days thereafter, but only with respect to any **Wrongful Act** which takes place prior to the effective date of such cancellation or nonrenewal.

A. The **Extended Reporting Period** shall be effective only upon the payment of an additional premium. The additional premium will be 200% of the annual advance premium for this coverage. At the commencement of the **Extended Reporting Period**, the entire premium therefor shall be deemed fully earned and non-refundable.

B. The quotation of a different premium or deductible or limit of liability for renewal is not a cancellation or refusal to renew for the purposes of this provision.

C. **You** shall have no right to purchase the **Extended Reporting Period**, unless **you** have satisfied all conditions of the coverage form and all premiums and Deductibles outstanding have been paid.

D. **Your** right to purchase the **Extended Reporting Period** shall terminate unless written notice together with full payment of the premium for the **Extended Reporting Period** is given to **us** no later than 60 days following the effective date of cancellation or nonrenewal.

E. The fact that the period of time to report **Claims** is extended by virtue of the **Extended Reporting Period** shall not increase or reinstate the Limit of Liability stated in the Declarations, shall not extend the **Policy Period** or change the scope of coverage provided.

**VI. COVERAGE TERRITORY**

The insurance afforded by this coverage form applies worldwide, provided that the **Claim** is made and any legal action is pursued within the United States of America, its territories, possessions or commonwealths, or Canada.

**VII. LIMIT OF LIABILITY AND DEDUCTIBLE**

A. **We** will pay all **Damages** and **Claim Expenses** resulting from each **Claim** in excess of the Deductible the Declarations, subject to Sections VII B. through VII G.

B. The maximum **we** will pay for each **Claim** is the Each Claim Limit of Liability stated in the Declarations, subject to the Annual Aggregate Limit of Liability the Declarations.

C. The maximum **we** will pay for all **Claims** under this Coverage Part is the Annual Aggregate Limit of Liability stated in the Declarations, regardless of the number of **Claims**.

D. **Claim Expenses** shall be part of and not in addition to the Limit of Liability and payments of **Claim Expenses** and **Damages** shall reduce the Limit of Liability.

E. If the applicable Limit of Liability is exhausted by:

(1) payment of **Damages**;

(2) payment of **Claim Expenses**, or

(3) any combination of the above,

all of **our** obligations under the this Coverage Part with respect to any **Claim**, including the duty to defend, shall terminate immediately.

F. Deductible

(1) The Deductible stated in the Declarations shall be paid by **you**, shall apply to each **Claim** and shall include **Damages** and **Claim Expenses**.

(2) **We** may from time to time advance payments for **Damages** and **Claim Expenses** within the Deductible. Any amounts within the Deductible shall, upon written demand by **us**, be paid by **you** within 30 days.

Form SS 09 01 09 00

HART000124

G. Multiple Insureds, **Claims** and Claimants

(1) Two or more **Claims** arising out of the same **Wrongful Act** or **Related Wrongful Acts** shall be treated as a single **Claim** and shall be considered first made at the earlier of the following times:

    (a) The time at which the earliest **Claim** involving the same **Wrongful Act** or **Related Wrongful Act** is first made, or

    (b) The time at which the **Claim** involving the same **Wrongful Act** or **Related Wrongful Act** is deemed to have been first made pursuant to Section IV.

(2) The inclusion of more than one **Insured** in the making of a single **Claim**, the bringing of more than one **Claim** regarding the same **Wrongful Act** or **Related Wrongful Acts** or the making of a **Claim** by more than one person or organization shall not increase the Limit of Liability.

The Limit of Liability for this coverage form applies separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Liability.

**VIII. DUTIES IN THE EVENT OF CLAIM**

As a condition precedent to any coverage provided by this insurance and any obligations of **ours** under this coverage form, the **Insured** must comply with each of the following duties in the Event of a **Claim**.

A. Notice of **Claim**

(1) The **Insured** shall provide **us** with written notice of any **Claim** as soon as practicable, but in no event later than 60 days after the end of the **Policy Period** or the **Extended Reporting Period**, if purchased.

(2) The **Insured** must include with any notice of **Claim** a description of the **Claim**, the nature of the alleged **Wrongful Act**, a summary of the facts upon which the **Claim** is based, the nature of the alleged damage, the names of the claimants, the names of the **Insureds** against whom the **Claim** has been made, the manner in which the **Insured** first became aware of the **Claim** and any documents received directly by the **Insured** or by the **Insured's** representatives in connection with the making and handling of the **Claim**, such as any letters, demands, or summonses.

B. Assistance and Cooperation of the Insured

(1) The **Insured** shall fully assist and cooperate with **us** in the investigation, settlement and defense of all **Claims** and upon **our** request shall authorize the release of records and other information, secure and give evidence, attend hearings and trials and obtain the location of and cooperation of witnesses.

(2) The **Insured** shall not, except at the **Insured's** own cost, voluntarily make any payment, assume any obligation, incur any expenses, or admit any liability in connection with any **Claim**, incur any **Claim Expenses**, or settle any **Claim** without **our** written consent. The **Insured** further agrees not to take any action which may increase **our** exposure under this coverage form.

C. Subrogation

(1) In the event of any payment under this coverage form, **we** shall be subrogated to all the **Insured's** rights of recovery therefor against any person or organization and the **Insured** shall execute and deliver all instruments and papers required and do whatever else is necessary to secure and preserve such rights and to enable **us** to effectively bring suit in our name. The **Insured** shall do nothing to prejudice such rights and shall provide all assistance and cooperation which **we** may reasonably require.

(2) **We** shall not exercise any such right against any persons, firms or corporations included in the definition of **Insured**. Notwithstanding the foregoing, **we** reserve the right to exercise any rights of subrogation against an **Insured** with respect to any **Claim** brought about or contributed to by the dishonest, fraudulent, criminal or malicious act or omission of such **Insured**.

D. False or Fraudulent Claims

If any **Insured** commits any false or fraudulent act in connection with the submission of a **Claim** under this coverage form, this insurance shall be rendered null and void as to that **Insured** from the date such fraudulent **Claim** is received by **us**.

Form SS 09 01 09 00

HART000125

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

IX. CONDITIONS

A. Application

In granting coverage under this coverage form, **we** have relied on the representations in the **Application**. All such representations are the basis of coverage under this insurance.

By acceptance of this Policy, the **Insured** agrees that with respect to the statements in the **Application:**

(1) that the statements in the **Application** are the true and correct representations of the **Insured**, each shall be deemed material to the acceptance of the risk or the hazard assumed by **us** under this insurance, and this coverage form is issued in reliance upon the truth and accuracy of such representations;

(2) that in the event the **Application** contains misrepresentations or fails to state facts which materially affect either the acceptance of the risk or the hazard assumed by **us** under this coverage form, this insurance in its entirety shall be void and of no effect whatsoever, and

(3) that this coverage form shall be deemed to be a single unitary contract and not a severable contract of insurance or a series of individual insurance contracts with each **Insured**.

B. Other Insurance

This insurance shall apply in excess of the amount of the Deductible and any other valid and collectible insurance available to the **Insured**, whether such other insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such other insurance specifically applies as excess insurance over the Limit of Liability provided herein.

C. Changes in Exposure

(1) If after the Inception Date of this Policy:

(a) **you** merge into or consolidate with another organization such that the other organization is the surviving organization;

(b) another organization or person or group of organizations and/or persons acting in concert acquires all or substantially all of **your** assets;

(c) another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by such other organization or person or group of organizations or persons of more than 50% of the outstanding securities

representing the present right to vote for the election of **your** directors; or

(d) **you** experience a cumulative change of 50% or more of the persons occupying positions on **your** Board of Directors,

then coverage under this coverage form shall continue to apply to the **Insured**, but only with respect to any **Claims** first made during the **Policy Period** or the **Extended Reporting Period**, if purchased, for **Wrongful Acts** committed or allegedly committed prior to the effective date of such merger, consolidation, acquisition or change in positions and only if the following conditions are met:

(i) the **Insured** provides written notice of such event or transaction to **us** within 30 days of the effective date of such event or transaction;

(ii) the **Insured** provides **us** with such information in connection therewith as **we** may deem necessary; and

(iii) the **Insured** accepts any special terms, conditions, or exclusions or pays additional premium charge as may be required.

(2) If after the Inception Date of this Policy, the **Insured** merges or consolidates with another entity such that the **Insured** is the surviving entity, acquires another entity or substantially all of the assets of another entity or creates or acquires a **Subsidiary** as defined in Section II. I., no coverage shall be afforded under this coverage form for any **Claim** involving the assets acquired, the entity which is merged or consolidated with or acquired, the **Subsidiary**, or any of the assets, liabilities, directors, officers or employees of such entity or such **Subsidiary** unless:

(a) the **Insured** provides written notice of such merger, consolidation, creation or acquisition to **us** within 30 days after the effective date of such merger, consolidation, creation or acquisition;

(b) the **Insured** provides **us** with such information in connection therewith as **we** may deem necessary;

(c) the **Insured** accepts any special terms, conditions, or exclusions or pays additional premium charge as may be required; and

HART000126

(d) **we, at our** sole discretion, agree to provide such coverage.

(3) In the event of sale or dissolution of any **Subsidiary** of **yours** after the Inception Date of this Policy, the Coverage Part shall continue to apply to such **Subsidiary** and to the partners, executive officers, directors, stockholders and employees of such **Subsidiary**, but only with respect to any **Claim** first made during the **Policy Period** or the **Extended Reporting Period**, if purchased, for **Wrongful Acts** committed or allegedly committed prior to the effective date of sale or dissolution.

D. Action Against **Us**

No action shall lie against **us** unless, as a condition precedent thereto, the **Insured** has fully complied with all the terms of this insurance and both the **Insured's** liability and the amount of the **Insured's** obligation to pay have been fully and finally determined either by judgment against the **Insured** or by written agreement between the **Insured**, the claimant and **us**. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this coverage form to the extent of the insurance afforded by this coverage form. Nothing contained in this coverage form shall give any person or organization any right to join **us** as a party to any **Claim**. The **Insured** or any of its legal representatives shall not implead **us** in any **Claim**.

E. Bankruptcy or Insolvency

Bankruptcy or insolvency of the **Insured** or the **Insured's** estate shall not relieve **us** of any of our obligations under this Coverage Part.

F. Authorization

By acceptance of this Policy, the **Insureds** agree that **you** shall act on behalf of all **Insureds** with respect to the purchase and negotiation of this Policy, the giving and receiving of all notices as provided herein, the cancellation of this Policy, the payment of premiums and Deductibles, the receiving of any return premiums that may become due and the purchase of the **Extended Reporting Period**.

G. When We Do Not Renew

If **we** decide not to renew this coverage, **we** will mail or deliver to the first **Named Insured** shown in

the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**X - NUCLEAR ENERGY LIABILITY EXCLUSION (BROAD FORM)**

A. This policy does not apply:

(1) To any **damages:**

(a) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) Resulting from **the hazardous properties** of **nuclear material** and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

(2) To any **damages** resulting from the **hazardous properties** of **nuclear material,** if:

(a) The **nuclear material** (i) is at any **nuclear facility** owned by, or operated by or on behalf of, an insured or (ii) has been discharged or dispersed therefrom;

(b) The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) The **damages** arise out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operations or use of any **nuclear facility**.

2. As used in this exclusion:

**Hazardous properties** include radioactive, toxic or explosive properties;

Form SS 09 01 09 00

HART000127

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

**Nuclear material** means **source material, special nuclear material** or **by-product material;**

**Source material, special nuclear material,** and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor;**

**Waste** means any waste material (1) containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and (2) resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility. Nuclear facility** means:

(a) Any **nuclear reactor;**

(b) Any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing **spent fuel,** or (iii) handling, processing or packaging **waste;**

(c) Any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste;**

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**Damages** include all forms of radioactive contamination of property.

HART000128



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT PRACTICES - EXCLUSION - PRIOR ACTS

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE FORM**

Section I **INSURING AGREEMENT** is changed to add the following paragraph:

I.  **INSURING AGREEMENT**

   F.  This insurance applies only if the **claim** is for a **wrongful act** that did not occur before the Retroactive Date set forth in the Declarations, or after the end of the policy period.

   A **wrongful act** occurs at the moment such **wrongful act** first takes place.

**Form SS 09 42 07 99**   Printed in U.S.A.  (NS)

**Page 1 of 1**

© 1999, The Hartford

HART000129



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMON POLICY CONDITIONS
STANDARD PROPERTY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM**

The following is added to the Standard or Special Property Coverage Form PROPERTY LOSS CONDITION, as shown in the Declarations by description of location, property, name and address of loss payee and the following applicable Loss Payable Provision (**A**, **B** or **C**):

**A.  LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Declarations have an insurable interest, we will:

1.  Adjust losses with you; and

2.  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.  LENDER'S LOSS PAYABLE**

1.  The Loss Payee shown in the Declarations is a creditor (including a mortgageholder or trustee) with whom you have entered a contract for the sale of Covered Property, whose interest in that Covered Property is established by such written contracts as:

    **a.**  Warehouse receipts;

    **b.**  A contract for deed;

    **c.**  Bills of lading; or

    **d.**  Financing statements.

2.  For Covered Property in which both you and a Loss Payee have insurable interest:

    **a.**  We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

    **b.**  The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

**c.**  If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)**  Pays any premium due under this policy at our request if you have failed to do so;

   **(2)**  Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)**  Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All the terms of the Property Coverage Form will then apply directly to the Loss Payee.

**d.**  If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   **(1)**  The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)**  The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

3.  If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.**  10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**Form SS 12 12 03 92**   Printed in U.S.A.  (NS)

**Page 1 of 2**

Copyright, Hartford Fire Insurance Company, 1992

HART000130

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

    **4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. CONTRACT OF SALE

    **1.** The Loss Payee shown in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

    **2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

    **a.** Adjust losses with you; and

    **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the OTHER INSURANCE Common Policy Condition:

    For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**Form SS 12 12 03 92**  Printed in U.S.A. (NS)

Copyright, Hartford Fire Insurance Company, 1992

**HART000131**



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFF-PREMISES UTILITY SERVICES – DIRECT DAMAGE

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**A. DIRECT DAMAGE EXTENSION FOR OFF-PREMISES UTILITY SERVICES**

This Coverage Extension applies only to the described premises shown in the Declarations with a Utility Services Limit of Insurance. The Utility Services Limit of Insurance is part of, not in addition to, the Limit of Insurance stated in the Declarations as applicable to the Covered Property.

We will pay for loss of or damage to Covered Property described in the Declarations caused by the interruption of utility service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property, not on the described premises:

1. "Water Supply Services";
2. "Communication Supply Services"; or
3. "Power Supply Services".

**B. ADDITIONAL DEFINITIONS**

1. **"Water Supply Services"**, meaning the following types of property supplying water to the describes premises:
   a. Pumping stations; and
   b. Water mains.

2. **"Communication Supply Services"**, meaning property supplying communication services, including telephone, radio, microwave or television services, including overhead transmission lines to the described premises, such as:
   a. Communication transmission lines, including optic fiber transmission lines;
   b. Coaxial cables; and
   c. Microwave radio relays except satellites.

3. **"Power Supply Services"**, meaning the following types of property supplying electricity, steam or gas, including overhead transmission lines to the described premises:
   a. Utility generating plants;
   b. Switching stations;
   c. Substations;
   d. Transformers; and
   e. Transmission Lines.

HART000132



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

Exclusion **c.** of Section **B. EXCLUSIONS** is replaced by the following:

**c.** "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

(1) Manufacture, sell or distribute alcoholic beverages;

(2) Serve or furnish alcoholic beverages for a charge whether or not such activity:

(a) Requires a license; or

(b) Is for the purpose of financial gain or livelihood; or

(3) Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

Form SS 40 23 03 00

© 2000, The Hartford

**HART000133**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED FUNGI, BACTERIA OR VIRUS COVERAGE

This endorsement modifies insurance provided under the following:

SPECIAL PROPERTY COVERAGE FORM
STANDARD PROPERTY COVERAGE FORM
PERSONAL PROPERTY OF OTHERS
COMPUTERS AND MEDIA COVERAGE

**A. Fungi, Bacteria or Virus Exclusions**

1. Paragraph **A.5.i.(5).** of the Increased Cost of Construction Additional Coverage of the Special Property Coverage Form is replaced by the following:

    (5) Under this Additional Coverage, we will not pay for:

    (a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling, or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, bacteria or virus; or

    (b) Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungi", wet or dry rot, bacteria or virus.

2. The following exclusion is added to Paragraph **B.1.** Exclusions of the Standard Property Coverage Form and the Special Property Coverage Form; Paragraph **F.**, Additional Exclusions of Computers and Media, form **SS 04 41**, and to form **SS 04 45**, Personal Property of Others:

    i. **"Fungi", Wet Rot, Dry Rot, Bacteria And Virus**

    We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

    (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.

    (2) But if "fungi", wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss".

    This exclusion does not apply:

    (1) When "fungi", wet or dry rot, bacteria or virus results from fire or lightning; or

    (2) To the extent that coverage is provided in the Additional Coverage – Limited Coverage for "Fungi", Wet Rot, Dry Rot, Bacteria and Virus with respect to loss or damage by a cause of loss other than fire or lightning.

    This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

**B.** The following **Additional Coverage** is added to Paragraph **A.4.** of the Standard Property Coverage Form or Paragraph **A.5.** of the Special Property Coverage Form, and applies to the optional coverage form **SS 04 41**, Computers and Media and **SS 04 45**, Personal Property of Others and form:

**Form SS 40 93 10 02**

**Page 1 of 3**

© 2002, The Hartford

HART000134

1. **Limited Coverage For "Fungi", Wet Rot, Dry Rot, Bacteria and Virus**

   a. The coverage described in **1.b.** below only applies when the "fungi", wet or dry rot, bacteria or virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

      (1) A "specified cause of loss" other than fire or lightning;

      (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises; or

   b. We will pay for loss or damage by "fungi", wet rot, dry rot, bacteria and virus. As used in this Limited Coverage, the term loss or damage means:

      (1) Direct physical loss or direct physical damage to Covered Property caused by "fungi", wet rot, dry rot, bacteria or virus, including the cost of removal of the "fungi", wet rot, dry rot, bacteria or virus;

      (2) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot, dry rot, bacteria or virus; and

      (3) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot, dry rot, bacteria or virus are present.

   c. Unless a higher Limit of Insurance is shown in the Declarations for Limited "Fungi", Bacteria or Virus Coverage, the coverage described under this Limited Coverage is no more than the Limit of Insurance stated in the Declarations for Building and Business Personal Property, but not greater than $50,000. If form **SS 04 41**, Computers and Media, and form **SS 04 45**, Personal Property of Others, are made a part of this policy, then the Limits of Insurance for Computers and Media, and Personal Property of Others is included within this coverage limit. This coverage is made applicable to separate "scheduled premises" as described in the Declarations. Regardless of the number of claims, this limit is the most we will pay per "scheduled premises" for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Equipment Breakdown Accident that occurs to Equipment Breakdown Property which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet or dry rot, bacteria or virus, we will not pay more than the total of $50,000 unless a higher Limit of Insurance is shown in the Declarations even if the "fungi", wet or dry rot, bacteria, or virus continues to be present or active, or recurs, in a later policy period.

   d. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot, dry rot, bacteria or virus, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

   If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot, dry rot, bacteria or virus, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet or dry rot, bacteria or virus causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

   e. The terms of this Limited Coverage do not increase or reduce the coverage for Water Damage provided under provision **B.1.h., Exclusion – Water Damage** of the Standard Property Coverage Form or Additional Coverage provision **A.5.n., Water Damage, Other Liquid, Powder or Molten Material Damage** of the Special Property Coverage Form.

   f. The following applies only if Business Income and/or Extra Expense Coverage applies to the "scheduled premises" and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage.

© 2002, The Hartford

Form SS 40 93 10 02

**HART000135**

**(1)** If the loss which resulted in "fungi", wet or dry rot, bacteria or virus does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet or dry rot, bacteria or virus, then our payment under the Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days unless another number of days in indicated in the Declarations. The days need not be consecutive.

**(2)** If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet or dry rot, bacteria or virus, but remediation of "fungi", wet or dry rot, bacteria or virus prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay

**(3)** (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days unless another number of days is indicated in the Declarations. The days need not be consecutive.

**C. Fungi Definition**

1. **"Fungi"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

© 2002, The Hartford

HART000136

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

**A. Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**B. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under the Standard Property Coverage Form and the Special Property Coverage Form, and to any endorsements modifying those forms, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

Form SS 50 19 06 03

Page 1 of 1

© 2003, The Hartford

HART000137



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM**

**A.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**B.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.  The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© 2003, The Hartford

HART000138



# IMPORTANT NOTICE TO POLICYHOLDERS

| LIMITED FUNGI, BACTERIA AND VIRUS COVERAGE |
|---|
| CIVIL AUTHORITY |

**NEW LIMITATIONS HAVE BEEN ADDED TO YOUR SPECTRUM POLICY. YOU SHOULD REVIEW YOUR POLICY AND CONTACT YOUR HARTFORD AGENT OR YOUR BROKER IF YOU HAVE ANY QUESTIONS.**

Limited Fungi, Bacteria and Virus Coverage

The following endorsement, Limited Fungi, Bacteria and Virus Coverage, **form SS 40 93 10 02**, has been added to your policy and applies to the Standard Property Coverage Form, **SS 00 06**, and the Special Property Coverage From, **SS 00 07**, whichever applies to your policy:

Coverage is potentially restricted under the Additional Coverage, Increased Cost of Construction, if **SS 00 07** applies to your policy. Coverage does not respond to losses related to enforcement of laws wich require, for example, demolition or repair of property due to fungus, wet rot, dry rot, bacteria or virus, or the assessment or clean up of fungus, wet rot, dry rot, bacteria or virus. However, this is also a clarification in coverage to make it explicit that the exclusion regarding pollution affects all aspects of the Increased Cost of Construction coverage.

Coverage is restricted by providing limited coverage when fungi results from a covered cause of loss other than fire and lightning. Property damage coverage is subject to a $50,000 sub-limit on a per location basis (unless such limitation is increased via the Schedule). The $50,000 (or higher) limit, which does <u>not</u> increase the amount of insurance on the affected property, represents a reduction in coverage. Under Business Income Additional Coverage, when a business interruption is attributable to fungi, the period of restoration is limited to 30 days (not necessarily consecutive days). When fungi prolongs a business interruption that is attributable to other damage, a delay of up to a total 30 days is covered (regardless of when the delay occurs during the period of restoration). In each case, the 30-day period (or a longer period if indicated in the Schedule) represents a reduction in coverage.

In the past, coverage for loss caused by fungi (including mold, wet rot and dry rot) was provided when the fungi resulted from a Covered Cause of Loss. Under the SPECTRUM Policy, the Limit of Insurance on the affected property was the maximum payable for the total of all damages (by the covered cause of loss and fungi) to the covered property. Under Business Income coverage, the period of restoration applied without exception to a suspension of operations involving fungi. Such coverage, for property and business income, still applies when fungi results from a fire or lightning loss.

© 2002, The Hartford

HART000139

<u>Civil Authority</u>

Under the Standard Property Coverage Form, form **SS 00 06**, and the Special Property Coverage Form, **form SS 00 07**, whichever applies to this policy, the **Additional Coverage, Civil Authority**, is revised to include a 72-hour waiting period.  Coverage is restricted with coverage provided not until a 72-hour period has elapsed following the order of a Civil Authority.

Please contact your agent or broker for further information.

**Form SS 83 74 10 02**

© 2002, The Hartford

HART000140

# TABS

### Total Account Billing System

## You will soon receive your first bill from The Hartford. Please do not make any payment *until* you receive your bill.

**Your insurance policy is in force as of the effective date shown on the policy.**

## Here's how you will be billed:

o  Your total premium is displayed on the front of your policy. You will be billed according to the appropriate plan under which you are enrolled.

o  Please pay the exact amount of the "minimum due" shown on your bill, or you may choose to pay your total premium in full. (Please note: A small service fee is added to each billing installment. To save service fees, you may prepay future installments if you wish.)*

o  To avoid late payment fees, please pay the "minimum due" by the due date shown.*

*  **Service and late payment fees do not apply in all states.**

o  If you are on the installment billing plan and a credit or additional premium is due as the result of a change you make to your policy, the credit or premium will be spread equally over your future billing installments.

o  For your convenience, more than one policy may be combined on a single monthly bill. This means you can add eligible policies to your billing account at any time. Just ask your agent for details.

o  For questions you have about your coverages or bill plan options, be sure to contact your Independent Agent who represents The Hartford.

*If you have any questions about your bill, please call The Hartford's Customer Billing Service Center toll-free number reflected on your bill.*

### Again, thank you for insuring with The Hartford.

**Form 100722  6th Rev.**   Printed in U.S.A.

HART000141

**Insurer:** HARTFORD CASUALTY INSURANCE COMPANY

HARTFORD PLAZA, HARTFORD, CT 06115



This Declarations Page, with Policy Provisions Form SX 80 02 and Endorsements, if any, issued to form a part thereof, shall together constitute this Umbrella Liability Supplemental Contract, which in turn forms a part of Policy Number shown below.

None of the provisions of the policy to which this Supplemental Contract is attached applies to the Umbrella Liability Insurance provided hereunder.

Wherever the word "policy" appears in this form or in endorsements attached to or made a part of this Supplemental Contract, it means "Supplemental Contract".

**POLICY NUMBER:** 42 SBA FT4964

# DECLARATIONS

**Named Insured and Mailing Address:**     COUNCIL FOR RESPONSIBLE NUTRITION
SEE FORM IH 12 00
1828 L STREET, N.W., STE 900
WASHINGTON          DC 20036

**Policy Period**                          **From:** 04/01/04   **To:** 04/01/05
**12:01 A.M., Standard time at the address of the named insured as stated herein.**

**Premium**                                **$ INCLUDED** ADVANCE PREMIUM

Self Insured Retention                $10,000    each occurrence

The Limits of Insurance subject to all the terms of this policy that apply are:

| | | |
|---|---|---|
| Each Occurrence | $ 2,000,000 | Products-Completed Operations Aggregate Limit   $ 2,000,000 |
| General Aggregate Limit (Other than Products - Completed Operations, Bodily Injury By Disease and Automobile) | $ 2,000,000 | Bodily Injury By Disease Aggregate Limit   $ 2,000,000 |

**Schedule of Underlying Insurance Policies**
    *See Attached "Extension Schedule of Underlying Insurance Policies"*

**Form Numbers of Forms and Endorsements that apply.**

| | | | |
|---|---|---|---|
| SX80120703 | SX80020401 | SX80040300 | SX02350697 |
| SX04150697 | SX21080697 | SX21090603 | SX21610697 |
| SX21750697 | SX21820697 | SX24010401 | SX24530601 |

Countersigned by _____
                    Authorized Representative          Date

Form SX 80 01 06 97 **T** Printed in U.S.A. (NS)
Process Date: 02/23/04                        Policy Expiration Date: 04/01/05

**HART000142**

04751

*0100042FT49640101



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURING AGREEMENT

This endorsement modifies insurance provided under the following:

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT**

Paragraph **A.** of INSURING AGREEMENTS (SECTION I COVERAGES) is replaced by the following:

**INSURING AGREEMENTS**

**A. Umbrella Liability Insurance**

1. We will pay those sums that the "insured" becomes legally obligated to pay as "damages":

    a. In excess of the "underlying insurance"; or of

    b. The "self-insured retention" when no "underlying insurance" applies.

    because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies, caused by an "occurrence". But, the amount we will pay as "damages" is limited as described in SECTION IV LIMITS OF INSURANCE.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION II INVESTIGATION, DEFENSE, SETTLEMENT.

2. This insurance applies to:

    a. "Bodily injury" and "property damage" only if the "bodily injury" or "property damage" occurs during the "policy period".

    b. "Personal and advertising injury" caused by an offense arising out your business, but only if the offense was committed during the "policy period".



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UMBRELLA LIABILITY PROVISIONS

This supplemental contract modifies insurance provided under the policy to which it is attached.

In this policy the words "you" and "your" refer to the Named Insured first shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. "We", "us" and "our" refer to the stock insurance company member of The Hartford Financial Services Group Inc. shown in the Declarations.

Other words and phrases that appear in quotation marks also have special meanings. Refer to DEFINITIONS (Section VII).

IN RETURN FOR THE PAYMENT OF THE PREMIUM, in reliance upon the statements in the Declarations made a part hereof and subject to all of the terms of this policy, we agree with you as follows:

## SECTION I - COVERAGES

### INSURING AGREEMENTS

**A. Umbrella Liability Insurance**

We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance", or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies caused by an "occurrence".

**B. Exclusions**

This policy does not apply to:

1. **Pollution**

   To any obligation:

   a. To pay for the cost of investigation, defense or settlement of any claim or "suit" against any "insured" alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the pollution hazard; or

   b. To pay any "damages", judgments, settlements, loss, costs or expenses that may be awarded or incurred:

      i. By reason of any such claim or "suit" or any such injury or damage; or

      ii. In complying with any action authorized by law and relating to such injury or damage.

As used in this exclusion, pollution hazard means an actual exposure or threat of exposure to the corrosive, toxic or other harmful properties of any solid, liquid, gaseous or thermal:

a. Pollutants;

b. Contaminants;

c. Irritants; or

d. Toxic substances;

Including:

Smoke;

Vapors;

Soot;

Fumes;

Acids;

Alkalis;

Chemicals, and

Waste materials consisting of or containing any of the foregoing. Waste includes materials to be recycled, reconditioned or reclaimed.

**EXCEPTION**

This exclusion does not apply:

a. To "bodily injury" to any of your "employees" arising out of and in the course of their employment by you; or

b. To injury or damage as to which valid and collectible "underlying insurance" with at least the minimum limits shown in the Schedule of

Form SX 80 02 04 01

**Page 1 of 12**

© 2001, The Hartford

**HART000144**

## UMBRELLA LIABILITY PROVISIONS

Underlying Insurance Policies is in force and applicable to the "occurrence". In such event, any coverage afforded by this policy for the "occurrence" will be subject to the pollution exclusions of the "underlying insurance" and to the conditions, limits and other provisions of this policy.    In the event that "underlying insurance" is not maintained with limits of liability as set forth in the Extension Schedule of Underlying Insurance Policies, coverage under any of the provisions of this exception does not apply.

Exception **b.** does not apply to:

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(1) That are, or that are contained in any property that is:

    **a.** Being transported or towed by, handled, or handled for movement into, onto or from, any "auto";

    **b.** Otherwise in the course of transit by or on behalf of the "insured"; or

    **c.** Being stored, disposed of, treated or processed in or upon any "auto";

(2) Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto any "auto"; or

(3) After the "pollutants" or any property in which the "pollutants" are contained are moved from any "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **(1)** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto", covered by the "underlying insurance" or its parts, if:

(a) The "pollutants" escape, seep, migrate, or are discharged or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(b) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs **6.b** and **6.c.** of the definition of "mobile equipment".

Paragraphs **(2)** and **(3)** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon an "auto" covered by the "underlying insurance" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of the "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

2. **Workers Compensation and Similar Laws**

To any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law, except for liability of others assumed by the "insured" under any contract or agreement.

3. **Contractual Liability**

To liability assumed by the "insured" under any contract or agreement with respect to an "occurrence" taking place before the contract or agreement is executed.

4. **Personal and Advertising Injury**

This policy does not apply to "personal and advertising injury".

**EXCEPTION**

This exclusion does not apply if "underlying insurance" is applicable to "personal and advertising injury" and to claims arising out of that "personal and advertising injury".

5. **Underlying Insurance**

To any injury or damage:

    **a.** Covered by "underlying insurance" but for any defense which any underlying insurer may assert because of the "insured's" failure to comply with any condition of its policy; or

    **b.** For which "damages" would have been payable by "underlying insurance" but for the actual or alleged insolvency or financial impairment of an underlying insurer.

6. **Aircraft**

To "bodily injury" or "property damage" arising out of the ownership, operation, maintenance, use, entrustment to others, loading or unloading of any aircraft:

    **a.** Owned by any "insured"; or

    **b.** Chartered or loaned to any "insured".

Form SX 80 02 04 01

HART000145

UMBRELLA LIABILITY PROVISIONS

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others, of any aircraft that is owned or operated by or rented or loaned to, any insured.

This exclusion does not apply to aircraft that is:

a.  Hired, chartered or loaned with a paid crew; but

b.  Not owned by any "insured".

This exclusion does not apply to "bodily injury" to any of your "employees" arising out of and in the course of their employment by you.

7.  **Watercraft**

To "bodily injury" or "property damage" arising out of the ownership, operation, maintenance, use, entrustment to others, loading or unloading of any watercraft.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others, of any watercraft that is owned or operated by or rented or loaned to, any insured.

This exclusion does not apply to:

a.  Watercraft you do not own that is:

   i.  Less than 51 feet long; and

   ii.  Not being used to carry persons for a charge;

b.  "Bodily injury" to any of your "employees" arising out of and in the course of their employment by you; or

c.  Any watercraft while ashore on premises owned by, rented to or controlled by you.

8.  **War**

To "bodily injury" or "property damage" due to war (whether war be declared or not). War includes invasion, act of foreign power, hostilities, civil war, rebellion, revolution, riot, riot attending a strike, civil commotion, insurrection or military power.

This exclusion applies only to "occurrences" which take place outside the United States of America, its territories or possessions, Puerto Rico or Canada.

9.  **Damage to Property**

To "property damage" to property you own.

10.  **Damage to Your Product**

To "property damage" to "your product" arising out of it or any part of it.

11.  **Damage to Your Work**

To "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

12.  **Damage to Impaired Property or Property Not Physically Injured**

To "property damage" to "impaired property" or property that has not been physically injured arising out of:

1.  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2.  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

13.  **Recall of Products, Work or Impaired Property**

To "damages" claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

a.  "Your product";

b.  "Your work"; or

c.  "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

14.  **Employer Liability**

With respect to coverage afforded any of your employees to "bodily injury" or "personal and advertising injury":

a.  To other "employees" arising out of and in the course of their employment;

b.  The spouse, child, parent, brother or sister of that "employee" as a consequence of such "bodily injury" to that "employee";

Form SX 80 02 04 01

Page 3 of 12

HART000146

**UMBRELLA LIABILITY PROVISIONS**

   **c.** To you, or any of your partners or members (if you are a partnership or joint venture), or your members (if you are a limited liability company); or

   **d.** Arising out of the providing or failing to provide professional health care services.

**EXCEPTION**

Subparagraphs **a.** and **b.** of this exclusion apply:

   **a.** Whether the "insured" may be liable as an employer in any other capacity; and

   **b.** To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

Subparagraphs **a.** and **b.** of this exclusion do not apply if "underlying insurance" is maintained providing coverage for such liability with minimum underlying limits, as described in the Schedule of Underlying Insurance Polices.

**15. Property Damage to Employee's Property**

With respect to coverage afforded any of your "employees" to "property damage" to property owned or occupied by or rented or loaned to:

   **a.** That "employee";

   **b.** Any of your other "employees";

   **c.** Any of your partners or members (if you are a partnership or joint venture);

   **d.** Any of your members (if you are a limited liability company).

**16. Uninsured or Underinsured Motorists**

To any claim for:

   **a.** Uninsured or Underinsured Motorists Coverage;

   **b.** Personal injury protection;

   **c.** Property protection; or

   **d.** Any similar no-fault coverage by whatever name called;

unless this policy is endorsed to provide such coverage.

**17. Employment Practices Liability**

For any injury or damage to:

   **1.** A person arising out of any:

      **(a)** Refusal to employ that person;

      **(b)** Termination of that person's employment; or

      **(c)** Any employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation,

harassment, humiliation or discrimination directed at that person; or

   **2.** The spouse, child, parent, brother or sister of that person, as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

   **i.** Whether the "insured" may be liable as an employer in any other capacity; and

   **ii.** To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

**18. Expected or Intended**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**SECTION II - INVESTIGATION, DEFENSE, SETTLEMENT**

**A.** With respect to "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies (whether or not the "self-insured retention" applies) and

   **1.** For which no coverage is provided under any "underlying insurance"; or

   **2.** For which the underlying limits of any "underlying insurance" policy have been exhausted solely by payments of "damages" because of "occurrences" during the "policy period",

We:

   **1.** Will have the right and the duty to defend any "suit" against the "insured" seeking "damages" on account thereof, even if such "suit" is groundless, false or fraudulent; but our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under coverages afforded by this policy;

   **2.** May make such investigation and settlement of any claim or "suit" as we deem expedient;

   **3.** Will pay all expenses incurred by us, all costs taxed against the "insured" in any "suit" defended by us and all interest on the entire amount of any judgment therein which accrues after the entry of the judgment and before we have paid or tendered or deposited in court that part of the judgment which does not exceed the applicable limit of insurance;

Form SX 80 02 04 01

HART000147

## UMBRELLA LIABILITY PROVISIONS

4. Will pay all premiums on appeal bonds required in any such "suit", premiums on bonds to release attachments in any such "suit" for an amount not in excess of the applicable limit of insurance, and the cost of bail bonds required of the "insured" because of an accident or traffic law violation arising out of the operation of any vehicle to which this policy applies, but we will have no obligation to apply for or furnish any such bonds;

5. Will pay all reasonable expenses incurred by the "insured" at our request in assisting us in the investigation or defense of any claim or "suit", including actual loss of earnings not to exceed $500 per day per "insured";

and the amounts so incurred, except settlement of claims and "suits", are not subject to the "self-insured retention" and are payable in addition to any applicable limit of insurance.

The "Insured" agrees to reimburse us promptly for amounts paid in settlement of claims or "suits" to the extent that such amounts are within the "self-insured retention".

B. You agree to arrange for the investigation, defense or settlement of any claim or "suit" in any country where we may be prevented by law from carrying out this agreement. We will pay defense expenses incurred with our written consent in connection with any such claim or "suit" in addition to any applicable limit of insurance. We will also promptly reimburse you for our proper share, but subject to the applicable limit of insurance, of any settlement above the "self-insured retention" made with our written consent.

C. If a judgment is rendered in excess of the limits of "underlying insurance" and we are willing to contribute to it but the underlying insurers elect to appeal it:

1. The cost and the duty of obtaining an appeal bond with respect to liability in excess of the limits of "underlying insurance"; and

2. The taxable costs, disbursements and additional interest incidental to such appeal;

shall be borne by the "Insured" and its underlying insurers.

D. We will have the right to associate at our expense with the "insured" or any underlying insurer in the investigation, defense or settlement of any claim or "suit" which in our opinion may require payment hereunder. In no event, however, will we contribute to the cost and expenses incurred by any underlying insurer.

## SECTION III - WHO IS AN INSURED

A. If you are doing business as:

1. An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner.

2. A partnership or joint venture, you are an "insured". Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

3. A limited liability company, you are an "insured". Your members are also "insureds", but with only respect to the conduct of your business. Your managers are "insureds", but only with respect to their duties as your managers.

4. An organization other than a partnership, joint venture or limited liability company, you are an "insured". Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "insureds", but only with respect to their liability as stockholders.

5. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

B. Each of the following is also an "insured":

1. Your "employees" other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts:

   a. Within the scope of their employment by you or while performing duties related to the conduct of your business; and

   b. Only if such "employees" are insureds in the "underlying insurance" with limits of liability at least as high as set forth in the Extension Schedule of Underlying Insurance Policies, subject to all the limitations upon coverage and all other policy terms and conditions of such "underlying insurance" and this policy.

2. Any person or organization with whom you agreed, because of a written contract, agreement or permit, to provide insurance, such as is afforded under this supplemental contract, but only with respect to your operations, "your work" or facilities owned or used by you. This provision does not apply unless the written contract or agreement has been executed, or the permit has been issued prior to the "bodily injury", "property damage", or "personal and advertising injury".

3. Any person or organization having proper temporary custody of your property if you die, but only:

HART000148

## UMBRELLA LIABILITY PROVISIONS

    **a.** With respect to liability arising out of the maintenance or use of that property; and

    **b.** Until your legal representative has been appointed.

  **4.** Your legal representative if you die, but only with respect to his or her duties as such. That representative will have all your rights and duties under this policy.

**C.** With respect to any "auto", any "insured" in the "underlying insurance" is an "insured" under this insurance policy, subject to all the limitations of such "underlying insurance".

**D.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

  **1.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

  **2.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**E.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will be deemed to be an "insured" if there is no other similar insurance available to that organization.

  However:

  **1.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

  **2.** This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

  **3.** This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**F.** Each person or organization, not included as an "insured" in Paragraphs **A.**, **B.**, **C.**, **D.**, or **E.**, who is an "insured" in the "underlying insurance" is an "insured" under this insurance subject to all the limitations, other than the limits of the underlying insurer's liability, of such "underlying insurance".

No person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

With respect to any person or organization who is not an "insured" under "underlying insurance", coverage under this policy shall apply only to loss in excess of the amount of the "underlying insurance" or "self-insured retention" applicable to you.

## SECTION IV - LIMITS OF INSURANCE

**A.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **1.** "Insureds";

  **2.** Claims made or "suits" brought; or

  **3.** Persons or organizations making claims or bringing "suits".

**B.** The Limit of Insurance stated as the General Aggregate Limit is the most we will pay for the sum of "damages", other than "damages":

  **1.** Because of injury or damage included within the "products-completed operations hazard";

  **2.** Because of "bodily injury" by disease to your "employees" arising out of and in the course of their employment by you; and

  **3.** Because of "bodily injury" and "property damage" arising out of the ownership, operation, maintenance, use, entrustment to others, loading or unloading of any "auto".

**C.** The Limit of Insurance stated as the Products Completed Operations Aggregate Limit is the most we will pay for "damages" because of injury or damage included within the "products-completed operations hazard".

**D.** The Limit of Insurance stated as the Bodily Injury By Disease Aggregate Limit is the most we will pay for "damages" because of "bodily injury" by disease to your "employees" arising out of and in the course of their employment by you.

**E.** Subject to **B.**, **C.**, or **D.** above, whichever applies, the Each Occurrence Limit is the most we will pay for "damages" because of all "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence".

**F.** Our obligations under this insurance end when the applicable Limit of Insurance available is used up. If we pay any amounts for "damages" in excess of that Limit of Insurance, you agree to reimburse us for such amounts.

Form SX 80 02 04 01

HART000149

G. The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations. However, if the "policy period" is extended after issuance for an additional period of less than 12 months, the additional period will be deemed part of the last preceding period for the purpose of determining the Limits of Insurance.

## SECTION V - NUCLEAR ENERGY LIABILITY EXCLUSION (Broad Form)

A. The insurance does not apply:

1. To "bodily injury" or "property damage":

    a. With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. To "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material" if:

    a. The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

    b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

    c. The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the

United States of America, its territories or possessions or Canada, this exclusion (c) applies only to "property damage" to such "nuclear facility" and any property threat.

B. As used in this exclusion:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "by-product material";

"Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(1) Any "nuclear reactor";

(2) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

HART000150

UMBRELLA LIABILITY PROVISIONS

## SECTION VI - CONDITIONS

### A. Premium

All premiums for this policy shall be computed in accordance with the Premium Section of the Declarations. The premium stated as such in the Declarations is a deposit premium only which shall be credited to the amount of any earned premium. At the close of each "policy period", the earned premium shall be computed for such period, and upon notice thereof to the Named Insured first shown in the Declarations shall become due and payable by such Named Insured. If the total earned premium for the "policy period" is less than the premium previously paid and more than the minimum premium, we shall return to such Named Insured the unearned portion paid by such Named Insured.

The Named Insured first shown in the Declarations shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to us at the end of the "policy period" and at such times during the "policy period" as we may direct.

### B. Inspection and Audit

We shall be permitted but not obligated to inspect your property and operations at any time. Neither our right to make inspections, nor the making thereof, nor any report thereon, shall constitute an undertaking on your behalf or for your benefit or that of others to determine or warrant that such property or operations are:

1. Safe;

2. Healthful; or

3. In compliance with any law, rule or regulation.

We may examine and audit your books and records at any time during the "policy period" and extensions thereof and within three years after the final termination of this policy, insofar as they relate to the subject matter of this policy.

### C. Duties In The Event Of Occurrence, Claim or Suit

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim under this policy. This requirement applies only when such "occurrence" is known to any of the following:

   (a) You, if you are an individual;

   (b) A partner, if an insured is a partnership;

   (c) A manager, if a limited liability company; or

   (d) An "executive officer" or insurance manager, if you are a corporation.

To the extent possible, notice should include:

(a) How, when and where the "occurrence" took place;

(b) The names and addresses of any injured persons and witnesses; and

(c) The nature and location of any injury or damage arising out of the "occurrence" or "offense".

2. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us in writing as soon as practicable if the claim is likely to exceed the amount of the "self-insured retention" or "underlying insurance", whichever applies.

3. You and any other involved insured must:

   (a) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" involving or likely to involve a sum in excess of any "self-insured retention" or "underlying insurance", whichever applies;

   (b) Authorize us to obtain records and other information;

   (c) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (d) Assist us, upon our request in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this policy or any "underlying insurance" or "self-insured retention" may apply.

4. No insured will, except at that insured's own cost, make or agree to any settlement for a sum in excess of:

   (a) The total limits of "underlying insurance"; or

   (b) The "self-insured retention" if no "underlying insurance" applies

   without our consent.

5. No insureds will, except at that insured's own cost, make a payment, assume any obligation, or incur any expenses, other than first aid, without our consent.

### D. Assistance and Cooperation of the Insured

The "insured" shall:

1. Cooperate with us and comply with all the terms and conditions of this policy; and

Form SX 80 02 04 01

HART000151

UMBRELLA LIABILITY PROVISIONS

2. Cooperate with any of the underlying insurers as required by the terms of the "underlying insurance" and comply with all the terms and conditions thereof.

The "insured" shall enforce any right of contribution or indemnity against any person or organization who may be liable to the "insured" because of "bodily injury", "property damage" or "personal and advertising injury" with respect to this policy or any "underlying insurance".

E. **Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms and those of the "underlying insurance" have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but, we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the limit of liability. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

F. **Appeals**

In the event the "insured" or the "insured's" underlying insurer elects not to appeal a judgment in excess of the "underlying insurance" or the "self-insured retention", we may elect to make such appeal, at our cost and expense. If we so elect, we shall be liable in addition to the applicable Limit of Insurance, for the:

1. Taxable costs;

2. Disbursements; and

3. Additional interest incidental to such appeal;

but in no event will we be liable for "damages" in excess of the applicable aggregate Limit of Insurance.

G. **Other insurance**

This policy shall apply in excess of all "underlying insurance" whether or not valid and collectible. It shall also apply in excess of other valid and collectible insurance (except other insurance purchased specifically to apply in excess of this insurance) which also applies to any loss for which insurance is provided by this policy.

These excess provisions apply, whether such other insurance is stated to be:

1. Primary;

2. Contributing;

3. Excess; or

4. Contingent;

Provided that if such other insurance provides umbrella coverage in excess of underlying insurance or a self-insured retention, this policy shall contribute therewith with respect to "damages".

However, we shall not be liable for a greater proportion of such loss than the amount which would have been payable under this policy bears to the sum of:

1. Said amount; and

2. The amounts which would have been payable under each other umbrella policy applicable to such loss, had each such policy been the only policy so applicable.

H. **Transfer Of Rights Of Recovery Against Others To Us**

a. If the insured has rights to recover all or a part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after a loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

b. Recoveries shall be applied to reimburse:

(1) First, any interest (including the Named Insured) that paid any amount in excess of our limit of liability:

(2) Second, us, along with any other insurers having a quota share interest at the same level;

(3) Third, such interests (including the Named Insured) of whom this insurance is excess.

However, a different apportionment may be made to effect settlement of a claim by agreement signed by all interests.

c. Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

I. **Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. Notice to any agent, or knowledge possessed by any agent or any other person shall not effect a waiver or a change in any part of this policy, or stop us from asserting any rights under the terms of this policy.

The Named Insured first shown in the Declarations is authorized on behalf of all "insureds" to agree with us on changes in the terms of this policy.

**Form SX 80 02 04 01**

HART000152

## UMBRELLA LIABILITY PROVISIONS

If the terms are changed, the changes will be shown in an endorsement issued by us and made a part of this policy.

### J. Separation Of Insureds

Except with respect to the Limits of Liability, and any rights or duties specifically assigned in this policy to the Named Insured first shown in the declarations, this insurance applies:

a. As if each Named Insured were the only Named Insured: and

b. Separately to each insured against whom claim is made or "suit" is brought.

### K. Maintenance of Underlying Insurance

Policies affording in total the coverage and limits stated in the Schedule of Underlying Insurance Policies shall be maintained in full effect during the currency of this policy. Your failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, we shall be liable only to the extent that we would have been liable had you complied herewith.

The Named Insured first shown in the Declarations shall give us written notice as soon as practicable of any of the following:

1. Any change in the coverage or in the limits of any "underlying insurance", including but not limited to a change from occurrence coverage to claims made coverage;

2. Termination of part or all of one or more of the policies of "underlying insurance";

3. Reduction or exhaustion of an aggregate limit of liability of any "underlying insurance".

The "self-insured retention" shall not apply should the "underlying insurance" be exhausted by the payment of claims or "suits" which are also covered by this policy.

### L. Cancellation

1. The Named Insured first shown in the Declarations may cancel this policy by mailing or delivering to us or to any of our authorized agents advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the Named Insured first shown in the Declarations at the address shown in this policy, written notice of cancellation at least:

a. 10 days before the effective date of cancellation if such Named Insured fails to pay the premium or any installment when due; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. If notice is mailed, proof of mailing will be sufficient proof of notice. Notice will state the effective date of cancellation. The "policy period" will end on that date. Delivery of such notice by the Named Insured first shown in the Declarations or by us will be equivalent to mailing.

4. If the Named Insured first shown in the Declarations cancels, the refund may be less than pro rata, but we will retain any minimum premium stated as such in the Declarations. If we cancel, the refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

### M. Nonrenewal

1. If we decide not to renew, we will mail or deliver to the Named Insured first shown in the Declarations, at the address shown in this policy, written notice of nonrenewal at least 30 days before the end of the "policy period".

2. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. If we offer to renew but such Named Insured does not accept, this policy will not be renewed at the end of the current "policy period".

### N. Workers' Compensation Agreement

With respect to "bodily injury" to any officer or other employee arising out of and in the course of employment by you, you represent and agree that you have not abrogated and will not abrogate your common-law defenses under any Workers' Compensation Law by rejection of such law or otherwise. If at any time during the "policy period" you abrogate such defenses, the insurance for "bodily injury" to such officer or other employee automatically terminates at the same time.

### O. Bankruptcy or Insolvency

In the event of the bankruptcy or insolvency of the "insured" or any entity comprising the "insured", we shall not be relieved of any of our obligations under this policy.

### P. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. The statements in the Extension Schedule Of Underlying Insurance Policies are accurate and complete;

c. The statements in a. and b. are based upon representations you made to us:

Form SX 80 02 04 01

HART000153

**UMBRELLA LIABILITY PROVISIONS**

**d.** We have issued this policy in reliance upon your representations; and

**e.** If unintentionally you should fail to disclose all hazards at the inception of this policy, we shall not deny coverage under this policy because of such failure.

**SECTION VII - DEFINITIONS**

**Except as otherwise provided in this section or amended by endorsement, the words or phrases that appear in quotation marks within this policy shall follow the definitions of the applicable "underlying insurance" policy.**

**"Accident"** includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**"Auto"** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**"Covered pollution cost or expense"** means any cost or expense arising out of:

**1.** Any request, demand or order; or

**2.** Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(1)** That are, or that are contained in any property that is:

**a.** Being transported or towed by, handled, or handled for movement into, onto or from, any "auto";

**b.** Otherwise in the course of transit by or on behalf of the "insured"; or

**c.** Being stored, disposed of, treated or processed in or upon any "auto"; or

**(2)** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto any "auto"; or

**(3)** After the "pollutants" or any property in which the "pollutants" are contained are moved from any "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto", covered by the "underlying insurance" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs **6.b** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon an "auto" covered by the "underlying insurance" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of the "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**"Damages"** include prejudgment interest awarded against the "insured" on that part of the judgment we pay.

"Damages" do not include:

**1.** Fines;

**2.** Penalties; or

**3.** Damages for which insurance is prohibited by the law applicable to the construction of this policy.

Subject to the foregoing, "damages" include damages for any of the following which result at any time from "bodily injury" to which this policy applies:

**1.** Death;

**2.** Mental anguish;

**3.** Shock;

**4.** Disability; or

**5.** Care and loss of services or consortium.

**"Insured"** means any person or organization qualifying as an insured in the applicable WHO IS AN INSURED provision of this policy. The insurance afforded applies separately to each "insured" against whom claim is made or "suit" is brought, except with respect to the limit of our liability under LIMITS OF INSURANCE (SECTION IV).

**"Occurrence"** means:

**1.** With respect to "bodily injury" or "property damage": an

Form SX 80 02 04 01

HART000154

**UMBRELLA LIABILITY PROVISIONS**

accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in "bodily injury" or "property damage" neither expected nor intended from the standpoint of the "insured" and includes the use of reasonable force to protect persons or property; and

2. With respect to "personal and advertising injury" an offense described in one of the numbered subdivisions of that definition in the "underlying insurance".

**"Policy period"** means the period beginning with the inception date stated as such in the Declarations and ending with the earlier of:

1. The date of cancellation of this policy; or

2. The expiration date stated as such in the Declarations.

**"Self-insured retention"** means the amount stated as such in the Declarations which is retained and payable by the "insured" with respect to each "occurrence".

**"Underlying insurance"** means the insurance policies listed in the Schedule of Underlying Insurance Policies, including any renewals or replacements thereof, which

provide the underlying coverages and limits stated in the Schedule of Underlying Insurance Policies. The limit of "underlying insurance" includes:

1. Any deductible amount;

2. Any participation of any "insured"; and

3. Any "self-insured retention" above or beneath any such policy;

Less the amount, if any, by which the aggregate limit of such insurance has been reduced by any payment relating to any act, error, omission, injury, damage or offense for which insurance is provided by this policy, including Medical Payments Coverage as described in the "underlying insurance". The coverages and limits of such policies and any such deductible amount, participation or "self-insured retention" shall be deemed to be applicable regardless of:

1. Any defense which any underlying insurer may assert because of the "insured's" failure to comply with any condition of its policy; or

2. The actual or alleged insolvency or financial impairment of any underlying insurer or any "insured".

The risk of insolvency or financial impairment of any underlying insurer or any "insured" is borne by you and not by us.

Form SX 80 02 04 01

HART000155

# EXTENSION SCHEDULE OF
# UNDERLYING INSURANCE POLICIES



This extension schedule forms a part of the policy designated in the Declarations.

**Carrier, Policy Number and Policy Period:**

**A.** HARTFORD CASUALTY INSURANCE COMPANY

42 SBA FT4964     04/01/04  TO 04/01/05

| Type of Coverage | Applicable Limits | |
|---|---|---|
| ( X ) Comprehensive Business Liability - including: | Bodily Injury and Property Damage Liability Combined | |
| | $1,000,000 | each occurrence |
| | $2,000,000 | general aggregate |

Employees as Additional Insureds
Contractual Liability
Limited Non-Owned Watercraft
Non-Owned Snowmobiles
Additional Insureds

| Damages To Premises Rented To You | Property Damage Liability | |
|---|---|---|
| | $  300,000 | each occurrence |
| (X ) Personal Injury | $1,000,000 | |
| (X ) Advertising Injury | $1,000,000 | |
| (X ) Products/Completed Operations | $2,000,000 | Prod./Comp. Ops. aggregate |
| (X ) Non-Owned Automobile - Hired Car | $1,000,000 | Limit of Liability |

**B.**

| | | |
|---|---|---|
| ( ) Comprehensive Automobile Liability - Owned Automobiles | Bodily Injury Liability | |
| | | each person |
| | | each accident |
| | Property Damage Liability | |
| ( ) Non-Owned Automobiles | | each accident |
| | Bodily Injury and Property Damage | |
| | | Liability Combined |
| ( ) Hired Automobiles | | each accident |
| ( ) Uninsured Motorist | | each occurrence |

**C.** TWIN CITY FIRE INSURANCE     42 WEC BQ5401 04/01/04 TO 04/01/05

| ( X ) Employers' Liability | | |
|---|---|---|
| | $1,000,000 | each accident* |
| | $1,000,000 | each employee by disease* |
| | $1,000,000 | total policy by disease* |

**D.**

( ) Liquor Law Legal Liability

An "X" marked in the box indicates the coverage is provided in the Underlying Policies.

**(Note Maintenance of Underlying Insurance Condition SX 80 02.)**

*Except that in any jurisdiction where the amount of Employers Liability Coverage afforded by the underlying insurer is by law unlimited, the limit stated does not apply and the policy of which this extension schedule forms a part shall afford no insurance with respect to Employers Liability in such jurisdiction.

**Form SX 80 04 03 00**   Printed in U.S.A.  **(NS)**

**Process Date:** 02/23/04                    **Policy Expiration Date:** 04/01/05

04752

*0100042FT49640101

HART000156



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF CONDITIONS - DISTRICT OF COLUMBIA

This endorsement modifies insurance provided under the

**SPECTRUM UMBRELLA SUPPLEMENTAL CONTRACT**

It is agreed that:

1.  The **CANCELLATION** Condition is replaced by the following:

    **CANCELLATION**

    a.  The Named Insured first shown in the Declarations may cancel this policy by:

        (1) Mailing or delivering to us advance written notice of cancellation; or

        (2) Surrendering the policy to us or to any of our authorized agents.

    b.  We may cancel this policy by mailing or delivering to the Named Insured first shown in the Declarations written notice of cancellation at least:

        (1) 30 days before the effective date of cancellation, if we cancel for nonpayment of any premium when due;

        (2) 30 days before the effective date of cancellation, if we cancel for any other reason and the policy has been in effect for less than 30 days and is not a renewal with us; or

        (3) 30 days before the effective date of cancellation, if we cancel and the policy has been in effect for more than 30 days, but only for one of the following reasons:

            (a) "You" have made a material and willful misstatement or omission of fact to us or our employees, agents, or brokers in connection with any application to or claim against us; or

            (b) The property or other interest of the Named Insured shall have been transferred to a person other than the insured or beneficiary, unless the transfer is permissible under the terms

    of the policy, or unless the property, interest or use thereof shall have materially changed with respect to its insurability.

    c.  We will mail or deliver our notice to the last mailing address known to us of the Named Insured first shown in the Declarations.  Notice will also be provided to the agent or producer of record at least 5 days prior to mailing the notice.  The notice will state the specific reasons for cancellation.  If cancellation is for other than nonpayment, a copy of the notice will be sent to the Superintendent of Insurance.

        If notice is mailed, proof of mailing will be sufficient proof of notice.

    d.  Notice of cancellation by us will state the effective date of cancellation.  The "policy period" will end on that date.

    e.  If this policy is cancelled, we will send the Named Insured first shown in the Declarations any premium refund due.  If we cancel, the refund will be pro-rata.

    f.  If the Named Insured cancels, we shall compute the return premium at 90% of the pro-rata unearned premium.  We shall in any event be entitled to retain any minimum retained premium stated in the Declarations.

    g.  Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

2.  The **NONRENEWAL** Condition is replaced by the following:

**Form SX 02 35 06 97**  Printed in U.S.A.  (NS)

**Page 1 of 2**

© 1997, The Hartford

HART000157

**NONRENEWAL**

a. If we decide not to renew this policy, we will mail or deliver written notice of non-renewal to the Named Insured first shown in the Declarations at least 30 days before the end of the "policy period."

b. If notice is mailed, we will mail it to the last mailing address known to us of the Named Insured first shown in the Declarations. The notice will state the specific reasons for non-renewal. The notice will also be provided to the agent or producer of record at least 5 days prior to mailing the notice.

Proof of mailing will be sufficient proof of notice.

c. If we offer to renew this policy and the Named Insured first shown in the Declarations does not accept our offer during the current "policy period," this policy will not be renewed at the end of such "policy period."

**Form SX 02 35 06 97**  Printed in U.S.A. (NS)

©1997. The Hartford

HART000158



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY ENDORSEMENT
# (CLAIMS MADE)

This endorsement modifies insurance provided under the

**SPECTRUM UMBRELLA SUPPLEMENTAL CONTRACT**

## SCHEDULE I

| Coverage | Limits of Insurance | |
|---|---|---|
| Employee Benefits Liability | $ 2,000,000 | each claim limit |
| | $ 2,000,000 | aggregate limit |

## SCHEDULE II
"Controlling Underlying Insurance Policy"

**Insurer:** HARTFORD CASUALTY INSURANCE COMPANY

| Policy No. | Policy Period | | Retroactive Date |
|---|---|---|---|
| 42 SBA FT4964 | 04/01/04 TO 04/01/05 | | 04/01/01 |

| Coverage | Limits of Insurance | |
|---|---|---|
| Employee Benefits Liability | $ 1,000,000 | each claim limit |
| | $ 2,000,000 | aggregate limit |

This policy is extended to apply to Employee Benefits Liability, subject to the following additional provisions:

1. Except as otherwise provided by this endorsement, the insurance afforded herein shall follow all the terms, definitions and exclusions of the "controlling underlying insurance policy" designated in Schedule II.

2. **SECTION I - COVERAGE EB**

    A. We will pay those sums that the insured must legally pay as "damages:"

    1. Because of "employee benefits injury" to which this endorsement applies; and

    2. That are in excess of the limits of insurance in the "controlling underlying insurance policy."

    B. This insurance does not apply to "employee benefits injury" which occurred before the

Retroactive Date, if any, shown in Schedule II or which occurs after the "policy period."

3. **SECTION III - LIMITS OF INSURANCE**

    A. The Limits of Insurance shown in Schedule I and the rules below fix the most we will pay regardless of the number of:

    1. Insureds;

    2. Claims made or "suits" brought; or

    3. Persons or organizations making claims or bringing "suits."

    B. The Aggregate Limit is the most we will pay for all "damages" to which this endorsement applies.

    C. Subject to B. above the Each Claim Limit is the most we will pay for all "damages" with respect to any one claim.

Form SX 04 15 06 97 Printed in U.S.A. (NS)

**Page 1 of 3**

© 1997, The Hartford

**Process Date:** 02/23/04

**Expiration Date:** 04/01/05

HART000159

D. Our obligations under this endorsement and when the applicable Limit of Insurance is used up. If we pay for any "damages" in excess of that Limit of Insurance, you agree to reimburse us for such amounts.

E. The Limits of Insurance shown in Schedule I apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in Schedule II, unless the endorsement is extended after issuance for an additional period of less than 12 months. In that case the additional period will be deemed part of the last preceding period for the purpose of determining the Limits of Insurance.

4. **EXTENDED REPORTING PERIODS**

A. We will provide one or more Extended Reporting Periods, as described below, if:

1. This endorsement is cancelled or not renewed; or

2. We renew or replace this endorsement with insurance that:

   i. Has a Retroactive Date later than the date shown in the Declaration of this endorsement; or

   ii. Does not apply to "employee benefits injury" on a claims-made basis.

B. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the "policy period" and lasts for:

1. One year for "claims" arising out of an "employee benefits injury" reported to us, not later than 60 days after the end of the "policy period";

2. Sixty days for all other "claims."

The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims."

C. A Supplemental Extended Reporting Period of three years duration is available, but only by an endorsement and for an extra charge. This supplemental period starts:

1. One year after the end of the "policy period" for "claims" arising out of an "occurrence" reported to us, not later than 60 days after the end of the "policy period" or

2. Sixty days after the end of the "policy period" for all other "claims."

You must give us a written request for the endorsement within 60 days after the end of the "policy period." The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due. We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

1. The exposures insured;

2. Previous types and amounts of insurance;

3. Limits of Insurance available under this endorsement for future payment of "damages" and

4. Other related factors.

The additional premium will not exceed 200% of the annual premium for this endorsement.

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

D. Extended Reporting Periods do not extend the "policy period" or change the scope of coverage provided. They apply only to "claims" for "employee benefits injury" that occur before the end of the "policy period" (but not before the Retroactive Date, if any, shown in the Declarations).

"Claims" for such injury which are first received and recorded during the Basic Extended Reporting Period (or during the Supplemental Extended Reporting Period, if it is in effect) will be deemed to have been made on the last day of the "policy period."

Once in effect, Extended Reporting Periods may not be cancelled by us.

E. Extended Reporting Periods do not reinstate or increase the Limits of Insurance applicable to any "claim" to which this endorsement applies, except to the extent described in paragraph F. of this Section.

F. If the Supplemental Extended Reporting Period is in effect, we will provide the separate aggregate limit of insurance described below, but only for claims" first received and recorded during the Supplemental Extended Reporting Period.

04753

*01000042FT49640101

**Page 2 of 3**

© 1997, The Hartford

Form SX 04 15 06 97   Printed in U.S.A.  (NS)

**HART000160**

The separate aggregate limit of insurance will be equal to the dollar amount shown in Schedule I in effect at the end of the "policy period" of this endorsement.

Paragraph **B.** of **SECTION III - LIMITS OF INSURANCE** will be amended accordingly.

5.  **ADDITIONAL DEFINITIONS**

"Controlling underlying insurance policy" means the policy of "underlying insurance" designated in Schedule II providing coverage and limits for Employee Benefits Liability.

HART000161



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - LIQUOR LIABILITY

This endorsement modifies insurance provided under the

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT**

This policy does not apply to "bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

1. Causing or contributing to the intoxication of any person;

2. The furnishing of alcoholic beverages to:
   a. A person under the legal drinking age; or
   b. Under the influence of alcohol; or

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if such "insured" is in the business of:

1. Manufacturing;

2. Distributing;

3. Selling;

4. Serving; or

5. Furnishing;

Alcoholic beverages.

This exclusion applies to any operation of the "insured", or the "insured's" indemnitee, involving the selling or serving of alcoholic beverages for a charge whether or not the "insured," or the "insured's" indemnitee, is:

1. In the business to make a gain or profit from the selling or serving of such beverages; or

2. Engaged in selling or serving alcoholic beverages as a means of livelihood.

**Form SX 21 08 06 97**  Printed in U.S.A.

© 1997, The Hartford

HART000162



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**UMBRELLA LIABILITY PROVISIONS**

**A.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**B.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Form SX 21 09 06 03

© 2003, The Hartford

HART000163



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYEE RETIREMENT INCOME SECURITY ACT

This endorsement modifies insurance provided under the

**UMBRELLA LIABILITY PROVISIONS**

This policy does not apply to liability imposed on the "insured" under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001-1381 (1976) (ERISA) or any changes to it.

**Form SX 21 61 06 97**  Printed in U.S.A.

© 1997, The Hartford

HART000164



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the

**UMBRELLA LIABILITY PROVISIONS**

This policy does not apply to any "damages," judgments, settlements, loss, costs or expenses that:

1.  May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the asbestos hazard; or

2.  Arise out of any request, demand or order to test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of any asbestos hazard; or

3.  Arise out of any claim or "suit" for "damages" because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an asbestos hazard.

As used in this exclusion, asbestos hazard means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

**Form SX 21 75 06 97**  Printed in U.S.A.  (NS)

©1997, The Hartford

HART000165



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE LEAD EXCLUSION

This endorsement modifies insurance provided under the following:

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT**

This policy does not apply to any damages, judgments, settlements, loss, cost or expenses that:

a. May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred in whole or in part but for the lead hazard; or

b. Arise out of any request, demand or order to:

  1. identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize or mitigate or in any way respond to or assess the effects of the lead hazard; or

  2. As a result of such effects, repair, replace or improve any property.

c. Arise out of any claim or any "suit" for damages because of :

  1. Identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing or mitigating or in any way responding to or assessing the effects of the lead hazard; or

  2. As a result of such effects, repairing, replacing or improving any property.

As used in this exclusion, lead hazard means an exposure or threat of exposure to the actual or alleged properties of lead and includes the mere presence or suspected presence of lead in any for or combination.

Form SX 21 82 06 97   Printed in U.S.A. (NS)
© 1997, The Hartford

HART000166

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FOLLOWING FORM ENDORSEMENT
# AUTOMOBILE LIABILITY

This endorsement modifies insurance provided under the

**UMBRELLA LIABILITY PROVISIONS**

This policy does not apply to liability arising out of the:

1. Ownership;
2. Operation;
3. Maintenance;
4. Use;
5. Entrustment to others; or
6. Loading or unloading;

Of any "auto."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the injury or damage involved the ownership, maintenance, use, entrustment to others, or loading or unloading of any "auto".

**EXCEPTION**

This exclusion does not apply if "underlying insurance" is maintained providing coverage for such "auto" with minimum underlying limits as described for Commercial Automobile Liability in the Schedule of Underlying Insurance Policies.

Condition K. - Maintenance of Underlying Insurance applies to this exception.

**Form SX 24 01 04 01**

© 2001, The Hartford

HART000167



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FOLLOWING FORM EXCLUSION – SPECIAL EVENTS

This endorsement modifies insurance provided under the

**UMBRELLA LIABILITY PROVISIONS**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any "Special Event" sponsored or organized, in whole or in part, by the insured. This exclusion applies whether the "Special Event" is held on premises owned by the insured or on any other premises.

**EXCEPTION**

This exclusion does not apply if "underlying insurance" is maintained providing coverage for such "Special Event" with minimum underlying limits as described for Comprehensive Business Liability in the Schedule of Underlying Insurance Policies. Any coverage afforded by this policy is subject to the exclusions, conditions and limitations of the "underlying insurance" applicable to the "Special Event".

Condition **K. - Maintenance of Underlying Insurance** applies to this exception.

**Form SX 24 53 06 01**

© 2001, The Hartford

HART000168



# IMPORTANT NOTICE TO OUR POLICYHOLDERS

THANK YOU FOR RENEWING YOUR POLICY WITH THE HARTFORD.  WITH THIS NOTICE WE ARE PROVIDING YOU ONLY WITH THE DECLARATIONS PAGE, WHICH OUTLINES YOUR COVERAGES, AND WITH THOSE POLICY FORMS, NOTICES, AND BROCHURES WHICH ARE DIFFERENT FROM THOSE WHICH WE PROVIDED WITH YOUR PREVIOUS POLICY.  **YOU SHOULD RETAIN ALL OF THESE DOCUMENTS AND THOSE PROVIDED WITH YOUR PREVIOUS POLICY INDEFINITELY** SO THAT YOU WILL HAVE A COMPLETE SET OF POLICY FORMS AT ALL TIMES FOR YOUR REFERENCE.

IF YOU HAVE QUESTIONS, OR IF AT ANY TIME YOU NEED COPIES OF ANY OF THE FORMS LISTED ON YOUR POLICY, PLEASE CALL YOUR HARTFORD AGENT OR BROKER, OR THE OFFICE OF THE HARTFORD IDENTIFIED ON YOUR POLICY, AS APPROPRIATE.

**Form G-3187-0**

HART000169



# IMPORTANT NOTICE TO POLICYHOLDER –
# ASBESTOS HAZARD EXCLUSION

Beginning with this renewal, form SS 05 12, the Asbestos Hazard Exclusion, will be attached to your Spectrum policy. This form eliminates coverage for any injury or damage arising out of asbestos.

Please contact your agent, broker, or representative if you have any questions, and thank you for once again choosing The Hartford as your insurer.

**Form SS 83 46 04 01**                    © 2001, The Hartford

**HART000170**

POLICY NUMBER:



**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

| SCHEDULE |
|---|
| Terrorism Premium (Certified Acts):<br><br>$ |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

Form SS 83 76 06 03

© 2003, The Hartford

**Page 1 of 1**

HART000171