**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COUNCIL FOR RESPONSIBLE NUTRITION, and ANNETTE DICKINSON | ) ) ) | |
| Plaintiffs, | ) | Civil Action No.: 06-1590 (RMC) |
| | ) ) | |
| v. | ) ) | |
| HARTFORD CASUALTY INSURANCE COMPANY | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITY IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................... i

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS.................................................................................... 5

III. LEGAL ARGUMENT.......................................................................................... 8

    A.  The Underlying Complaint Contains Allegations of Reckless Conduct
        That Unquestionably Triggered Hartford's Duty to Defend................................ 8

    B.  Hartford's Analysis Misconstrues the Language of its Own Exclusion ............. 11

    C.  Acceptance of Hartford's Construction of its Policy Would Render
        Coverage Under its Policy Illusory.................................................................... 13

        1.  The District of Columbia Cases Cited by Hartford are Inapposite................ 14

        2.  *Freightquote* is Unpersuasive and Entirely Distinguishable From
            the Facts and Circumstances of This Case...................................................... 16

    D.  Hartford May Not Use CRN's and Dr. Dickinson's Defenses to Liability
        in the Underlying Action to Preclude Coverage Under the Policy..................... 18

IV. CONCLUSION.................................................................................................... 21

Plaintiffs Council for Responsible Nutrition ("CRN") and Annette Dickinson, Ph.D. ("Dr. Dickinson"), by and through their undersigned counsel, submit this memorandum of points and authority in opposition to Defendant Hartford Casualty Insurance Company's ("Hartford") Motion for Summary Judgment.

## I.    <u>INTRODUCTION</u>

Courts have long recognized that liability insurance is purchased as much for the promise of a defense as for protection against adverse judgments and settlements.  <u>See</u>, <u>e.g.</u>, <u>Montrose Chemical Corp. v. Superior Court</u>, 24 Cal.Rptr.2d 467, 471 (Cal. 1993) ("The insured's desire to secure the right to call on the insurer's superior resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability."); <u>Int'l Paper Co. v. Continental Cas. Co.</u>, 35 N.Y.2d 322, 326 (N.Y. 1974) ("While policy coverage such as the one here involved is often referred to as 'liability insurance' it is clear that it is, in fact, 'litigation insurance' as well.").  This was most certainly the case for the plaintiffs here, a non-profit organization and its President.  Even though ConsumerLab.com ("ConsumerLab") ultimately dismissed its lawsuit with no payment by CRN and Dickinson, this came only after hundreds of thousands of dollars in legal fees spent mounting the vigorous defense that eventually succeeded.

This Court need look no further than Hartford's own introduction to confirm that Hartford was called upon to fulfill this promise to defend CRN and Dr. Dickinson in the ConsumerLab lawsuit.  Hartford concedes in its introduction that the ConsumerLab Complaint contains allegations that CRN and Dr. Dickinson "defamed ConsumerLab and disparaged [ConsumerLab's] products and services."  (<u>See</u> Hartford's Brief at p. 2.)  Hartford further admits that the "torts of libel, slander and disparagement are included within the definition of 'personal

and advertising injury' in the [Hartford] Policy." (Id.)  Despite these admissions, Hartford asks this Court to relieve it of its duty to defend, by reading the ConsumerLab Complaint selectively and construing an exclusion in the Hartford Policy broadly -- contrary to established law, which requires just the opposite.  Hartford's arguments defy the fundamental purpose of this "litigation insurance" and turn the law on its head.  As we show below:

Hartford's analysis selectively -- and impermissibly -- focuses only on those allegations in the ConsumerLab Complaint that contain averments of intentional conduct; it entirely ignores the alternative allegations of reckless and negligent conduct.  The test for determining Hartford's duty to defend in the District of Columbia (and virtually everywhere else in this country) requires, contrary to Hartford's approach, that the Complaint be read liberally as a whole to include "all plausible claims encompassed within the complaint to ascertain whether the allegations of the complaint state a cause of action within the policy coverage." Am. Continental v. Pooya, 666 A.2d 1193, 1197 (D.C. 1995).  When read in this manner, it is clear that the ConsumerLab Complaint gave rise to a duty to defend.

Hartford's reading of its exclusion 1.a.(2) is overbroad and untenable.  By its terms, the exclusion applies only when the insured acts with the expectation of committing libel, slander or one of the other enumerated offenses.  Thus, the insured must not only expect to inflict "reputational harm," but also expect to do so falsely, without privilege, and otherwise in an actionable manner.  The exclusion reflects Hartford's understandable intent not to create a "moral hazard":  not to serve as an enabler to insureds who knowingly set out to commit intentional torts because they think their insurance will pay for any consequences.  That is not this case.  This case falls squarely within the coverage grant promising a defense to insureds accused of defamation.  Hartford's moral hazard exclusion cannot serve to withdraw that

promise from insureds who either negligently or recklessly commit a covered offense, or who --
as in this case -- do not actually commit an actionable offense but are targeted by a plaintiff
whose complaint ultimately proves to be unfounded.  For purposes of the duty to defend, it is
rarely possible for an insurer to know when its insured first tenders a defamation complaint
whether in fact the insured's conduct was merely innocent, negligent or reckless (*i.e.*, covered) or
whether the insured purposely set out to commit the tort in question (not covered).  In these
circumstances, the only proper course of action is for the insurer to fulfill its promise to defend.

Hartford's overbroad reading of its exclusion would also render the promised coverage
illusory, a result that courts will not permit.  Having conceded that its policy promises to defend
an insured against lawsuits alleging "the torts of libel, slander and disparagement," Hartford
cannot avoid this promise simply because the "natural consequence" of these covered defamation
torts is to cause harm to a plaintiff's reputation.  All defamatory statements are inherently
hurtful, but not all are actionable.  To be actionable, the statement must (among other things) be
false; and it must be made with the requisite degree of knowledge of its falsity.  Nonetheless,
under Hartford's analysis, if an insured publishes a derogatory statement that is truthful or
unwittingly false – i.e., a nonactionable statement that nonetheless can be expected to reflect
unfavorably upon another's reputation – then that insured would be denied a defense against a
legally baseless defamation lawsuit.  In the face of a marketing materials that expressly promise
coverage for "legal defense costs . . . from lawsuits that claim false, misleading statements,"
Hartford's argument can only be viewed as an effort to withdraw with one hand what it offered
with the other hand when it accepted the insured's premium.

Finally, Hartford cannot escape its duty to defend by relying on the very defenses its
insureds raised in the underlying action.  This argument perverts the "eight-corners doctrine" that

Hartford has so vigorously advocated.  More fundamentally, it would penalize CRN and Dickinson for asserting meritorious defenses.  An insured should not be discouraged from defending itself against liability for fear of losing coverage based on the presentation of  that defense.

In any event, Hartford's ingenious effort to parlay legitimate underlying defenses into coverage-killers is premised on a false understanding of those underlying defenses.  Contrary to Hartford's assertion, a defamation plaintiff does not need to prove an "uncovered" state of mind – *i.e.*, according to Hartford, an actual expectation or intent to inflict reputational injury – in order to overcome the privilege defenses available to CRN.  The absolute privilege under the *Noerr-Pennington* doctrine can be defeated only through the "sham exception," which depends on whether the statement is "objectively baseless" -- not whether the speaker intended or expected harm.  The New York common law privilege for statements uttered in judicial or quasi-judicial proceedings is absolute and cannot be overcome by showing that the speaker acted with intent to harm, *i.e.*, with common law malice.  The qualified privilege afforded by New York Civil Rights Law section 74 is defeated only by a showing that the statement is not a fair and accurate report, and case law is well settled that common law malice will not defeat the privilege.

In sum, each of Hartford's arguments is inconsistent with the law and the plain terms of its policy.  For Hartford to prevail on its motion for summary judgment, it must convince this Court: (1) to ignore the plain language of the pleadings; (2) to construe the insuring agreement of the Hartford Policy narrowly; and (3) to construe exclusion 1.a.(2), on which Hartford exclusively relies, broadly.  Each of these prerequisites to Hartford's success on its motion for summary judgment is inconsistent with District of Columbia insurance law and the undisputed facts of this case.  Accordingly, Plaintiffs CRN and Dr. Dickinson respectfully request that this

Court deny Hartford's motion for summary judgment and grant Plaintiffs' motion for summary judgment.

## II.     STATEMENT OF FACTS

Nothing in Hartford's recitation of the facts of this case unseats the inevitable conclusion that, based on the allegations of the complaint filed by ConsumerLab, Hartford was obligated to defend CRN and Dr. Dickinson.  Rather than recite the allegations of the Underlying Complaint as they are pled, Hartford has selectively quoted only those allegations which it contends establish that CRN and Dr. Dickinson "intended" to injure the reputation of ConsumerLab.  As this Court is well aware, Hartford may not paint such a narrow and constricted picture, rather it must accept the Underlying Complaint as it is, including the allegations of reckless and negligent conduct.

As an initial matter, although Hartford focuses almost exclusively on the allegations of the Complaint surrounding CRN and Dr. Dickinson's filing of the Request for Investigation with the FTC, the allegations of the Underlying Complaint clearly aver that CRN and Dr. Dickinson defamed ConsumerLab by other conduct as well.  For example, the Underlying Complaint makes clear that ConsumerLab contended that CRN and Dr. Dickinson had defamed ConsumerLab by forwarding copies of the Request for Investigation to the Wall Street Journal, issuing a press release, which was subsequently published on the CRN website, and the forwarding of an additional allegedly defamatory letter to the FTC that was again published on the CRN website. (See Underlying Complaint attached to Plaintiffs' Motion for Partial Summary Judgment as Exhibit A at ¶¶ 12, 16-19).  In particular, the ConsumerLab complaint alleges:

> At about the same time as [CRN and Dr. Dickinson] filed the [Request for Investigation], they also posted the [Request for Investigation] on CRN's website and issued a press release on a public newswire citing to the internet address of the [Request for

> Investigation] on [CRN's] web site. The press release *further*
> *defamed* [ConsumerLab] with *additional defamatory statements*.
> (Id. ¶ 16) (emphasis added).

Thus, the allegations of defamatory conduct contained in the ConsumerLab Complaint were not limited solely to conduct related to the Request for Investigation as Hartford suggests in its Statement of Facts. Further, for each paragraph of the Underlying Complaint highlighted by Hartford in which ConsumerLab alleged intentional conduct on the part of CRN and Dr. Dickinson, Hartford omits a corresponding paragraph that alleges reckless or negligent conduct. For example, while Hartford cites to paragraph 13 of the Underlying Complaint, which alleges that the "principle purpose of [Plaintiffs'] defamatory media campaign against [ConsumerLab] was to silence [ConsumerLab]" (See Hartford brief at p. 6, Underlying Complaint at ¶ 13), Hartford fails to acknowledge that in the very next paragraph of the Underlying Complaint, ConsumerLab alleges:

> The defamatory statements were made by Defendants with
> knowledge of the falsity of such statements or with reckless
> disregard of whether or not such statements were false. (See
> Underlying Complaint at ¶ 14).

Hartford's self-serving and selective quotation of the allegations of the Underlying Complaint is contrary to District of Columbia law that requires an insurer evaluating its duty to defend to read liberally the allegations of the complaint and to construe them to include all plausible claims. See Pooya, 666 A.2d at 1197 (it is appropriate to examine the complaint for all plausible claims encompassed within the complaint and to ascertain whether the allegations of the complaint state a cause of action within the policy coverage and give fair notice to the insurer that the insured is being sued upon an occurrence which gives rise to a duty to defend under the terms of the policy).

In its statement of facts, Hartford concedes that all but one count of the Underlying Complaint was dismissed as a result of CRN and Dr. Dickinson's motion to dismiss. (See Harford Brief at p. 7). Importantly, the count that remained was Count One, for defamation. (See May 16, 2006 Order attached hereto as Exhibit A). The allegations of this count, in pertinent part, are as follows:

27.    Defendants made and published statements that were defamatory to Plaintiff, and such defamatory statements are identified specifically above as the defamatory statements and were published be the Defendants within documents cited as Exhibits "A" through "C."

28.    Defendants defamatory statements are factually false.

29.    Defendants published their defamatory statements with ***actual malice.***

30.    Defendants published their defamatory statements in a ***grossly irresponsible manner.***

31.    Defendants published their defamatory statements without ***due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.***

(See Underlying Complaint attached to Plaintiffs' Motion for Partial Summary Judgment as Exhibit A) (emphasis added). Accordingly, as acknowledged by Hartford in its Motion for Summary Judgment, the only claim remaining following CRN's and Dr. Dickinson's motion to dismiss expressly averred that they acted in a reckless and irresponsible manner. As discussed more fully in Plaintiffs' Motion for Partial Summary Judgment, these allegations fall squarely within the ambit of the Hartford Policy. Thus, CRN and Dr. Dickinson submit that, even under Hartford's stilted construction of the Underlying Complaint, they are nonetheless entitled to summary judgment with respect to Hartford's duty to defend based on Hartford's own recitation of the facts.

## III.    ARGUMENT

7

**A.    The Underlying Complaint Contains Allegations of Reckless Conduct That Unquestionably Triggered Hartford's Duty to Defend**

Although Hartford seeks to have this Court ignore all allegations of negligent conduct contained in the Underlying Complaint, it is beyond dispute that ConsumerLab alleged that CRN and Dr. Dickinson made statements with "***reckless disregard*** of whether or not such statements were false;" "in a ***grossly irresponsible*** manner;" and "***without due consideration*** for the standards of information gathering and dissemination ordinarily followed by responsible parties." (See Underlying Complaint attached as Exhibit A to Plaintiffs' Motion for Partial Summary Judgment at ¶¶ 14, 30, 39 and 40) (emphasis added).  Having all but admitted outright that the allegations of the ConsumerLab Complaint fall within the terms of the Policy's coverage grant, the burden is on Hartford to demonstrate that ***all*** allegations of the Complaint fall wholly within the terms of Exclusion 1.a.(2) on which it relies.  It is clear that Hartford cannot satisfy this burden.

While Hartford tries to distinguish the court's holding in Pooya from the facts presented by the Underlying Complaint, this argument is without merit. In Pooya, an action was filed against Dr. Manoocherhr Pooya ("Pooya") alleging libel, slander and intentional infliction of emotional distress. Pooya, 666 A.2d at 1195. The first two counts contained allegations that Pooya "maliciously, knowingly and intentionally made false and defamatory statements about the plaintiffs, and/or that he wrote the Report with ***reckless disregard as to the truth or falsity*** of the statements contained therein." Id. (emphasis added).  Pooya tendered this complaint to his insurance carrier, American Continental Insurance Co. ("American"), who disclaimed coverage based on the policy's exclusion for intentional and malicious acts. Id.

In determining whether American breached its duty to defend Pooya in the underlying action, the court expressly rejected American's contention that it must look solely to the literal

8

wording of the complaint and thereby disregard claims that may be included within the alleged causes of action. Id. at 1197. Noting that defamation may be either intentional or negligent, the court found that it was possible for Pooya to be found liable for defamation without intentional acts being proven. Id. at 1198-99 (citing Washington v. State Farm & Cas. Co., 629 A.2d 24, 27, n.8 (D.C. 1993); Moss v. Stockard, 580 A.2d 1011, 1022 n. 23 (D.C. 1990)). Accordingly, the court concluded that the allegations of the underlying complaint "unquestionably raised the possibility of coverage within the scope of the policy" and held that American breached its duty to defend Pooya in connection with the underlying action. Id. at 1199; see also Fuisz v. Selective Ins. Co. of Am., 61 F.3d 238, 245 (4th Cir. 1995) (because underlying complaint stated a cause of action that could potentially result in liability based on a less culpable state of mind than specific intent, insurer failed to satisfy its burden of demonstrating that the allegations of the complaint fell wholly within the ambit of the intentional acts exclusion).

Although alluded to by Hartford, the potential immunities available to CRN and Dr. Dickinson pursuant to the Noerr-Pennington doctrine do not alter the fact that a jury could have found CRN and Dr. Dickinson liable for common law defamation. The Underlying Complaint clearly averred a cause of action for common law libel and slander. Thus, the Underlying Complaint presented the possibility that the insureds' could be liable for *additional* defamatory statements that were posted on the website and contained in the press release,  which were separate and apart from the Request for Investigation. Accordingly, while Hartford chooses to ignore this potentiality, the ConsumerLab Complaint presented the prospect that CRN and Dr. Dickinson could have been held liable for this defamatory conduct.  Indeed, this was the only cause of action that survived CRN and Dr. Dickinson's motion to dismiss.  (See Order attached

hereto as Exhibit A). Thus, Hartford's efforts to distinguish this matter from <u>Pooya</u> are unavailing.

Moreover, Hartford's contention that CRN and Dr. Dickinson could not be found liable absent an "intent to injure," is erroneous. As an initial matter, the "sham" exception to the <u>Noerr-Pennington</u> doctrine is not triggered by an "intent to injure," rather its application depends on whether the statements at issue are "objectively baseless." <u>See</u> <u>Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.</u>, 508 U.S. 49, 60 (1993) (sham exception requires the plaintiff to first demonstrate that the lawsuit was objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits). Furthermore, as Hartford admits, the common law and statutory privileges invoked by CRN and Dr. Dickinson in the Underlying Action could not be defeated by a showing of malice, common law or otherwise. (<u>See</u> Hartford Brief at p.26-27, citing <u>Joseph v. Larry Dorman, P.C.</u>, 576 N.Y.S.2d 588, 589 (N.Y. App. Div. 1991); <u>Branca v. Mayesh</u>, 476 N.Y.S.2d 187, 188 (N.Y. App. Div. 1984). Accordingly, any allegations of intentional conduct contained in the ConsumerLab Complaint were irrelevant to whether any privilege would attach or whether CRN and Dr. Dickinson could be held liable for common law defamation.

Try as it might, Hartford cannot ignore the plain language contained in the Underlying Complaint. ConsumerLab sought damages based not only on allegations of intentional conduct, but on allegations of *reckless* and ***grossly irresponsible*** conduct as well. Although Hartford makes much of the fact that the allegations of the Underlying Complaint "have as their natural and probable consequence injury to the reputation of ConsumerLab and disparagement of its product and services," this is the very definition of defamation. (<u>See</u> Hartford Brief at p. 9). This in no way alters the simple fact that a jury could have found the insureds liable *without* finding

that they acted with any expectation of defaming ConsumerLab. Because an insurer must defend

the entire claim if it appears from the face of the pleadings that at least one count of the

complaint potentially falls within the scope of policy coverage, the fact that some of the

allegations of the ConsumerLab Complaint allege "intent" on the part of the insured is

insufficient to absolve it of its duty to defend the Underlying Action.  See Continental Cas. Co.

v. Cole, 809 F.2d 891, 895 (D.C. Cir. 1987).

**B.      Hartford's Analysis Misconstrues the Language of its Own Exclusion**

In support of its argument that the Underlying Action alleges only intentional or willful

acts on the part of its insured, Hartford ignores the myriad of allegations that seek damages based

on a far less ill-intentioned state of mind.  Simply put, ConsumerLab alleges not only that it was

harmed by CRN and Dr. Dickinson's filing with the FTC, but also that ConsumerLab was

injured by CRN's publication of defamatory material on its website and dissemination of

allegedly false information to the press. (See Underlying Complaint attached to the Plaintiffs'

Motion for Partial Summary Judgment as Exhibit A at ¶¶ 8, 9, 12 &15).

Again, the mere fact that these statements may have inflicted reputational harm on

ConsumerLab should not in and of itself preclude coverage under the language of the Hartford

Policy.  Although Hartford makes much of the fact that these statements may have "had as their

natural and probable consequence the infliction of reputational harm on ConsumerLab," Hartford

ignores the obvious:  *this is always true with respect to claims of libel, whether intentional or*

*reckless.*  To argue that coverage is now precluded because of an "expectation" of reputational

harm renders coverage illusory and the Policy ambiguous.

Importantly, in arguing that it is the expectation of reputational harm that forecloses

coverage for this claim under its Policy, Hartford misconstrues the language of its own

exclusion, language that must be construed narrowly and in favor of coverage for the insured.

See Loeffler v. Boston Ins. Co., 120 A.2d 691 (D.C. App. 1956) (it is the duty of insurer to spell

out in plainest terms any exclusionary or delimiting policy provisions; all ambiguities must be

resolved against the insurer).  Exclusion 1.a.(2) bars coverage for:

> "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury."

(See Hartford Policy attached to Plaintiffs' Motion for Partial Summary Judgment as Exhibit D).

Inserting the relevant definition of "personal and advertising injury" into this definition,

the Hartford Policy purports to exclude:

> "[Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services ]" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "[Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services]."

Thus, by its very definition, it is not the expectation of reputational harm that is precluded, but

the expectation of *actionable* defamation itself that is precluded. In this case, ConsumerLab

alleged that allegedly defamatory statements were made with "***reckless disregard*** of whether or

not such statements were false," "in a ***grossly irresponsible*** manner," and "***without due***

***consideration*** for the standards of information gathering and dissemination ordinarily followed

by responsible parties." (See Underlying Complaint attached to Plaintiffs' Motion for Partial

Summary Judgment as Exhibit A at ¶¶ 14, 30, 39, 40) (emphasis added).  This certainly leaves

open the possibility of a finding that CRN and Dr. Dickinson acted in good faith, but still

defamed ConsumerLab in the course of making what they believed to be truthful statements.

**C.    Acceptance of Hartford's Construction of its Policy Would Render Coverage Under its Policy Illusory**

At bottom, Hartford seeks to avoid its duty to defend based on a deceptively simple, albeit misguided, argument: since defamation is an "intentional" tort, Hartford is relieved of its duty to defend because coverage for such "intended" conduct is barred by exclusion 1.a.(2), which bars coverage for "'personal and advertising injury' arising out of an offense committed by . . . the insured with the expectation of inflicting 'personal and advertising injury'." (See Hartford Policy attached to Plaintiffs' Motion for Partial Summary Judgment as Exhibit D).  The mischief that would result if the Court adopted this interpretation is self-evident: it would render Hartford's promise to defend defamation claims illusory.

The Hartford Policy defines "personal and advertising injury" as injury arising out of certain enumerated "offenses."  These "offenses" explicitly include "oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."  (Id.) Thus, if the Court adopts Hartford's construction of its policy, the Hartford Policy would never provide coverage for the enumerated intentional torts such as malicious prosecution, false imprisonment or defamation – all of which the Hartford has defined as "offenses" to which the "personal and advertising injury" coverage grant applies.

Where, as here, an insurer seeks to have its policy provisions, limitations and exclusions interpreted in a manner that completely contradicts the insuring provisions, insurance coverage becomes illusory.  See Mercer Intern. v. U.S. Fidelity & Guar. Co.,189 F.3d 473 (9th Cir. 2001) (disfavoring an interpretation of a policy term that would render coverage illusory); Lincoln Nat'l Health and Casualty Ins. Co. v. Brown, 782 F. Supp. 110, 112 (M.D.Ga.1992) (rejecting an interpretation of "intentional acts" exclusion that would bar coverage for assault and battery

would render coverage illusory); <u>Davidson v. Cincinnati Ins. Co.</u>, 572 N.E.2d 502

(Ind.Ct.App.1991) (in a case in which the insurance policy covered injuries arising from

malicious prosecution and slander, but excluded coverage for intentional acts, the policy was

held to be illusory; such an interpretation is not favored). Of course, such a construction must

fail.

       1.     **<u>The District of Columbia Cases Cited by Hartford are Inapposite</u>**

Perhaps the most telling indication of how tenuous of Hartford's argument is in this

matter is fact that Hartford is unable to cite to relevant case law to support its position.

Hartford's resort to cases defining the term "occurrence" in the context of police shootings (<u>Byrd</u>

<u>v. Nationwide Mut. Ins. Co.</u>, 415 A.2d 807 (D.C. 1980) and second degree murder (<u>Travelers</u>

<u>Indem. Co. v. Walburn</u>, 378 F. Supp. 860 (D.D.C. 1974) simply highlights how far afield

Hartford is willing to travel to avoid its obligations to its insured. Indeed, even a cursory review

of the cases cited by Hartford in support of its argument that exclusion 1.a(2) applies to preclude

coverage for this claim reveals that Hartford's selected authority is wholly inapposite to the

circumstances presented here. Not only are the cases cited by Hartford factually dissimilar but,

also the policies at issue in those cases do not event contain the same operative terms as the

Hartford Policy issued to CRN.

In particular, each of the cases cited by Hartford interprets an insuring agreement

containing an "occurrence," rather than "offense" based coverage grant. <u>See</u> <u>Byrd</u>, 415 A.2d at

807 (finding that the insured's shooting was not "accidental," within the meaning of an accident

policy); <u>Walburn</u>, 378 F. Supp. at 860 (finding that second degree murder was not an

"occurrence" as defined by the insured's homeowner's policy).  Thus, the insuring agreements in

the cases relied on by Harford contain an "occurrence" based coverage grant that speaks in terms

of "accidents" and "occurrences," while the portion of the Hartford Policy insuring agreement at issue here  speaks in terms of "offense" based coverage that promises to defend insureds for certain covered and enumerated "offenses."  <u>Am. Guar. & Liab. Ins. Co. v. 1906 Co.</u>, 273 F.3d 605 (5th Cir. 2001) (stating that unlike occurrence based coverage, offense based coverage is triggered without proof of an accidental occurrence  and is activated by the commission of certain specified offenses).  Given the differing policy terms and dissimilar facts of <u>Byrd</u> and <u>Walburn,</u> it should be no surprise that a review of those cases does nothing to assist this Court in its analysis of the issues to be determined by this Court.

Of course, the insureds in this case are not accused of shooting anyone, nor is the Court presented with an "occurrence" or "accident" type insuring agreement. The ConsumerLab Complaint sought damages for allegedly defamatory statements made by CRN and Dr. Dickinson. Thus, neither the factual circumstances of <u>Byrd</u> and <u>Walburn</u> nor the terms of policies interpreted therein are in any way relevant to the issue of whether coverage is provided to CRN and Dr. Dickinson under the offense based coverage grant of the Hartford Policy.

In this case, the coverage grant of the Hartford policy promises to defend the insured against any suit seeking those damages for "'personal and advertising injury' cause by an offense arising out of your business."  This is an "offense" based rather than "occurrence" or "accidental" based coverage grant.  Rather than focusing on whether an incident was "accident," the "offense" based coverage grant on which CRN and Dr. Dickinson rely requires only that the claim arise out of one of the enumerated "personal and advertising injury" offenses, which, as defined by the Hartford Policy, includes:

> Oral, written or electronic publication of material that slanders or
> libels a person or organization or disparages a person's or
> organization's goods, products or services.

(See Hartford Policy attached to Plaintiffs' Motion for Partial Summary Judgment as Exhibit D).

Accordingly, the cases relied on by Hartford are completely inapposite, and they should be

disregarded by the Court as having no bearing on whether ConsumerLab's allegations of

defamation fall within the ambit of the Hartford Policy issued to CRN.

> ### 2.    *Freightquote* is Unpersuasive and Entirely Distinguishable From the Facts and Circumstances of This Case

In a similar display that is indicative of how far Hartford is willing to stretch to escape its

duty to defend, Hartford seeks to persuade this Court to ignore District of Columbia precedent in

Pooya and the persuasive authority of the Fourth Circuit in Fuisz in favor of the Tenth Circuit's

interpretation of Kansas law in the context of a factually distinguishable matter. See

Freightquote.com v. Hartford Cas. Ins. Co., 397 F.3d 888 (10th Cir. 2005).

The most glaring distinction between Freightquote and this matter is the allegations of the

pleadings themselves.  In Freightquote, the injured party sought damages for tortuous

interference with contractual and business relations, not defamation.  Freightquote, 397 F.3d at

890.  Unlike Count One of the ConsumerLab Complaint which sounds in defamation, in

Freightquote there was no possibility of a recovery for tortuous interference with contractual

relations absent a showing of intent based on the elements of tortuous interference with contract.

Dickens v. Snodgrass, Dunlap & Co., 872 P.2d 252, 257 (Kan. 1994) (to recover on a tortuous

interference with a contract claim under Kansas law, a plaintiff must prove (1) the existence of a

contract; (2) the defendant's knowledge thereof; (3) its intentional procurement of a breach; (4)

the absence of justification; and (5) damages resulting therefrom)[1].  Accordingly, while not clear

---

[1] As compared with the elements of defamation under New York law, which do not include intent. See Celle v. Filipino Reporter Enter., 209 F.3d 163, 176 (2d Cir.2000) (under New York law, libel consists of five elements: (1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionable).

from the court's discussion of the complaint, it is unlikely that the underlying complaint in Freightquote contained the allegations of reckless and negligent conduct that are found in this case. Moreover, although finding that Hartford had no duty to defend Freightquote based on the allegations contained in that underlying complaint, the court acknowledged that "where the allegations in the complaint and all other facts indicate that the insured did not act with the intent to injure . . . the insurer would have a duty to defend." Freightquote, 397 F.3d at 896 n. 2.  This acknowledgement of the duty to defend limits Freightquote to a case where there are *only* allegations of intentional and malicious conduct.  This is clearly not the case here, as the ConsumerLab plainly averred that CRN and Dr. Dickinson acted in a reckless and negligent manner.

Furthermore, the Court's decision in Freightquote is questionable at best and can be looked at in isolation.  Notably, despite the fact that this decision was issued in February of 2005, it has not been cited by any court outside of the Tenth Circuit and has *never* been cited for the proposition that Hartford now petitions this Court to accept.  This stands in stark contrast with the Fourth Circuit Fuisz case, which has been cited numerous times, both within the Fourth Circuit and in other jurisdictions. Indeed a review of the Freightquote decision and the cases on which the court relied reveals the infirmity of the decision and, therefore, Plaintiffs' submit that this Court should disregard that case as wholly unpersuasive and inapplicable to the facts and circumstances of the matter before it.

**D.      Hartford May Not Use CRN's and Dr. Dickinson's Defenses to Liability in the Underlying Action to Preclude Coverage Under the Policy**

In essence, Hartford argues that because CRN and Dr. Dickinson had at their disposal a qualified privilege or immunity under Noerr-Pennington that could only be overcome if ConsumerLab demonstrated that CRN and Dr. Dickinson's were not genuinely aimed at

procuring favorable government action, Hartford had no obligation to defend because its Policy barred coverage for such claims.  This argument fails for two reasons.  First, as set forth above, the allegations of the Complaint contain reference to negligent and reckless conduct and sufficiently averred claims for libel, slander, and defamation that Harford was duty-bound to defend.  Second, in advancing this argument Harford is improperly weighing the viability of claims made against is insured, rather than simply accepting them as plead. It is well settled that "in order for an insurer to be obligated to defend an insured, the underlying tort suit need only allege action that is potentially covered by the policy, no matter how attenuated, frivolous, or illogical that allegation may be." Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am., 448 F.3d 252 (4th Cir. 2006); see also Sheets v. Brethren Mut. Ins. Co., 679 A.2d 540, (Md. 1996) (in order for an insurer to be obligated to defend an insured, the underlying tort suit need only allege action that is potentially covered by the policy, no matter how attenuated, frivolous, or illogical that allegation may be).

In Sheets, an action was brought against the insured for negligent misrepresentation made regarding the conditions of a septic system prior to the sale of the insured's property. Id. at 541. The insurer, Brethren Mutual Insurance Company ("Brethren"), disclaimed any obligation to defend its insured, predicated on what it considered the frivolous nature of the allegations contained in the underlying complaint for negligent misrepresentation.  Id.  Brethren concluded that the allegations failed to establish the requisite causal connection between the damages sustained and the alleged misrepresentations of the insured.  Id. at 543.  In overturning the trial court's order granting summary judgment in favor of Brethren, the Maryland  Court  of Appeals noted that generally, "the insurer is not permitted to contradict the allegations contained in a complaint since that will be a matter of proof to be determined during the trial of the negligence

action." Id. at 544 (citing 7C John Alan Appleman, Insurance Law and Practice § 4686, at 172

(Berdal ed. 1979)). Further, the court held that:

> Brethren should have defended the suit filed against its policy
> holder even if that suit on its face was frivolous in the allegation of
> a causal connection between the [insured's] negligence and the
> [plaintiffs'] property damage. Rather than filing a motion for
> summary judgment against the [insured], Brethren should have
> filed a motion on behalf of the [insured] . . . on the ground of lack
> of causal nexus.

(Id.)

A similar analysis applies here. The fact that Hartford believed that ultimately,

ConsumerLab may not have been able to prevail on its claim absent a showing of intent on the

part of CRN and Dr. Dickinson is irrelevant to whether, on the face of the Underlying

Complaint, a covered cause of action was alleged. As in Sheets, rather than denying its duty to

defend, Hartford's proper course of action would have been for Hartford to file a motion to

dismiss on behalf of CRN and Dr. Dickinson.

As Hartford must admit, the duty to defend extends much farther than the duty to

indemnify and requires defense of all claims even if only a portion of those claims potentially

fall within the terms and conditions of the policy. Commonwealth Lloyds Ins. Co. v. Marshall,

Neil & Pauley, Inc., 32 F. Supp. 2d 14 (D.D.C. 1998). Accordingly, the fact that CRN and Dr.

Dickinson had viable defenses to liability in this case could *only* affect Hartford's duty to

indemnify, as the allegations of reckless and negligent conduct on the face of the Underlying

Complaint triggered a duty to defend. This is particularly true under the stringent "eight-

corners" approach championed by Hartford and currently applied in the District of Columbia.

See Am. Registry of Pathology v. Ohio Cas. Ins. Co., 461 F. Supp. 2d 61, 67 (D.D.C. 2006)

("[u]nder the law of the District of Columbia, it is the facts *alleged* in the complaint, not the facts

19

ultimately *established* during litigation, that control the applicability of insurance coverage.") (emphasis added). Moreover, and perhaps most importantly, the mere possibility that CRN's and Dr. Dickinson's alleged libelous statements were privileged does not negate Hartford's duty to defend. See Travelers Indem. Co. of Ill. V. United Food & Commercial Workers Int'l Union, 770 A.2d 978, 990 n.15 (D.C. 2001) (noting that possibility that insured's libel in pleadings was privileged did not negate the insurer's duty to defend where the complaint facially stated a claim for libel).

Accordingly, Hartford's arguments with respect to the Noerr-Pennington doctrine and privilege are wholly irrelevant to the determination of whether the allegations of the Underlying Complaint, on its face, triggered a duty to defend.  Indeed, taken to its logical end, coverage would never exist for an insured where the underlying action is frivolous, attenuated, or defensible.  Clearly, such a result is inconsistent with prevailing law and should be must be given no credence by this Court.  The Underlying Complaint unquestionably alleged that CRN and Dr. Dickinson defamed ConsumerLab by acting with reckless disregard of whether their statements were false. Therefore, on its face, the Underlying Complaint alleged a "covered" state of mind in that CRN and Dr. Dickinson could have been found liable without a finding of intent on their part.

## IV.    CONCLUSION

For the foregoing reasons and based on the case law cited herein, it is respectfully requested that this Court deny Hartford's motion for summary judgment and grant partial

summary judgment in favor of Plaintiffs, Council for Responsible Nutrition and Annette Dickinson, Ph.D., finding that Defendant Hartford breached its duty to defend the Plaintiffs in connection with the Underlying Action.

Respectfully submitted,

_____/s Janet K. Coleman_____
Janet K. Coleman, Bar No. 497902
WHITNEY & BOGRIS, LLP
401 Washington Avenue
Towson, Maryland 21204
(410) 583-8000 (tel.)
*Counsel for Plaintiffs Council for Responsible Nutrition and Annette Dickinson*