UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUNCIL FOR RESPONSIBLE NUTRITION and ANNETTE DICKINSON,<br><br>Plaintiffs,<br><br>v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY,<br><br>Defendant. | Case No.: 1:06-CV-01590-RMC |

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S REPLY TO PLAINTIFFS' OPPOSITION TO HARTFORD'S MOTION FOR SUMMARY JUDGMENT**

TROUTMAN SANDERS LLP
Patrick F. Hofer, Bar No. 412665
Tracy P. Varghese, Bar No. 472805
401 9th Street, NW, Suite 1000
Washington, D.C. 20004-2134
(202) 274-2950

*Counsel for Defendant Hartford Casualty Insurance Company*

Dated: April 10, 2007

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. The Underlying Complaint Alleges Only a Non-Covered Tort ..... 2

B. Plaintiffs Mischaracterize What Must Be Alleged to Preclude the Absolute Privileges to Liability for Defamation or Disparagement ..... 6

C. Plaintiffs Mischaracterize the Standard on the Duty to Defend ..... 8

D. Plaintiffs Mischaracterize the Hartford Policy Language ..... 11

E. Plaintiffs Mischaracterize the Underlying Complaint ..... 12

III. CONCLUSION ..... 12

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Agora Syndicate, Inc. v. Levin*, 977 F. Supp. 713 (E.D. Pa. 1997) .......... 3

*Freightquote.com v. Hartford Casualty Insurance Co.*, 397 F.3d 888 (10th Cir. 2005) .......... 6

*Fuisz v. Selective Insurance Co.*, 61 F.3d 238 (4th Cir. 1995) .......... 11

### STATE CASES

*55th Management Corp. v. Goldman*, 1 Misc. 3d 239, 768 N.Y.S.2d 747 (Sup. Ct. New York Co. 2003) .......... 9-10

*Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*, 268 A.D.2d 101, 707 N.Y.S.2d 647 (2000) .......... 7

*American Cont'l Insurance Co. v. Pooya*, 666 A.2d 1193 (D.C. 1995) .......... 3, 9

*Andrews v. Gardiner*, 224 N.Y. 440, 121 N.E. 341 (1918) .......... 9

*Atlantic Mutual Insurance Co. v. Terk Tech. Corp.*, 309 A.D.2d 22, 763 N.Y.S.2d 56 (2003) .......... 3

*Concourse Nursing Home v. Engelstein*, 181 Misc. 2d 85, 692 N.Y.S.2d 888 (Sup. Ct. New York Co. 1999), *aff'd*, 278 A.D.2d 35, 717 N.Y.S.2d 154 (2000) .......... 7

*Devin v. United Services Automobile Association*, 6 Cal. App. 4th 1149, 8 Cal. Rptr. 2d 263 (1992) .......... 3

*Eastern Shore Finance Resources, Ltd. v. Donegal Mutual Insurance Co.*, 84 Md. App. 609, 581 A.2d 452 (1990) .......... 5

*Monter v. CNA Insurance Cos.*, 202 A.D.2d 405, 608 N.Y.S.2d 692 (1994) .......... 5

*Nikolai v. Farmers Alliance Mutual Insurance Co.*, 830 P.2d 1070 (Colo. Ct. App. 1991) .......... 10

*People ex rel. Bensky v. Warden of City Prison*, 258 N.Y. 55, 179 N.E. 257 (1932) .......... 9

*Quan v. Truck Insurance Exchange*, 67 Cal. App. 4th 583, 79 Cal. Rptr. 2d 134 (1998) .......... 3, 4

*Rosenberg v. MetLife, Inc.*, ___ N.Y.2d ___, ___ N.E.2d ___, 2007 N.Y. LEXIS 504 (Mar. 29, 2007) .......... 8

*Saluto v. O'Leary*, 646 So. 2d 1225 (La. Ct. App. 1994) .......... 3, 5

*Sickles v. Kling*, 60 A.D. 515, 69 N.Y.S. 944 (1901) .......... 9

*State Automobile Insurance Cos. v. McClamroch*, 129 N.C. App. 214, 497 S.E.2d 439 (1998) .......... 3

**MISCELLANEOUS**

1 Allan D. Windt, *Insurance Claims & Disputes* § 4.2 (4th ed. 2001) .......... 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COUNCIL FOR RESPONSIBLE NUTRITION and ANNETTE DICKINSON,

Plaintiffs,

v.

HARTFORD CASUALTY INSURANCE COMPANY,

Defendant.

Case No.: 1:06-CV-01590-RMC

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S REPLY TO PLAINTIFFS' OPPOSITION TO HARTFORD'S MOTION FOR SUMMARY JUDGMENT**

Defendant Hartford Casualty Insurance Company ("Hartford") respectfully submits this Reply to Plaintiffs Council for Responsible Nutrition's and Annette Dickinson's ("Plaintiffs") Opposition to Hartford's Motion for Summary Judgment.

## I. INTRODUCTION

Hartford demonstrated in its opening brief on its motion for summary judgment that injury to ConsumerLab's reputation was the natural and probable consequence of Plaintiffs' actions, reasonably foreseeable by them or a reasonable person in their position, making that injury "expected" under D.C. law and excluded under Hartford's Policy. Furthermore, Hartford pointed out, it was legally impossible for ConsumerLab to state a claim against Plaintiffs for defamation or disparagement without alleging *intent* to injure, because the factual circumstances

alleged in the ConsumerLab complaint gave rise to at least three absolute privileges under New York law, which could only be precluded by alleging (and proving) that the proceeding at issue was initiated by Plaintiffs as sham or a pretext in order to defame ConsumerLab.

Apparently unable to refute these arguments in their opposition, Plaintiffs studiously ignore them. Most remarkably, Plaintiffs' opposition is devoid of any citation or discussion of New York law on the absolute privileges that required ConsumerLab to allege intent in its complaint. Instead, the Plaintiffs continue the tack begun in their own cross-motion opening brief of attempting to "change the subject," by mischaracterizing the law, mischaracterizing Hartford's Policy, and accusing Hartford of taking positions it does not take.

Although these cross-motions can be decided on the first ground advocated by Hartford—that the allegations of the Underlying Complaint make clear that injury to reputation was the natural and probable consequence of Plaintiffs' actions—Plaintiffs' failure to confront the argument that, even under cases relied upon by Plaintiffs, it was legally impossible for ConsumerLab to recover from Plaintiffs without alleging intent to injure leaves no doubt that summary judgment should be granted to Hartford. Plaintiffs' multiple attempts at misdirection cannot change that conclusion.

## II. ARGUMENT

### A. <u>The Underlying Complaint Alleges Only a Non-Covered Tort</u>

Plaintiffs lay heavy stress on ConsumerLab's allegations that the Plaintiffs' derogatory statements were made with "reckless disregard for their falsity," "without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties," and "in a grossly irresponsible manner." Memorandum of Points and Authority in Opposition to Defendant's Motion for Summary Judgment ("Plaintiffs' Oppos. Br.") at 8. They

claim that Hartford ignores these allegations and that they created the potential for ConsumerLab to recover on a basis covered by Hartford's Policy.

Plaintiffs' argument seems to be that the mere mention of certain words in an underlying complaint establishes an insurer's duty to defend, regardless of their import for the actual claims alleged against the insured. Countless cases reject that proposition. Instead, if the facts alleged in the underlying complaint could give rise to liability only on a non-covered basis, the insurer has no duty to defend, even if the underlying complaint appends legally insignificant words that, under *different* facts, might have given rise to covered liability. *See American Cont'l Ins. Co. v. Pooya*, 666 A.2d 1193, 1197 (D.C. 1995) ("it is appropriate to examine the complaint for all *plausible* claims encompassed within the complaint and to ascertain whether the allegations of the complaint state a cause of action within the policy coverage") (emphasis added); *Devin v. United Services Auto. Assn.*, 6 Cal. App. 4th 1149, 1157, 8 Cal. Rptr. 2d 263, 268 (1992) ("Where there is no potential for the third party to recover on a covered claim, there is no duty to defend."); *Quan v. Truck Ins. Exchange*, 67 Cal. App. 4th 583, 595, 79 Cal. Rptr. 2d 134, 141 (1998) ("It is common to hear the argument that if the underlying complaint alleges negligence, there must be a duty to defend. This is not necessarily true."); *Saluto v. O'Leary*, 646 So. 2d 1225, 1226 (La. Ct. App. 1994); *Atlantic Mut. Ins. Co. v. Terk Tech. Corp.*, 309 A.D.2d 22, 763 N.Y.S.2d 56, 64 (2003) (irrelevant that recklessness alleged; facts alleged constituted intentional wrongdoing); *State Auto Ins. Cos. v. McClamroch*, 129 N.C. App. 214, 220-21, 497 S.E.2d 439, 443 (1998) ("An intent to injure is the only logical conclusion to be inferred from defendants' conduct. The addition of the negligence claim is not sufficient to invoke coverage, because the amended complaint merely alleges " 'but a different characterization of the same wilful act' "); *Agora Syndicate, Inc. v. Levin*, 977 F. Supp. 713, 715-16 (E.D. Pa. 1997) ("if the factual

allegations of the complaint sound in intentional tort, arbitrary use of the word 'negligence' will not trigger an insurer's duty to defend."). *See generally* 1 Allan D. Windt, *Insurance Claims & Disputes* § 4.2 at 272 & n.17 (4th ed. 2001) ("An allegation of negligence in the context of a cause of action alleging an intentional tort, which by definition cannot be committed in a negligent manner, is surplusage and cannot give rise to a duty to defend under a policy excluding intentional acts;" collecting cases).

In *Quan v. Truck Ins. Exchange*, the mere inclusion of a negligence claim was not determinative of whether a duty to defend existed. In that case, the negligence cause of action alleged that the " '[insured] 'negligently embraced and kissed' [claimant,] causing her bodily harm.' " 67 Cal. App. 4th at 598, 79 Cal. Rptr. 2d at 143 (brackets in original). The insureds argued that the causes of action for negligence in the underlying complaint " 'obviously' give rise to a duty to defend . . . .'" *Id.* The court noted that "[n]otwithstanding the assertion of both intentional and negligence-based theories of liability, the facts alleged to give rise to that liability are virtually the same for all" the causes of action. *Id.* at 593, 79 Cal. Rptr. 2d at 139. The court found that the allegation of a negligent kiss or embrace did not trigger coverage because a kiss or embrace has to be deliberate, and cannot, therefore, constitute an occurrence. The court reasoned:

> In this case, *there is no theory available on the facts expressed in the complaint* or made known to the insurer from other sources *under which the insured can be liable* for physical injuries caused by "accidentally" touching, kissing, embracing or having sex with the claimant, . . . *There is thus no potential liability* for "bodily injury" caused by an "occurrence" and no duty to defend.

*Id.* at 600-01, 79 Cal. Rptr. 2d at 144-45 (emphasis added). In other words, because it was legally impossible for the third party to recover on a negligence theory, the characterization of the insured's act as "negligent" was not sufficient to bring the allegations of the underlying

complaint within the policy's coverage.

Similarly, in *Saluto v. O'Leary*, the issue was whether a defamation claim fell within an exclusion for " 'bodily injury or property damage: (1) which is either expected or intended by an insured; or (2) to any person or property which is the result of willful and malicious acts of an insured.' " 646 So. 2d at 1226. While the underlying complaint in that case alleged that the defamation was intentional, the insureds filed affidavits, in which they denied making any statements with malice or with the intent to injure the third party's business or reputation. *Id.* The trial court found that the defamation claim was not covered by the policy. *Id.* at 1227. On appeal, appellants argued that "defamation can be accomplished by negligent acts which would then be covered by the policy." *Id.* The court found that under Louisiana law, it was legally impossible for a plaintiff to recover on a claim of negligent defamation. *Id.* Therefore, despite the insureds' testimony of negligent conduct, the court found that the policy excluded coverage. *Id.* *See also Eastern Shore Fin. Resources, Ltd. v. Donegal Mut. Ins. Co.*, 84 Md. App. 609, 619-20, 581 A.2d 452, 458 (1990) (finding that "there is nothing in Count III of the complaint before us even to suggest, much less to assert, that the striking, pushing, or shoving was done negligently or that the harm resulting from it was unexpected or unintended."); *Monter v. CNA Ins. Cos.*, 202 A.D.2d 405, 406-07, 608 N.Y.S.2d 692, 693 (1994) ("Here, the allegation that the plaintiffs' acts were committed 'in a manner constituting gross negligence which directly and proximately caused the [decedent's] death' was totally inconsistent with the allegation that an intentional, malicious assault was committed. No different or additional facts were pleaded. Nor does any reading of the plaintiffs' motion papers suggest that there is any evidentiary support for the conclusory characterization of the plaintiffs' conduct as grossly negligent or provide an explanation of how the intrinsically intentional acts of assault could be negligently performed.").

In short, it is the facts and claims that may actually lead to recovery that determine whether a duty to defend exists. Here, as Hartford has demonstrated, ConsumerLab could not recover absent allegation and proof that Plaintiffs initiated the CRN Petition illegitimately and as a pretext in order to harm ConsumerLab, because absent that allegation and proof, Plaintiffs' statements were absolutely privileged. Allegations of "reckless disregard" or "grossly irresponsible" could not support a recovery against Plaintiffs, and they should be disregarded for purposes of ascertaining whether Hartford had a duty to defend.[1]

**B. Plaintiffs Mischaracterize What Must Be Alleged to Preclude the Absolute Privileges to Liability for Defamation or Disparagement**

Without undertaking a serious analysis of their own, Plaintiffs charge that Hartford misstates what state of mind an underlying plaintiff must allege to preclude application of the *Noerr-Pennington* doctrine, the common law absolute privilege for statements made in connection with judicial or quasi-judicial proceedings, and Section 74 of the New York Civil Rights Law. Plaintiffs claim that "the 'sham' exception to the *Noerr-Pennington* doctrine is not triggered by an 'intent to injure,' rather its application depends on whether the ***statements*** at issue are 'objectively baseless.' " Plaintiffs' Oppos. Br. at 10 (emphasis added). And Plaintiffs claim that since the absolute privileges for statements in, and for fair reports of, judicial proceedings "could not be defeated by a showing of malice," "any allegations of intentional conduct contained in the ConsumerLab Complaint were irrelevant." *Id.*

Plaintiffs mischaracterize the sham exception to *Noerr-Pennington* doctrine. As their opposition brief elsewhere concedes, the sham exception to the doctrine does not apply to "statements" that are objectively baseless, but applies to all statements and conduct arising out of

[1] Plaintiffs' effort to discredit or distinguish the Tenth Circuit's holding in *Freightquote.com v. Hartford Cas. Ins. Co.*, 397 F.3d 888 (10th Cir. 2005), on whether Plaintiffs must be held to have "expected" reputational harm as the natural and probable consequence of their actions is similarly unjustified. *Freightquote* involved the same exclusion and the same standard for determining whether an insured "expected" injury.

*proceedings* that are objectively baseless. *See id.* (citing *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)). In other words, the constitutional protection for petitions to the government (and related statements) does not arise if *the petition itself* was submitted fraudulently or illegitimately to harm or oppress a third party, and not as a legitimate means to secure redress. *See Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*, 268 A.D.2d 101, 109, 707 N.Y.S.2d 647, 654 (2000) ("The 'sham' exception to the *Noerr-Pennington* doctrine comes into play when the party petitioning the government is not at all serious about the object of the petition, but does so merely to inconvenience its competitor, or to preclude or delay its competitor's access to governmental process."). While submitting a legitimate petition shields the petitioner's statements (both in the petition and related public commentary) with immunity from liability, submitting an illegitimate petition for the purpose of harming a third party, of course, gives rise to no such immunity. *See Concourse Nursing Home v. Engelstein*, 181 Misc. 2d 85, 90, 692 N.Y.S.2d 888, 892 (Sup. Ct. New York Co. 1999) (sham exception applies where "a defendant is using the petitioning process as a means of interference or harassment"), *aff'd*, 278 A.D.2d 35, 717 N.Y.S.2d 154 (2000).

More importantly, there is simply no doubt that ConsumerLab *alleged* that Plaintiffs acted with intent to injure here, in order to establish lack of privilege:

> The CRN Complaint was not intended as a truthful and legitimate complaint of claimed violations of the statutes and regulations for which the FTC is an enforcement agency but, instead, ***was a pretext to purposefully and maliciously initiate and conduct a widespread defamatory media campaign against [ConsumerLab].*** To whatever extent [Plaintiffs'] filing might otherwise have been subject to a qualified privilege, ***that privilege has been overcome, waived and nullified***.

Underlying Complaint ¶ 11 (emphasis added).[2] As Hartford has demonstrated, that allegation was not irrelevant, but rather was absolutely essential to permit ConsumerLab to state a claim. Defendant Hartford Casualty Insurance Company's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment ("Hartford Op. Br.") at 21-25. Because it was legally impossible for ConsumerLab to recover without alleging that intent, ConsumerLab's claims were clearly excluded from coverage.

Plaintiffs similarly mischaracterize Hartford's argument in connection with the common law absolute privilege and Section 74 of the New York Civil Rights Law. Hartford did not argue that an allegation of malice could overcome these absolute privileges—in fact, it cannot—but argued that an allegation that the quasi-judicial proceeding upon which the privileges were asserted was itself fraudulently instituted would preclude the privileges from arising in the first place. *See* Hartford Op. Br. at 26-27, 28-29. ConsumerLab's allegations that the CRN Petition was illegitimately instituted for the purpose of defaming ConsumerLab were therefore hardly "irrelevant," but indeed were necessary to preclude the operation of those privileges.

### C. <u>Plaintiffs Mischaracterize the Standard on the Duty to Defend</u>

Plaintiffs assert that Hartford's argument that it was legally impossible for ConsumerLab to recover without alleging expectation of inflicting injury is improper because it relies on potential defenses Plaintiffs may have asserted, and therefore looks beyond the allegations of the Underlying Complaint. That argument has no merit.

---

[2] Technically speaking, the relevant privilege was not a "qualified" privilege which could be "overcome" by a showing of malice and ill-will, but an "absolute" privilege, which could be avoided only by showing it never arose because the activity upon which it is claimed—here, a government petition—was illegitimate. *See Rosenberg v. MetLife, Inc.*, ___ N.Y.2d ___, ___ N.E.2d, ___, 2007 N.Y. LEXIS 504, at *8-9 (Mar. 29, 2007) ("Communications that are protected by a qualified privilege are not actionable unless a plaintiff can demonstrate that the declarant made the statement with malice. . . . In contrast, an absolute privilege immunizes a communicant from liability in a defamation action. The absolute privilege generally is reserved for communications made by individuals participating in a public function, such as executive, legislative, judicial or quasi-judicial proceedings.").

Hartford's argument seeks only to determine what claims were plausible under New York law (which controlled the legal determination of those claims) in order to ascertain whether they were covered under D.C. law (which controls the coverage issues here). *See Pooya*, 666 A.2d at 1197 ("it is appropriate to examine the complaint for all *plausible* claims encompassed within the complaint and to ascertain whether the allegations of the complaint state a cause of action within the policy coverage") (emphasis added). In rejoinder to Plaintiffs' assertion that it was "possible" that they could be held liable for committing the alleged offenses *without* expectation of inflicting injury, Hartford pointed out that under New York law that result was a legal impossibility: the factual circumstances alleged in the Underlying Complaint gave rise to at least three privileges, which ConsumerLab specifically sought to nullify through allegation of Plaintiffs' intent to injure, by initiating the CRN Petition as a pretext in order to defame ConsumerLab. Underlying Complaint ¶ 11. That argument rests solely on the allegations of the Underlying Complaint and applicable law. Indeed, Hartford submitted no additional pleadings from the ConsumerLab case to support its argument (unlike Plaintiffs).[3]

Plaintiffs continue to argue that what was legally impossible was nevertheless possible, such that this Court should ignore how New York law limited the possible claims ConsumerLab could and did assert. But to the extent Plaintiffs suggest that the issue of applicability of the absolute privileges was a factual issue that a jury could have simply "gotten wrong," they misstate New York law: The applicability of privileges is an issue of law. *See People ex rel. Bensky v. Warden of City Prison*, 258 N.Y. 55, 60, 179 N.E. 257, 259 (1932) ("The determination of the question of privilege is a question of law"); *Sickles v. Kling*, 60 A.D. 515,

[3] Plaintiffs suggest that Hartford's argument was somehow limited to the statements Plaintiffs made in the CRN Petition itself, and did not include related public commentary. Plaintiffs' Oppos. Br. at 5-6, 9. As Hartford's opening brief made clear, however, its argument was that *any* statements made by Plaintiffs, including "related public commentary," were alleged not to be privileged because ConsumerLab alleged that the initial petition itself was a pretext and illegitimate. Hartford Op. Br. at 1-2, 3, 17 & 29.

516, 69 N.Y.S. 944 (1901) ("Whether matter is privileged is a question of law."); *Andrews v. Gardiner*, 224 N.Y. 440, 121 N.E. 341 (1918); *55th Mgmt. Corp. v. Goldman*, 1 Misc. 3d 239, 241, 768 N.Y.S.2d 747, 748 (Sup. Ct. New York Co. 2003) ("[I]t is a pure question of law whether an absolute privilege applies and stands as a complete defense to a defamation claim."). Because the applicability of these privileges was an issue of law, New York law determines what was or was not legally possible for ConsumerLab to claim, not speculation as to what a jury might have done, and this Court is capable of ascertaining what that law is.

Plaintiffs seek further to mischaracterize Hartford's argument by claiming that it means "coverage would never exist for an insured where the underlying action is frivolous, attenuated or defensible." Plaintiffs' Oppos. Br. at 20. Plaintiffs also argue that Hartford's argument seeks to punish the Plaintiffs for raising the defenses they did assert. Neither argument is correct. Hartford's duty to defend extends to "suits" seeking "damages because of . . . 'personal and advertising injury' *to which this insurance applies.*" Hartford Policy at HART000051 (emphasis added). The determinant of the duty to defend is not whether the allegations are frivolous or defensible, but whether they allege injury "to which the insurance applies." *See Nikolai v. Farmers Alliance Mut. Ins. Co.*, 830 P.2d 1070, 1072-73 (Colo. Ct. App. 1991) ("Nor is there merit to plaintiff's further contention that he is entitled to a defense inasmuch as the claims asserted against him are fraudulent and groundless. If the insurer has no duty to defend claims which are cast entirely within the policy exclusions, an insured's protestation of innocence is irrelevant."). Hartford's argument does not punish Plaintiffs for raising defenses, but recognizes what claims ConsumerLab legally could assert based on the facts alleged. Plaintiffs may have had a meritorious defense, but it is nonetheless a defense for an uncovered claim.

### D. Plaintiffs Mischaracterize the Hartford Policy Language

Plaintiffs claim that Hartford misconstrues its own policy when it asserts that Exclusion 1.a.(2) excludes claims alleging that the insured expected to inflict reputational harm. Plaintiffs' Oppos. Br. at 11-12. In support of their position, Plaintiffs substitute what they claim to be the "relevant definition of 'personal and advertising injury' " into the exclusion, and argue, based upon the substituted language, that it is "the expectation of *actionable* defamation itself that is precluded." *Id.* at 12.

Plaintiffs' argument mischaracterizes the exclusion at issue. "Personal and advertising injury" is defined in the Policy not simply as the offenses listed, but "*injury* . . . arising out of one or more of the following offenses." Hartford Policy at HART 000069 (emphasis added). Properly substituting this definition into the exclusion, therefore, yields the following:

> 1. This insurance does not apply to
>
> a. Expected or Intended Injury
>
> * * *
>
> (2) [*injury* arising out of . . . oral, written or electronic publication of material that libels a person or organization or disparages a person's or organization's goods, products or services] arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting [*injury* arising out of [such oral, written or electronic publication]].

(Emphasis added). The focus is therefore not whether the insured expected "actionable defamation," but whether it expected to inflict the defamatory injury. Even a case Plaintiffs rely upon recognized this conclusion. *Fuisz v. Selective Ins. Co.*, 61 F.3d 238, 243 (4th Cir. 1995) ("coverage for injuries arising from defamation claims is excluded when the insured intends to

cause that injury").[4] Properly reading the exclusion, coupled with Plaintiffs' concession that New York law does not require intent as an element of defamation (Plaintiffs' Oppos. Br. at 16 n.1), utterly eviscerates Plaintiffs' argument that the exclusion results in "illusory" coverage.

### E. Plaintiffs Mischaracterize the Underlying Complaint

Finally, Plaintiffs attempt to suggest that the defamation count in the Underlying Complaint did not include allegations of intent to injure. Plaintiffs' Oppos. Br. at 7. From this, they argue that the allegations of that count fall within the coverage of Hartford's Policy. Plaintiffs omit to note, however, that the defamation count incorporated every factual allegation previously averred in the complaint. *See* Underlying Complaint ¶ 26 ("Plaintiff *repeats, reiterates and realleges each and every allegation contained in paragraphs '1' through '25'*, as if more fully set forth at length hereat.") (emphasis added). Those paragraphs, as Plaintiffs elsewhere admitted, are "replete with allegations of bad faith, malice and intent to injure." Plaintiffs' Opening Brief Exh. I at 7 n.4.

## III. CONCLUSION

Despite Plaintiffs' several attempts at deflection and distortion, at bottom the issue presented by these cross-motions is quite clear: Did the Underlying Complaint allege facts that, if proved, would give rise to a claim covered by Hartford's Policy? The answer is equally clear: no. As Hartford demonstrated, and as Plaintiffs utterly fail to rebut, the injury alleged by ConsumerLab was the natural and probable consequence of Plaintiffs' filing a petition with the FTC accusing ConsumerLab of running a shake-down scheme (among other things) and of their

[4] Even if this Court accepts the Plaintiffs' unwarranted characterization of the Policy exclusion, the allegations contained in the Underlying Complaint satisfy the exclusion. Throughout the Underlying Complaint, ConsumerLab alleged that the Plaintiffs acted "falsely, without privilege, and otherwise in an actionable manner." *See, e.g.*, Underlying Complaint ¶¶ 10-13 & 22.

public dissemination of those charges. Just as importantly, all of ConsumerLab's claims rested on demonstrating the inapplicability of absolute privileges, premised on the allegation that the CRN Petition was an illegitimate sham, initiated in order to conduct a defamatory media campaign. In short, it was legally impossible for Plaintiffs to be liable without proof of intent to injure, and the injury alleged, therefore, was clearly alleged to arise out of an offense committed by the insured "with the expectation of inflicting" it. The injury was excluded from coverage under Hartford's Policy, and Hartford had no duty to defend. Summary judgment should therefore be entered in Hartford's favor, declaring that conclusion and dismissing all of Plaintiffs' claims.

DATED April 10, 2007.

Respectfully submitted,

TROUTMAN SANDERS LLP

/s/ Patrick F. Hofer
Patrick F. Hofer, Bar No. 412665
Tracy P. Varghese, Bar No. 472805
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004
(202) 274-2950 (tel.)

*Counsel for Defendant Hartford Casualty Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of April 2007, I caused a copy of Defendant Hartford Casualty Insurance Company's Reply to Plaintiffs' Opposition to Hartford's Motion for Summary Judgment to be served upon all counsel of record via ECF and electronic mail as set forth below:

Janet K. Coleman
WHITNEY & BOGRIS, LLP
401 Washington Avenue
Towson, Maryland 21204
(410) 583-8000 (tel.)

/s/ Tracy P. Varghese
Tracy P. Varghese