## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUNCIL FOR RESPONSIBLE NUTRITION, and ANNETTE DICKINSON )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>HARTFORD CASUALTY INSURANCE COMPANY )<br>)<br>)<br>Defendant. )<br>_____ ) | Civil Action No.: 06-1590 (RMC) |

**MEMORANDUM OF POINTS AND AUTHORITY
IN RESPONSE TO HARTFORD'S OPPOSITION TO
<u>PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

I.   INTRODUCTION ............................................................................................... 1

II.  ARGUMENT ....................................................................................................... 3

    A.  The Allegations of the ConsumerLab Complaint Must be Broadly Construed in Favor of Coverage ........................................................................ 3

    B.  Hartford's Construction of its Policy Renders Coverage Illusory ....................... 6

    C.  Hartford's Own Analysis With Respect to the Tort of Defamation Demonstrates CRN and Dr. Dickinson's Entitlement to Coverage Under the Policy .......................................................................................................... 9

    D.  Despite Championing the Eight-Corners Approach, Hartford has Submitted Evidence Outside the Complaint for the Court's Review .................................. 12

III. CONCLUSION .................................................................................................... 14

Plaintiffs Council for Responsible Nutrition ("CRN") and Annette Dickinson, Ph.D. ("Dr. Dickinson"), by and through their undersigned counsel, submit this memorandum of points and authority in response to Defendant Hartford Casualty Insurance Company's ("Hartford") opposition to Plaintiffs' Motion for Partial Summary Judgment.

## I.      INTRODUCTION

In opposition to Plaintiffs' motion for partial summary judgment, Hartford offers a large dose of obfuscation.  This is ***not*** a summary judgment motion seeking a determination whether CRN or Dr. Dickinson defamed ConsumerLab.com ("ConsumerLab") in their Request for Investigation, press releases and publications on the CRN website.  CRN and Dr. Dickinson's liability was addressed by the underlying New York court and the parties to that action, and the result was a voluntary dismissal with prejudice and with no payment to ConsumerLab.  What ***is*** before this Court is a motion for partial summary judgment seeking a declaration that Hartford's Policy obligated it to defend CRN and Dr. Dickinson against an Underlying Complaint alleging that defamatory statements were made with "***reckless disregard*** of whether or not such statements were false," "in a ***grossly irresponsible*** manner," and "***without due consideration*** for the standards of information gathering and dissemination ordinarily followed by responsible parties."

Having conceded that these allegations satisfy the terms of the Policy's insuring agreement, Hartford relies solely on an exclusion that can only apply under Hartford's artificially narrow and distorted rendition of the facts and allegations of the Underlying Complaint.  As set forth in greater detail below, ConsumerLab's allegations against CRN and Dr. Dickinson are unquestionably covered as precisely the "unexpected" defamation that Hartford contends its

policy covers. Furthermore, Hartford's construction of exclusion 1.a.(2) would render coverage for intentional torts such as false arrest and defamation illusory.

Finally, while Hartford champions the "eight-corners" approach to the duty to defend through one side of its mouth, through the other it advocates a novel exception to the "eight corners" approach that no court has adopted: a one-way exception that can apply only to *defeat* defense protection, not to preserve it. As Hartford itself asserts, the "eight-corners" approach requires a court to look solely to the facts alleged in the Underlying Complaint when making its determination of coverage. This begs the question of why Hartford has spent so much time discussing the extrinsic factual evidence that it anticipates ConsumerLab would have introduced, in response to some of the defenses that CRN and Dr. Dickinson would assert, in response to the actual allegations in the Underlying Complaint. The answer, of course, is self-evident: Hartford was obligated to defend CRN and Dr. Dickinson based on the Underlying Complaint's allegations of reckless and negligent conduct. It can only escape that obligation by relying on extrinsic evidence that the plaintiff might have asserted against its insureds had the Underlying Action proceeded. Hartford argues in effect that the Court should look to the underlying plaintiff's extrinsic evidence to find the insureds liable for the torts charged in the Underlying Action, but at the same time close its eyes to the readily available documentary evidence that confirms the insureds' innocence of those charges. No court has ever adopted this corrupted version of the "factual exception" doctrine, a one-way exception that would work only for insurers. By placing the insurer squarely in the shoes of the very underlying plaintiff against whom the insured expects a defense, Hartford's position turns the duty to defend on its head.

Accordingly, for the reasons set forth below, and detailed in Plaintiffs' prior submissions, CRN and Dr. Dickinson respectfully request that this Court grant their Motion for Partial

Summary Judgment and require that Hartford honor the promise of "litigation insurance" that it made in the insuring agreement of its Policy.

## II.  ARGUMENT

**A.  The Allegations of the ConsumerLab Complaint Must be Broadly Construed in Favor of Coverage**

In opposition to Plaintiffs' motion for summary judgment, Hartford narrowly and impermissibly construes the allegations of the ConsumerLab Complaint by removing from its discussion all allegations of reckless and negligent conduct on the basis that these allegations are "irrelevant" as well as ignoring the allegations of defamatory conduct that stems from statements made outside the Request for Investigation filed with the FTC. Harford further seeks to rely upon, and focus on the legal defenses available to CRN and Dr. Dickinson as a basis to avoid coverage. Such construction stands in stark contrast with Hartford's obligation to defend its insured where, on its face, the allegations of the complaint fall within the scope of coverage provided by the Policy.

As an initial matter, Hartford's self-serving conclusion that the allegations of reckless conduct are irrelevant has no bearing on whether, at the outset, it had a duty to defend CRN and Dr. Dickinson in connection with these claims. As set forth in greater detail in Plaintiffs' prior submissions, it is well settled that "in order for an insurer to be obligated to defend an insured, the underlying tort suit need only allege action that is potentially covered by the policy, no matter how attenuated, frivolous, or illogical that allegation may be." Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am., 448 F.3d 252 (4th Cir. 2006); see also Sheets v. Brethren Mut. Ins. Co., 679 A.2d 540, (Md. 1996) (in order for an insurer to be obligated to defend an insured, the underlying tort suit need only allege action that is potentially covered by the policy, no matter how attenuated, frivolous, or illogical that allegation may be).

3

A review of those allegations that Hartford now suggests are "irrelevant" conclusively establishes that (1) CRN and Dr. Dickinson allegedly made statements regarding ConsumerLab; (2) those statements were alleged to have been published via the Request for Investigation, press releases, and publication on the CRN website; (3) the statements were alleged to have been made with reckless disregard for their falsity; and (4) those statements allegedly injured ConsumerLab. Indeed those allegations that Hartford has unilaterally deemed "irrelevant" conveniently alleged that CRN and Dr. Dickinson made statements with "***reckless disregard*** of whether or not such statements were false;" "in a ***grossly irresponsible*** manner;" and "***without due consideration*** for the standards of information gathering and dissemination ordinarily followed by responsible parties." (See Underlying Complaint attached as Exhibit A to Plaintiffs' Motion for Partial Summary Judgment at ¶¶ 14, 30, 39 and 40 (emphasis added).) It is beyond dispute that these allegations fall within the terms of the Hartford Policy and may not simply be disregarded because under Hartford's analysis of the hypothetical merits of the Underlying Action, they are "irrelevant." As is well settled under District of Columbia law, any doubt with respect to the duty to defend must be resolved in favor of the insured. Pooya, 666 A.2d at 1197. As set forth by the Court in Pooya:

> it is appropriate to examine the complaint for *all plausible claims* encompassed within the complaint and to ascertain whether the allegations of the complaint state a cause of action within the policy coverage and give fair notice to the insurer that the insured is being sued upon an occurrence which gives rise to a duty to defend under the terms of the policy.

Id. (citing Washington v. State Farm & Cas. Co., 629 A.2d 24, 25-26 (D.C. 1993))(emphasis added). Thus, the insurer must defend an entire claim if it appears that at least one count of a complaint potentially falls within the scope of policy coverage, even though the insurer might

4

later be absolved of a duty to indemnify on certain counts. Continental Cas. Co. v. Cole, 809 F.2d 891, 895 (D.C.Cir.1987).

Similarly, Hartford may not rely on CRN's and Dr. Dickinson's defenses to liability in the Underlying Action to foreclose the duty to defend.  The duty to defend is based upon the allegations of the Underlying Complaint, not an analysis of liability or the ultimate merits of the underlying allegations.  Indeed, the mere possibility that CRN's and Dr. Dickinson's alleged libelous statements were privileged does not negate Hartford's duty to defend. See Travelers Indem. Co. of Ill. V. United Food & Commercial Workers Int'l Union, 770 A.2d 978, 990 n.15 (D.C. 2001) (noting that possibility that insured's libel in pleadings was privileged did not negate the insurer's duty to defend where the complaint facially stated a claim for libel).  Even CRN's and Dr. Dickinson's privilege-related defenses do not change the simple fact that a jury could have found them liable for common law defamation. The Underlying Complaint clearly averred a cause of action for common law libel and slander by presenting the possibility that the insureds' could be liable for *additional* defamatory statements that were posted on the website and contained in the press release, which were separate and apart from the Request for Investigation. Accordingly, while Hartford chooses to ignore this potentiality, the ConsumerLab Complaint presented the prospect that CRN and Dr. Dickinson could have been held liable for this defamatory conduct.

Moreover, Hartford's contention that CRN and Dr. Dickinson could not be found liable absent an "intent to injure" is erroneous.  As an initial matter, the "sham" exception to the Noerr-Pennington doctrine is not triggered by an "intent to injure"; rather its application depends on whether the statements at issue are "objectively baseless." See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60 (1993) (sham exception

5

requires the plaintiff to first demonstrate that the lawsuit was objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits). Furthermore, as Hartford admits, the common law and statutory privileges invoked by CRN and Dr. Dickinson in the Underlying Action could not be defeated by a showing of malice, common law or otherwise and, thus, ConsumerLab's allegations of intentional conduct could not have had the result Hartford suggests. (See Hartford Brief at p.26-27, citing Joseph v. Larry Dorman, P.C., 576 N.Y.S.2d 588, 589 (N.Y. App. Div. 1991); Branca v. Mayesh, 476 N.Y.S.2d 187, 188 (N.Y. App. Div. 1984.) Accordingly, any allegations of intentional conduct contained in the ConsumerLab Complaint were irrelevant to whether any privilege would attach or whether CRN and Dr. Dickinson could be held liable for common law defamation.

Hartford cannot ignore the plain language contained in the Underlying Complaint. ConsumerLab sought damages based not only on allegations of intentional conduct, but on allegations of ***reckless*** and ***grossly irresponsible*** conduct as well. Thus, based on the allegations of the Underlying Complaint, Hartford was obligated to defend CRN and Dr. Dickinson, regardless of the eventual outcome or ultimate liability.

**B.     Hartford's Construction of its Policy Renders Coverage Illusory**

Although Hartford asserts that it is relieved of its duty to defend because coverage for "intended" conduct is barred by exclusion 1.a.(2), which bars coverage for "'personal and advertising injury' arising out of an offense committed by . . . the insured with the expectation of inflicting 'personal and advertising injury'" (see Hartford Policy attached to Plaintiffs' Motion for Partial Summary Judgment as Exhibit D), such an interpretation would render Hartford's promise to defend defamation claims illusory. The Hartford Policy defines "personal and advertising injury" as injury arising out of certain enumerated "offenses." These "offenses"

explicitly include "oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." (Id.)

Incredibly, Hartford argues that its exclusion is not an "intentional torts" exclusion, but rather excludes coverage where the insured "expects" to inflict injury and, thus, coverage is afforded for the enumerated *intentional* torts where the insured does not *expect* to inflict injury. This assertion presents a distinction without a difference and merely highlights the illusory coverage presented by such an interpretation. Indeed, under Hartford's interpretation any time reputational injury is expected, coverage is precluded. Of course, this interpretation leads to the inescapable conclusion that defamation is never covered under the Hartford policy. It is impossible for someone to make a derogatory statement, even if this statement is true, or believed to be true, without expecting it to affect the reputation of the entity about whom the statement is made.

This self-contradictory result would occur with each of the enumerated offenses Hartford details. To cite just one example, Hartford identifies the elements required to set forth a cause of action for false imprisonment as (1) an ***intent*** to confine [the plaintiff]; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. (See Harford Opposition at p. 10 citing Broughton v. State, 335 N.E. 2d 310, 314 (N.Y. 1975) (emphasis added).) The "injury" in a false imprisonment case is the confinement itself, just as the "injury" in a defamation case is the insured's disparaging statement. What Hartford fails to demonstrate – because it logically could not do so -- is how an insured could ***intend*** to confine someone without ***expecting*** to confine them. The exclusion can only make sense if it is read strictly as it was written, to exclude

7

expected "personal and advertising injury." That is, this defined term in the Policy equates (among other things) to the enumerated tort of false imprisonment and all its elements. The exclusion applies only if the insured expected not merely the inherently injurious confinement itself, but also that the confinement was unprivileged and unconsented.[1] Similarly, the exclusion makes no sense in the context of defamation torts unless it is confined to a true "moral hazard": an insured who knowingly makes false and unprivileged statements, expecting to commit the defined "personal and advertising injury" offense of libel or slander, and hoping to escape any personal financial consequences because of his insurance policy.

As detailed in Plaintiffs' Memorandum of Points and Authority in support of their motion for summary judgment, a number of courts have rejected similar attempts to use an "intentional acts" exclusion to effectively eviscerate promised coverage for "intentional torts." See Lineberry v. State Farm Fire & Casualty Co., 885 F. Supp. 1095 (M.D.Tenn.1995) (finding that a policy expressly that covered injuries resulting from invasion of the right of privacy, an inherently intentional tort, but excluding injuries which were intended or expected to be illusory); Lincoln Nat'l Health & Casualty Ins. Co. v. Brown, 782 F. Supp. 110 (M.D.Ga.1992). As succinctly stated by the Brown court:

> [T]here is an inconsistency in the policy. The policy defines 'personal injury' to mean not only 'bodily injury' but also 'false arrest,' 'malicious prosecution,' and 'assault and battery.' When this definition is read with the provision that only unintentional and unexpected 'personal injury' is covered, then the policy only applies to unintentional false arrest, unintentional malicious

---

[1] Hartford's analysis similarly fails for the "personal and advertising injury" offense of wrongful entry or eviction. An insured cannot wrongfully evict another "unexpectedly," when to support a claim for wrongful entry or eviction, the plaintiff must demonstrate that (1) he or she had peaceable possession; and (2) the insured employed unreasonable force in the dispossession. (See Hartford Opposition at p. 11, citing 1 Harper & James § 3.15 at 388-89.) The "injury" of dispossession is inherent in the offense and always expected. The grant of coverage for this offense can only be preserved if the exclusion is read as written, to apply only to insureds who knowingly commit the tort of wrongful eviction by employing "unreasonable means . . . to effect an eviction," see 1 Harper & James § 3.15 at 387-88.

8

>prosecution, and unintentional assault and battery. <u>This is complete nonsense</u>.

Id. at 112-13 (emphasis added).

At best for Hartford, any number of interpretations can result from a reading of exclusion 1.a.(2) of the Hartford Policy. Where an ambiguity exists, it must be construed in favor of the insured and a finding of coverage. See <u>Continental Cas. Co. v. Beelar</u>, 405 F.2d 377 (D.C. Cir. 1968) (ambiguities in insurance contracts are resolved favorably to the insured; if there are a number of reasonable readings of a policy provision, the insured is entitled to the one favoring coverage); <u>Loeffler v. Boston Ins. Co.</u>, 120 A.2d 691 (D.C. App. 1956) (it is the duty of insurer to spell out in plainest terms any exclusionary or delimiting policy provisions; all ambiguities must be resolved against the insurer). Hartford's interpretation of exclusion 1.a.(2) produces an absurd and commercially deceptive result; the only reasonable interpretation is to confine the exclusion to true moral hazards. Accordingly, Plaintiffs respectfully request this Court grant summary judgment in favor of the insureds and coverage under the Policy.

C.  **Hartford's Own Analysis With Respect to the Tort of Defamation Demonstrates CRN and Dr. Dickinson's Entitlement to Coverage Under the Policy**

Perhaps recognizing that its interpretation all but eradicates coverage for a number of enumerated offenses, Hartford provides the Court with a treatise on how each of these intentional torts can be committed without expecting injury. This discussion does nothing more than demonstrate CRN's and Dr. Dickinson's entitlement to coverage under the Policy. As an initial matter, Hartford's discussion with respect to defamation misconstrues the term "malice" as used in the defamation context. Malice, as commonly understood in defamation, does not equate to an "intent" to do harm. Rather, malice and, more specifically, "actual malice," is a term of art that potentially includes, as a matter of law, "<u>reckless disregard</u> of whether [a statement] was false or

9

not."  New York Times v. Sullivan, 376 U.S. 254, 280 (1964) (emphasis added).  Thus, Hartford is correct that intent is simply not an essential element of defamation.  This is precisely the reason why CRN and Dr. Dickinson could have been found liable *without* a finding of intentional conduct.

Indeed, Hartford goes so far as to admit that a party may negligently defame another, that is, that a party, believing its statements to be true, may inadvertently and recklessly make false statements that defame another.  ***This is precisely what was alleged here***.  CRN and Dr. Dickinson, in good faith and believing their statements to be true, were alleged to have defamed ConsumerLab.  ConsumerLab alleges that these defamatory statements were made with "***reckless disregard*** of whether or not such statements were false," "in a ***grossly irresponsible*** manner," and "***without due consideration*** for the standards of information gathering and dissemination ordinarily followed by responsible parties." (See Exhibit A at ¶¶ 14, 30, 39, 40) (emphasis added).  The simple fact that the Complaint contained allegations of intentional conduct or was frivolous has absolutely no bearing on Hartford's duty to defend.  As set forth in great detail in Plaintiffs' prior submissions, the Am. Continental v. Pooya, 666 A.2d 1193, 1197 (D.C. 1995) and Fuisz v. Selective Ins. Co. of Am., 61 F.3d 238 (4th Cir. 1995) cases provide sound and relevant guidance in this case.

In particular, in Fuisz, the underlying complaint alleged that Fuisz "'embarked on a scheme and plan to injure the plaintiffs by publicly disseminating false accusations designed to tarnish their good name and reputation in the business community.'"  Id. at 240.  Each of the four counts pled in this complaint expressly alleged that Fuisz "knew each of the statements were false, *or* published the statements with ***reckless disregard*** as to whether they were true or false."

10

Id. at 241 (emphasis added). In analyzing the intentional act exclusion's applicability to the claims, the Fuisz court found:

> Coverage for injuries arising from defamation claims is excluded when the insured intends to cause that injury. Accordingly, if the Terex complaint *only* permits Terex to recover upon proof that Fuisz specifically intended to cause the company injury, then Selective has no duty to defend Fuisz.

Id.

Thus, the Court found that Selective's position hinged on "whether [the complaint] alleges only causes of action based on common-law malice or whether the complaint also alleges causes of action based on actual malice." Id. The court further noted that "although not as prevalent as the allegations of common-law malice, Terex also repeatedly alleges throughout the complaint that 'Fuisz knew his statements were false or *failed to take the proper steps to ascertain their accuracy* and instead published the statements *with reckless disregard as to whether they were true or false.*'" Id. at 244.

Accordingly, the Fuisz court concluded that, notwithstanding the repeated allegations of willful and intentional actions, because Terex alleged that Fuisz acted with "actual malice," the intentional acts exclusion was not triggered and Selective was bound to defend the underlying action. Fuisz, 61 F.3d at 244-45.

The Fuisz court also noted that despite the fact it was not specifically pled, there was a possibility that Terex could have recovered under a theory of negligent defamation. Id. at 244, n. 3 (citing Washington, 629 A.2d at 27, n. 8 (cause of action for negligent defamation recognized in the District of Columbia) and Signal Constr. Corp. v. Standbury, 586 A.2d 1204, 1208 (D.C. 1991) (noting that "there are very few discernable differences between Virginia and District of Columbia defamation law."). Thus, because the Terex complaint stated a cause of action that

11

potentially could result in liability based on a less culpable state of mind than specific intent, Selective failed to satisfy its burden of showing that the intentional acts exclusion eliminated its duty to defend Fuisz in connection with the underlying action.  <u>Id.</u> at 245.

Such is the case here.  The ConsumerLab Complaint unquestionably alleged that CRN and Dr. Dickinson acted with a reckless, or "covered," state of mind.  The simple fact that the Complaint contained allegations of intentional conduct does not eradicate the possibility that CRN and Dr. Dickinson acted in good faith and without the subjective intent that Hartford claims precludes coverage under the Policy.

**D.     Despite Championing the Eight-Corners Approach, Hartford has Submitted Evidence Outside the Complaint for the Court's Review**

In opposition to Plaintiffs' motion for partial summary judgment, Hartford avers that the stringent "eight-corners rule" applied by the District of Columbia applies.  Indeed, Hartford spends three and a half pages discussing the "eight-corners" rule and its application to this case.  In doing so, Hartford espouses that, under the "eight-corners" rule, "the duty to defend depends only upon the facts as alleged to be, so that the insurers obligations should be measured by comparing the policy it issued with the complaint filed in the underlying case." (<u>See</u> Harford Opposition at p. 14 citing <u>Travelers Indem. Co.</u>, 770 A.2d at 987.)  This proclamation stands in sharp contrast to the many pages Hartford has consumed attempting to avoid its duty to defend on the basis of legal arguments about the ultimate hypothetical liability of its insured.  If the Court is to look simply to the facts as alleged in the Underlying Complaint, it would undoubtedly note that it averred that CRN and Dr. Dickinson acted with "***reckless disregard*** of whether or not such statements were false," "in a ***grossly irresponsible*** manner," and "***without due consideration*** for the standards of information gathering and dissemination ordinarily followed by responsible parties." (<u>See</u> Exhibit A at ¶¶ 14, 30, 39, 40) (emphasis added).)  Thus, by

Hartford's very own standard, a duty to defend exists and its attempts to cloud the issues with lengthy discussions of the liability that might have attached (but ultimately did not attach) to CRN and Dr. Dickinson in the Underlying Action must be ignored.

Moreover, after championing the rigid and inflexible nature of the "eight-corners" doctrine, Hartford then provides this Court with *extrinsic evidence* in the form of a press release issued by ConsumerLab designed to demonstrate that ConsumerLab still feels slighted by CRN's and Dr. Dickinson's conduct in the Underlying Action. Not only does this fly in the face of the "eight-corners" doctrine that Hartford champions, but no recognized exception to that doctrine would afford any relevance to extrinsic evidence of a former plaintiff's self-serving factual assertions to determine whether Hartford had a duty to defend CRN and Dr. Dickinson in the Underlying Action. Indeed, a review of the material submitted by Hartford reveals it as little more than a post-dismissal smear campaign against CRN. It is unclear how this material is intended to assist the Court in its determination of Hartford's duty to defend an Underlying Action that was already over before these smears were published.

At bottom, this case is quite simple. CRN and Dr. Dickinson made a number of statements about ConsumerLab that they, in good faith, believed to be true and in the public interest. ConsumerLab took umbrage with CRN and Dr. Dickinson's statements and filed what Hartford itself characterizes as a frivolous complaint that alleged intentional as well as reckless and negligent conduct. . The majority of ConsumerLab's claims were dismissed by the Underlying Court and the remaining claim, for defamation, has now been voluntarily dismissed by ConsumerLab with prejudice and with no payment by CRN or Dr. Dickinson to ConsumerLab. Nothing in this chain of events removed the allegations of reckless conduct from the complaint nor altered the simple fact that, based on the allegations of the Complaint, a jury

13

could have found CRN and Dr. Dickinson liable for negligently and recklessly defaming ConsumerLab. Accordingly, Plaintiffs CRN and Dr. Dickinson respectfully request that this Court grant their Motion for Partial Summary Judgment and find that, as a matter of law, Hartford's policy with CRN obligated it to provide coverage for the defense of this action.

### III. CONCLUSION

Hartford has left a nonprofit association and its former employee to fend for themselves against a lawsuit that ultimately was dropped without payment – but that nonetheless cost hundreds of thousands of dollars to defend. It is precisely to prevent this type of financial burden that insureds buy so-called "litigation insurance," i.e., standard general liability coverage with a duty to defend. Yet Hartford insists that the coverage for defamation lawsuits that it held out with one hand, in the insuring agreement of its Policy, was withdrawn with the other hand, in its exclusions. This position defies all commercially reasonable expectations, and it finds no support in the case law.

For the foregoing reasons and based on the case law cited herein, and previously cited to in Plaintiffs' prior submissions, it is respectfully requested that this Court deny Hartford's motion for summary judgment and grant partial summary judgment in favor of Plaintiffs, Council for Responsible Nutrition and Annette Dickinson, Ph.D., finding that Defendant Hartford breached its duty to defend the Plaintiffs in connection with the Underlying Action.

                            Respectfully submitted,

                            ____/s Janet K. Coleman_____
                            Janet K. Coleman, Bar No. 497902
                            WHITNEY & BOGRIS, LLP
                            401 Washington Avenue
                            Towson, Maryland 21204
                            (410) 583-8000 (tel.)
                            *Counsel for Plaintiffs Council for Responsible Nutrition and Annette Dickinson*