## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **COUNCIL FOR RESPONSIBLE NUTRITION**, *et al.*, | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 06-1590 (RMC)** |
| **HARTFORD CASUALTY INSURANCE CO.,** | ) ) ) | |
| **Defendant.** | ) ) ) | |

## <u>MEMORANDUM OPINION</u>

When an insured is sued for negligent, reckless, and malicious defamation, does the insurer have a duty to defend where the insurance policy excludes coverage for injuries "expected" by the insured? The answer to this question is "yes" under District of Columbia law. Council for Responsible Nutrition and its President, Annette Dickinson, (collectively "CRN") seek insurance coverage under a policy issued by Hartford Casualty Insurance Company ("Hartford"). The parties have filed cross motions for summary judgment on the issue of whether Hartford had a duty to defend CRN in an underlying defamation lawsuit. Because the underlying complaint stated a claim covered by the policy and because the exclusion clause is construed narrowly, Hartford had a duty to defend. Accordingly, CRN's motion for summary judgment will be granted, and Hartford's motion for summary judgment will be denied.

## I. FACTUAL BACKGROUND

Council For Responsible Nutrition is a trade association that represents ingredient suppliers and manufacturers in the dietary supplement industry. Def.'s Statement of Material Facts

("Def.'s Facts") ¶ 1.  Both the Council and Ms. Dickinson, as its President, were insured under a

commercial business liability policy number 42 SBA FT4964 (the "Policy"), issued by Hartford.

Compl. ¶¶ 7-8.  The Policy covers "personal and advertising injury" as follows:

> We will pay on behalf of the Insured those sums that the insured
> becomes legally obligated to pay as damages because of . . . "personal
> and advertising injury" to which this insurance applies.  We will have
> the right and duty to defend the insured against any "suit" seeking
> damages.  However, we will have no duty to defend the insured
> against any "suit" . . . to which this insurance does not apply.

Def.'s Ex. 1, Policy ¶ 1.  The Policy defines "personal and advertising injury" as:

> injury, including consequential "bodily injury" arising out of one or
> more of the following offenses:
>
>  . . .
>
> d.  Oral, written or electronic publication of material that slanders or
> libels a person or organization or disparages a person's or
> organization's goods, products or services.

Id., Policy ¶ 15(d).  However, the Policy also excludes coverage for "expected" injury:

> This insurance does not apply to:
>
> a.  Expected or Intended Injury
>
> . . .
>
> (2) "Personal and advertising injury" arising out of an offense
> committed by, at the direction of or with the consent or acquiescence
> of the insured *with the expectation of inflicting "personal and
> advertising injury*."

Id., Policy § B ¶ 1(a)(2) (emphasis added).

CRN brought this suit against Hartford seeking insurance coverage for a suit brought

against CRN by ConsumerLab in New York state court (the "Underlying Complaint").  The

Underlying Complaint, captioned *ConsumerLab.com LLC v. Council for Responsible Nutrition*, No. 05-04998 (N.Y. Sup. Ct. Westchester Co.), was filed on April 5, 2005. *See* Def.'s Ex. 2, Underlying Compl. The Underlying Complaint alleged that on January 12, 2005, CRN filed a request for investigation with the Federal Trade Commission ("FTC") alleging that ConsumerLab engaged in unfair business practices and requesting that the FTC investigate and bring an enforcement action against ConsumerLab. Underlying Compl. ¶ 15. CRN's request for investigation alleged that ConsumerLab engaged in a deceptive scheme whereby ConsumerLab required manufacturers of nutritional supplements to pay a fee to obtain favorable publicity for positive test results or to avoid unfavorable publicity for negative test results. *Id*. Manufacturers who refused to pay the fee allegedly received no publicity if their tests were positive, and ConsumerLab excluded their products from the list of "passing" products. *Id*. ConsumerLab alleged that CRN posted the request for investigation as well as a defamatory press release on its website and that CRN provided this information to various media outlets and an article referring to the request for investigation was published in the Wall Street Journal. *Id*. ¶ 9, 12, 16-17.

The Underlying Complaint alleged eight causes of action including defamation, injurious falsehoods, trade libel, infliction of intentional harm, unfair trade practices, unfair competition, tortious interference with contracts, and tortious interference with prospective contractual relationships. Def.'s Ex. 2, Underlying Compl. On May 16, 2006, the New York Supreme Court dismissed for failure to state a claim all but one of the counts; the only count remaining was the count alleging defamation. Compl. ¶ 23-24. The New York court noted that the Underlying Complaint alleged that CRN made false statements about ConsumerLab with "actual malice." *Id*. ¶ 24. Subsequently, the Underlying Complaint was settled and dismissed. There was

no finding or admission of liability, and there was no settlement payment by CRN.  Pl.'s Mem. of P. & A. in Supp. of Mot. for Partial Summ. J. ("Pl.'s Mem.") at 1.

CRN tendered the Underlying Complaint to Hartford and requested coverage under its Policy.  *Id*. ¶ 30.  Hartford disclaimed any duty to defend or indemnify pursuant to the exclusion for advertising injury "expected" by the insured.  *Id*. ¶¶ 31-32.  In this suit, CRN alleges that Hartford breached its duty of good faith and fair dealing by refusing to defend CRN with regard to the Underlying Complaint.  The suit raises the issues of whether Hartford had a duty to defend, whether Hartford breached its duty of good faith and fair dealing by refusing to defend, and what damages CRN is entitled to recover for this alleged breach.  The cross motions for summary judgment currently before the Court address only the first issue, whether Hartford had a duty to defend CRN in the underlying case.

## II.  STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable

-4-

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. ANALYSIS

### A. Choice of Law

Federal courts sitting in diversity must apply the conflicts of law rules of the state in which they sit. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 491 (1941). Thus, to determine what law to apply, this Court must apply the District of Columbia's choice of law analysis. *YWCA v. Allstate Ins. Co.*, 275 F.3d 1145, 1150 (D.C. Cir. 2002).

To determine which jurisdiction's law applies in a contract case, the District of Columbia applies the substantial interest test, set forth in the Restatement (Second) of Conflict of Laws § 188. *Ideal Elec. Sec. Co., Inc. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997); *see also Jaffe v. Pallotta Teamworks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004). Under this test, courts balance the competing interests of the two jurisdictions and apply the law of the jurisdiction with the more significant interest. *Id.* Courts consider (1) the place of contracting; (2) the place where the contract was negotiated; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business

of the parties. Restatement (Second) of Conflict of Laws § 188 (1971). In insurance cases, where the insured is a D.C. citizen and the underlying events took place in the District of Columbia, courts have held that D.C. law applies. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Richardson*, 270 F.3d 948, 953 (D.C. Cir. 2001); *Potomac Elec. Power Co., v. Cal. Union Ins. Co.*, 777 F. Supp. 968, 973 (D.D.C. 1991).

Here, the parties agree that District of Columbia law applies because one of the insureds, Council for Responsible Nutrition, is a citizen of the District of Columbia and the underlying events took place here. Specifically, Council for Responsible Nutrition is a corporation which was formed in, and has its principal place of business in, the District of Columbia. Compl. ¶ 2.[1] In addition, the allegedly defamatory actions taken by CRN — the request for an FTC investigation and the posting of information on CRN's website — occurred in Washington, D.C.

B.  Duty to Defend

An insurer's duty to defend is independent of its duty to indemnify. *Sherman v. Ambassador Ins. Co.*, 670 F.2d 251, 258-59 (D.C. Cir. 1981). The duty to defend is broad, requiring the defense of all claims even if only one potentially falls within the terms of the policy. *Continental Cas. Co. v. Cole*, 809 F.2d 891, 895 (D.C. Cir. 1987); *Commonwealth Lloyds Ins. Co. v. Marshall, Neil & Pauley, Inc.*, 32 F. Supp. 2d 14, 18 (D.D.C. 1998). The duty to defend is determined based on the allegations against the insured. *Continental*, 809 F.2d at 896 (citing *Boyle v. Nat'l Cas. Co.*, 84 A.2d 614, 615-16 (D.C. 1951)). If it is possible that the complaint's allegations fall within the coverage of the policy, the insurance company must defend, even if it is ultimately relieved of any

---

[1] Ms. Dickinson is a citizen and resident of Maryland or Minnesota, Compl. ¶ 3, and Hartford is incorporated in Indiana with its principal place of business in Connecticut. *Id*. ¶ 4.

duty to indemnify. *Sherman*, 670 F.2d at 259. "It is appropriate to examine the complaint for all plausible claims encompassed within the complaint and to ascertain whether the allegations of the complaint state a cause of action within the policy coverage and give fair notice to the insurer that the insured is being sued upon an occurrence which gives rise to a duty to defend under the terms of the policy." *Am. Cont'l Ins. Co. v. Pooya*, 666 A.2d 1193, 1197 (D.C. 1995).

To determine whether there is a duty to defend, courts take the "eight corners" approach — courts compare the facts as they are alleged in the underlying complaint with the insurer's obligation to defend as set forth in the insurance policy. *Interstate Fire & Cas. Co. v 1218 Wisconsin, Inc.*, 136 F.3d 830, 833 (D.C. Cir. 1998); *Travelers Indem. Co. v. United Food & Comm. Workers Int'l Union*, 770 A.2d 978, 986-87 (D.C. 2001). "The obligation to defend is not affected by facts ascertained before the suit or developed in the process of litigation or by the ultimate outcome of the suit." *Travelers*, 770 A.2d at 987 (internal quotations omitted).

Any doubt regarding whether the allegations in a complaint come within the insurance policy must be resolved in favor of the insured, and any ambiguities regarding policy coverage must be construed in favor of the insured. *Continental*, 809 F.2d at 896; *Travelers*, 770 A.2d at 986-87.

> Since insurance contracts are written exclusively by insurers, courts generally interpret any ambiguous provisions in a manner consistent with the reasonable expectations of the purchaser of the policy. However, when such contracts are clear and unambiguous, they will be enforced by the courts as written, so long as they do not violate a statute or public policy.

*Travelers*, 770 A.2d at 986.

The insured bears the burden of showing that the underlying complaint comes within the policy's grant of coverage, and the insurer bears the burden of showing that an exclusion under

the policy applies. *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 969 (D.C. 1999). Hartford concedes that the Underlying Complaint alleges injury covered by the Policy since it covers "personal and advertising injury" — injury which arises out of publication of material that slanders or libels an organization or disparages its services. Def.'s Mem. at 2; *see* Def.'s Ex. 1, Policy ¶ 15(d). The dispute here is whether the "expected" injury exclusion applies — whether the offenses as alleged in the Underlying Complaint were committed by CRN "with the expectation of inflicting 'personal and advertising injury.'" *See* Def.'s Ex. 1, Policy § B ¶ 1(a)(2).

Hartford argues that the Underlying Complaint is replete with allegations of intentional misconduct, and thus the exclusion for injuries "expected" by the insured applies. *See, e.g.*, Underlying Compl. ¶ 10 (CRN's filing of the FTC complaint was "intended" to defame); ¶ 11 (CRN "purposefully" initiated and conducted a defamatory media campaign); ¶ 13 (the "purpose" of CRN's media campaign was to silence ConsumerLab); & ¶ 22 (CRN's "purpose" was to "wreak vengeance upon" ConsumerLab).

It is not disputed that the Underlying Complaint contains allegations of intentional conduct. Even so, to obtain insurance coverage CRN does not have to show that *every* allegation in the Underlying Complaint came within the terms of the Policy. The Court must "examine the complaint for all plausible claims," *Pooya*, 666 A.2d at 1197, and determine whether *any* of the allegations would potentially be covered, *Continental*, 809 F.2d at 895. If it is possible that even one of the allegations of the Underlying Complaint is covered by the Policy, Hartford had a duty to defend. *Id.*; *Sherman*, 670 F.2d at 259. While the Underlying Complaint alleged that CRN acted intentionally, it also alleged that CRN acted negligently: "Defendants published their defamatory statements without due consideration for the standards of information gathering and dissemination

ordinarily followed by responsible parties." Underlying Compl. ¶¶ 31 & 40.  Further, it alleged that

CRN acted recklessly:  "The defamatory statements were made by Defendants with knowledge of

the falsity of such statements or with reckless disregard of whether or not such statements were

false."  Underlying Compl. ¶ 14.  The counts for defamation and trade libel alleged that CRN acted

with "actual malice."  *Id*. ¶¶ 29 &  49.[2]  Because "actual malice" in a defamation case can be

established by showing that a defamatory statement was made with knowledge that it was false or

with "reckless disregard" to the truth, *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964),

the allegations of "actual malice" also constituted allegations of reckless conduct.

        New York law applies to the interpretation of the Underlying Complaint in this case,

as the Underlying Complaint was filed in state court in New York.  *See Travelers Indem. Co.*, 770

A.2d at 987 n.9 (the court looked to the law of the state where the underlying action was filed in

order to determine the nature of the legal claims that the underlying complaint alleged).  To

demonstrate a cause of action for defamation under New York law, a plaintiff must show that the

defendant made a false statement, published without privilege or authorization to a third party, by

"at least a negligence standard of fault," and the statement either caused special damages or

constituted negligence per se.  *Rapp v. Robinson*, No. 115574/06, 2007 WL 1975001, at * 1 (N.Y.

Sup. Ct. July 6, 2007) (citing *Dillon v. City of New York*, 261 A.D.2d 34, 38 (N.Y. App. Div. 1st

Dept. 1999)); *cf. Washington v. State Farm & Cas. Co.*, 629 A.2d , 27 n.8 (D.C. 1973) (cause of

action for negligent defamation recognized in the District of Columbia).  Thus, under New York law,

defamation is actionable where it is intentional, reckless, or simply negligent.  Since the Underlying

---

        [2] In addition, the counts for defamation and injurious falsehood alleged that CRN in a
"grossly irresponsible" manner.  Underlying Compl. ¶¶ 30 & 39.

Complaint against CRN alleged negligent *and* reckless defamation and the Policy covered advertising injury, such as defamation, which was not "expected" by the insured, Hartford had a duty to defend.

The D.C. Court of Appeals found a duty to defend in a case similar to this one where the underlying complaint alleged defamation and the policy excluded coverage for expected or intended acts that caused injury.  In *Pooya*, 666 A.2d 1193, the court held that the insurance company breached its duty to defend when it disclaimed coverage for an underlying complaint that alleged libel and slander done maliciously, intentionally, and with reckless disregard as to the truth. The insurer had a duty to defend because the professional liability policy at issue covered "occurrences," defined as accidents, errors, and omissions "neither expected nor intended by the insured" which result in injuries and give rise to damages.  *Id*. at 1194.  The court emphasized that because relief could be granted on the complaint based on negligence or recklessness, the exclusion for expected or intentional conduct did not apply and the complaint was within the scope of the policy.  *Id.* at 1199.

In *Fuisz v. Selective Ins. Co. of Am.*, 61 F.3d 238 (4th Cir. 1995), the Fourth Circuit interpreted an insurance policy even more like the one at issue here.  The policy at issue in *Fuisz* expressly covered defamation but also excluded coverage for acts committed with intent to cause injury.  *Id*. at 240.  Where the underlying suit against the insured alleged defamation, committed with recklessness and actual malice, the court found that the insurer had a duty to defend.  *Id*. at 245.[3]

Hartford argues that injuries caused by CRN's allegedly defamatory statements were

_____

[3] The Fourth Circuit in *Fuisz* applied Virginia law. The laws of Virginia regarding the duty to defend and the interpretation of insurance contracts generally are the same as those in the District of Columbia.  *Compare Fuisz*, 61 F.3d at 244 n.3. *with Continental*, 666 A.2d at 1197-98.

the "natural and probable results" of the insured's actions and thus were not covered by the Policy. Hartford reasons that courts have determined that policies that cover "accidents" or "occurrences" do not cover injuries that "were the natural or probable result of the insured's actions reasonably foreseeable by him or a reasonably prudent man in his position." *Byrd v. Nationwide Mut. Ins. Co.*, 415 A.2d 807, 809 (D.C. 1980). Thus, for example, an insured who was convicted of second-degree murder was not entitled to insurance coverage when he was sued in a wrongful death action related to the same murder. *Travelers Indem. Co. v. Walburn*, 378 F. Supp. 860, 861-62 (D.D.C. 1974). The *Walburn* court held that because the insured intended or expected injury from his actions, the "occurrence" was not covered. *Id.* at 865-66; *accord Freightquote.com, Inc. v. Hartford Cas. Ins. Co.*, 397 F.3d 888, 893-94 (10th Cir. 2005) (insurer did not have a duty to defend a suit alleging tortious interference under the "advertising injury" provision of the insurance policy because the natural and probable consequence of the insured's actions was injury and the policy excluded coverage of expected injuries).

    *Byrd*, *Walburn*, and *Freightquote* are inapposite. In *Byrd* and *Walburn*, the courts construed insurance policies that covered "occurrences" or "accidents." In this case, the Policy provides offense-based coverage — it expressly covers "advertising injury." Offense-based coverage is triggered by the commission of the specified offense and does not require proof of an accidental occurrence. *Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605, 612 (5th Cir. 2001). While the policy in *Freightquote* was an offense-based policy that covered advertising injury, the underlying complaint in that case alleged tortious interference, an intentional tort. A claim for tortious interference cannot be based on negligent or reckless acts. Because the underlying complaint alleged intentional conduct and the insurance policy excluded coverage for intentional conduct, the insurer

-11-

had no duty to defend. *Id*. at 894. Here, by contrast, the Underlying Complaint alleged negligent, reckless, and intentional defamation. Because a plaintiff can recover for negligent and reckless defamation under New York law and the tort is not dependent upon intentional conduct, the Underlying Complaint stated an actionable claim based on negligent and reckless behavior that was not excluded under the Policy.

Hartford also argues that CRN had a legitimate privilege defense to the Underlying Complaint, and thus that the duty to defend did not apply.[4] The possibility of a successful defense, however, does not vitiate the duty to defend. The duty to defend is determined by examining the allegations of the complaint, *Pooya*, 666 A.2d at 1197, and it is not affected by facts ascertained before the suit or developed during litigation, nor is it affected by the outcome of the litigation. *Travelers*, 770 A.2d at 987. In *Travelers*, the court found that the duty to defend applied to a complaint alleging libel, even if the complaint was subject to a defense of privilege. "If the statements attributed to [the insured] are determined to be privileged and non-actionable — an issue

---

[4] Hartford asserts that CRN had a defense to the defamation claim in the Underlying Complaint based on privilege under the *Noerr-Pennington* doctrine, arising from *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). Under this doctrine, citizens who petition the government for governmental action cannot be prosecuted. *Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*, 707 N.Y.S.2d 647, 652 (N.Y. App. Div. 2d Dept. 2000). Thus, the doctrine provides a privilege defense for statements contained in requests for investigation like the one CRN filed with the FTC. The doctrine is subject to a "sham" exception, barring the privilege where the party who petitioned the government did so for the purpose of harassment. Hartford contends that ConsumerLab had to allege intent in order to avoid an anticipated privilege defense in the underlying suit. *See Alfred Weissman*, 707 N.Y.S.2d at 654. Hartford's argument is unavailing. Even if the Court were to go outside the "eight corners" of the documents, it is not clear that the privilege would have provided a complete defense. The Underlying Complaint alleged libel for statements posted on CRN's website and contained in a press release, not only for statements contained in the request for investigation filed with the FTC, and it is not clear that these other statements arose from objectively baseless proceedings.

we do not decide — [the] complaint for libel against [the insured] may be dismissed.  That possibility, however, does not negate [the insurer's] duty to defend [the insured] if the complaint against it makes out a facial claim for libel" within the terms of the policy.  *Id*. at 990 n.15.  In determining whether the duty to defend applies, the Court is limited to considering the "eight corners" of the Underlying Complaint and the Policy.

In conclusion, an examination of the "eight corners" of the Underlying Complaint and the Policy demonstrate that Hartford had a duty to defend CRN in the underlying suit.  The allegations of the Underlying Complaint included allegations of negligent and reckless defamation, actionable under New York law.  The Policy covered advertising injury (such as defamation) that was not "expected" by the insured, such as the negligent and reckless conduct alleged in the Underlying Complaint.

## IV.  CONCLUSION

For the foregoing reasons, CRN's motion for summary judgment on the duty to defend [Dkt. #13] will be granted, and Hartford's motion for summary judgment on the duty to defend [Dkt. #14] will be denied.  A memorializing order accompanies this Memorandum Opinion.

Date: July 12, 2007                           _____/s/_____
                                              ROSEMARY M. COLLYER
                                              United States District Judge