UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COUNCIL FOR RESPONSIBLE
NUTRITION and
ANNETTE DICKINSON,

        Plaintiffs,

        v.

HARTFORD CASUALTY INSURANCE
COMPANY,

        Defendant.

Case No.: 1:06-CV-01590-RMC

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DIRECT ENTRY OF JUDGMENT
ON PLAINTIFFS' CLAIM FOR DECLARATORY JUDGMENT
ON THE DUTY TO DEFEND,
OR, IN THE ALTERNATIVE, TO CERTIFY THE COURT'S ORDER GRANTING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b),
AND TO STAY TRIAL COURT PROCEEDINGS**

Patrick F. Hofer, Bar No. 412665
TROUTMAN SANDERS LLP
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004
(202) 274-2950 (tel.)
*Counsel for Defendant Hartford Casualty
Insurance Co.*

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 2

II. ARGUMENT ............................................................................................................... 3

    A.    The Court Should Direct Entry of Judgment with Respect to CRN's First Cause of Action Seeking a Declaratory Judgment on the Duty to Defend .......................... 3

        1.    The Standard for Entering Final Judgment Under Rule 54(b) .................. 3

            i.    Determination of "Finality" ............................................................ 3

            ii.    Determination of "No Just Reason for Delay" .............................. 6

        2.    The Court's Order Is "Final" as to a "Claim" and There Is No Just Reason for Delay of Entry of Judgment ................................................................. 6

    B.    The Court Should Certify its Order as Involving a Controlling Question of Law Appropriate for Interlocutory Review ................................................................. 7

        1.    The Factors for Certifying an Issue for Interlocutory Appeal Under 28 U.S.C. § 1292(b) .................................................................................... 7

        2.    There Is a Substantial Ground for Difference of Opinion Regarding Whether Hartford Had a Duty to Defend a Suit Alleging, Under New York Law, Defamation Arising out of a Government Petition and Related Public Statements ................................................................................................ 9

    C.    Proceedings in this Court Should Be Stayed ...................................................... 14

III. CONCLUSION ......................................................................................................... 14

## TABLE OF AUTHORITIES

**Federal Cases**

*Alcan Aluminum Corp. v. Carlsberg Fin. Corp.*, 689 F.2d 815 (9th Cir. 1982)...........................6

*American Guar. and Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605 (5th Cir. 2001) .........................13

*Clayman v. Goodman Props. Inc.*, 518 F.2d 1026 (D.C. Cir. 1973)...........................................14

*Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1 (1980)...............................................4, 6

*Freightquote.com, Inc., v. Hartford Cas. Ins. Co.,* 397 F.3d 888 (10th Cir. 2005) .....................12

*Fuisz v. Selective Ins. Co.*, 61 F.3d 238 (4th Cir. 1995)............................................................13

*Horn & Hardart Co. v. National Rail Passenger Corp.*, 843 F.2d 546 (D.C. Cir. 1988)..........5, 7

*Horn v. Transcon Lines, Inc.*, 898 F.2d 589 (7th Cir. 1990) ...................................................4, 5

*National Union Fire Ins. Co. v. City Savings, F.S.B.*, 28 F.3d 376 (3d Cir. 1994)......................5

*Neuberger Herman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 225 F.R.D. 171
    (D. Md. 2004)....................................................................................................................5, 6

*Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956)..............................................................4

*Taylor v. FDIC*, 132 F.3d 753 (D.C. Cir. 1997) ........................................................................4

*Tolson v. United States*, 732 F.2d 998 (D.C. Cir. 1984).........................................................4, 7

**State Cases**

*American Cont'l Ins. Co. v. Pooya*, 666 A.2d 1193 (D.C. 1995) ...............................................12

*Branca v. Mayesh*, 63 N.Y.2d 994, 483 N.Y.S.2d 1011, 473 N.E.2d 261 (1984), *aff'g for the
    reasons stated in* 101 A.D.2d 872, 476 N.Y.S.2d 187 (2d Dept. 1984)...........................10, 11

*Rapp v. Robinson*, No. 115574/06, 2007 N.Y. Misc. LEXIS 4773 (Sup. Ct. New York Co. July 6,
    2007)....................................................................................................................................10

**Federal Statutes**

28 U.S.C. § 1291 ........................................................................................................................7

28 U.S.C. § 1292(b)....................................................................................................................7

**Rules**

Fed. R. Civ. P. 54(b)...................................................................................................... 3

**Other Authorities**

10 Charles A. Wright, Arthur W. Miller & Mary Kay Kane, *Federal Prac. & Proc.: Civil* § 2659 (3d ed. 1998) ......................................................................................... 6

16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Prac. & Proc.: Jurisdiction* § 3930 (2d ed. 1996) ..................................................................... 8, 9

Restatement (Second) of Judgments § 33 (1982)......................................................... 5

Restatement (Second) of Torts § 558 ......................................................................... 10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COUNCIL FOR RESPONSIBLE
NUTRITION and
ANNETTE DICKINSON,

        Plaintiffs,

        v.

HARTFORD CASUALTY INSURANCE
COMPANY,

        Defendant.

Case No.: 1:06-CV-01590-RMC

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DIRECT ENTRY OF JUDGMENT
ON PLAINTIFFS' CLAIM FOR DECLARATORY JUDGMENT
ON THE DUTY TO DEFEND,
OR, IN THE ALTERNATIVE, TO CERTIFY THE COURT'S ORDER GRANTING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b),
AND TO STAY TRIAL COURT PROCEEDINGS**

Defendant Hartford Casualty Insurance Company ("Hartford"), by counsel, respectfully

submits this Memorandum of Points and Authorities in support of its motion to direct entry of

judgment with respect to the First Cause of Action of the Complaint, which seeks a declaratory

judgment with respect to Hartford's duty to defend, or, in the alternative, to certify the Court's

Order of July 12, 2007 ("Order") for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b).  In

brief, the standards for entering final judgment on the declaratory judgment claim or for

certification of the Order are met in this case, and permitting appellate review of the issues

decided in the Order on an interlocutory basis could save the Court and the parties substantial

time and expense in litigating other issues, which would be moot if the Court's resolution were reversed on appeal.

In the event the Court grants either motion, Hartford also seeks a stay of proceedings in this Court pending appellate review, as the advantage of potentially avoiding unnecessary litigation expense through early appeal of the issues decided by the Court in its Order would be realized only if proceedings here were held in abeyance.

## I.    INTRODUCTION

In their Complaint, Plaintiffs Council for Responsible Nutrition and its former president, Annette Dickinson ("CRN") asserted a claim, in their First Cause of Action, for declaratory judgment with respect to Hartford's alleged duty to defend the underlying action brought against CRN by Consumerlab.com (the "Underlying Action"). The allegations of the First Cause of Action are simply (1) that the allegations of the Underlying Action constituted a claim against CRN for "personal and advertising injury," (2) that Hartford has failed to honor its defense obligations to CRN with respect to the Underlying Action, and (3) that CRN was entitled to a declaratory judgment that Hartford was obliged to defend CRN in the Underlying Action and to reimburse its defense costs. Complaint ¶¶ 42-44. CRN sought in separate Causes of Action damages for breach of contract and for breach of the duty of good faith and fair dealing. *Id.* ¶¶ 45-56.

In their initial report to the Court, the parties agreed that the issue of whether Hartford had a duty to defend the Underlying Action was an issue of law that could be decided by the

Court on summary judgment.[1]  Based on that, the Court agreed with Hartford that the issue could be decided on an expedited basis without need of initial disclosures or discovery, and entered a Scheduling Order providing for filing of cross-motions on the issue of the duty to defend (Dkt. 11, as amended per minute entry of Jan. 11, 2007).  The Court granted CRN's motion for summary judgment on the duty to defend and denied Hartford's motion on July 12, 2007.

## II.    ARGUMENT

### A.    The Court Should Direct Entry of Judgment with Respect to CRN's First Cause of Action Seeking a Declaratory Judgment on the Duty to Defend

Under applicable standards, the Court's Order fully adjudicates a segregable "claim" in a multiple-claim case, and there is no just reason for delay in entering final judgment as to that claim.

#### 1.    The Standard for Entering Final Judgment Under Rule 54(b)

##### i.    Determination of "Finality"

Rule 54(b) of the Federal Rules of Civil Procedure provides, in relevant part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

---

[1] Dkt. 10. As the parties stated:

> The parties agree that the issue of whether Hartford has a duty to defend the Underlying Action can be resolved as a matter of law based on facts that are not in dispute. Furthermore, the parties acknowledge that if the Court rules that Hartford has no duty to defend, Plaintiffs' remaining claims (for contract damages and for breach of the duty of good faith and fair dealing) would necessarily fail, and the case at that point should be dismissed. Accordingly, an early dispositive motion could resolve the entire case.

*Id.* at 3.

The District Court's discretion as to whether to certify a decision as "final" is not unfettered, however.

> The District Court *cannot*, in the exercise of its discretion, treat as 'final' that which is not 'final' within the meaning of [28 U.S.C.] § 1291. But the District Court *may*, by the exercise of its discretion in the interest of sound judicial administration, release for appeal final decisions upon one or more, but less than all, claims in multiple claims actions.

*Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956). The District Court must determine whether the judgment is " 'final' in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7 (1980). The D.C. Circuit has used *res judicata* doctrine to determine whether a claim is separate from other claims in an action, such that its resolution is "final." *See Tolson v. United States*, 732 F.2d 998, 1001-02 (D.C. Cir. 1984) (citing the *res judicata* analysis of *Gold Seal Co. v. Weeks*, 209 F.2d 802, 809-10 (D.C. Cir. 1954) as the "circuit's leading decision on the definition of a claim within the meaning of Rule 54(b)"); *Taylor v. FDIC*, 132 F.3d 753, 760 n.2 (D.C. Cir. 1997) (citing *Tolson*). Under that analysis, if the plaintiff could have maintained successive suits that separately alleged each of the claims in the complaint, such that resolution of one claim would not constitute *res judicata* with respect to the later claims, a resolution of that one claim as part of a multiple-claims action is "final" for purposes of Rule 54(b). *Tolson*, 732 F.2d at 1002.

Courts have recognized that resolution of a claim for a declaratory judgment included among other claims in a complaint is "final" for purposes of Rule 54(b). For example, in *Horn v. Transcon Lines, Inc.*, 898 F.2d 589, 594 (7th Cir. 1990), the court said, "A judgment declaring that an insurance company is obliged to defend and indemnify a person is 'final' and appealable in stand-alone litigation, even though the amount of indemnity remains to be quantified. . . . A

conclusive resolution of the duty to defend and indemnify is accordingly appealable under Rule 54(b). . . ."[2]  The Third Circuit similarly observed that "Rule 54(b) may be used to grant final judgment status over a declaratory judgment action which is part of a multi-claim litigation, so long as the declaratory judgment aspect of the litigation has in fact been brought to final judgment."  *National Union Fire Ins. Co. v. City Savings, F.S.B.*, 28 F.3d 376, 381 n.3 (3d Cir. 1994).  *See also Neuberger Herman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 225 F.R.D. 171, 174 (D. Md. 2004) (certifying declaratory judgment under Rule 54(b)).

Indeed, under the D.C. Circuit's standard for determining finality for Rule 54(b), which looks to whether the resolution of the claim at issue would bar assertion of other claims in the complaint were they brought in successive actions, a successful claim for declaratory judgment is "final" even if other claims for other coercive relief are sought, since a successful claim for declaratory judgment is *never* preclusive of further claims on the matters declared.  *Horn & Hardart Co. v.  National Rail Passenger Corp.*, 843 F.2d 546, 549 (D.C. Cir. 1988).  This "declaratory judgment" exception to normal rules of claim preclusion applies because any other rule would require joinder of all available claims for damages and theories of relief in a declaratory judgment complaint and thereby defeat the beneficial purposes for which the Declaratory Judgment Act was passed.  *See id.;* Restatement (Second) of Judgments § 33 (1982).  Since granting a plaintiff's claim for declaratory judgment cannot operate as *res judicata* to bar

---

[2] *Horn* ultimately reversed the trial court's ruling finding the declaratory judgment at issue final for purpose of Rule 54(b) because a bad faith claim was unresolved.  898 F.2d at 593.  It appears, however, that the Seventh Circuit follows a different standard than the D.C. Circuit regarding determining "finality," as it looks to whether issues "with sufficient factual and legal overlap . . . could generate successive appeals on the same topic," *id.*, rather than whether the claims are distinct for purposes of *res judicata*, or claim preclusion.  Under the latter standard, as discussed below, a successful claim for declaratory judgment is never preclusive of later claims for damages or other coercive relief, because those claims are not required to be joined with the declaratory judgment claim.  *Horn & Hardart Co. v. National Rail Passenger Corp.*, 843 F.2d 546, 549 (D.C. Cir. 1988).

the assertion of additional claims arising out of the same subject matter, such a ruling is "final,"

for Rule 54(b) purposes, under the D.C. Circuit's standard for finality under that rule.

### ii.      Determination of "No Just Reason for Delay"

In addition to determining that a decision is "final," a District Court must also make the

"express determination" that "there is no just reason for delay" in entering judgment.  That

determination is directed to the discretion of the District Court.  *Curtiss-Wright*, 446 U.S. at 10-

11.  The District Court may consider many factors in making that determination, including

whether an "early appeal may avoid the need for further proceedings in the district court."  10

Charles A. Wright, Arthur W. Miller & Mary Kay Kane, *Federal Prac. & Proc.: Civil* § 2659 at

125 (3d ed. 1998); *see also Alcan Aluminum Corp. v. Carlsberg Fin. Corp.*, 689 F.2d 815 (9th

Cir. 1982) (summary judgment order appealable under Rule 54(b) because appeal could make

further litigation unnecessary); *Neuberger Herman*, 225 F.R.D. at 175 (entering Rule 54(b) final

judgment in part because "appellate resolution of the poison pill issue could effectively eliminate

further proceedings in this case, and thereby conserve judicial resources").

### 2.      The Court's Order Is "Final" as to a "Claim" and There Is No Just Reason for Delay of Entry of Judgment

Under the foregoing standards, the Court's Order clearly is "final" as to a "claim" under

Rule 54(b), and there is no just reason for delay of entry of judgment.  The Order grants CRN's

motion for summary judgment, declaring that Hartford had a duty to defend the Underlying

Action (and denies Hartford's cross-motion that it had no such obligation).  It therefore

completely resolves CRN's First Cause of Action.  More importantly, that cause of action is

segregable from other claims in the Complaint.  Because that claim seeks a declaratory

judgment, CRN's success on that claim could not operate as *res judicata* to bar assertion of

additional claims that CRN may have on the matters declared.  *Horn & Hardart*, 843 F.2d at

549.  Under the D.C. Circuit's standard for determining "finality" under Rule 54(b), therefore, a resolution of that claim is "final" even though other claims remain unresolved.  *See Tolson*, 732 F.2d at 1001-02.

In addition, if Hartford were to prevail on appeal on the issue of whether it had a duty to defend the Underlying Action, CRN's remaining claims would be moot and subject to dismissal, obviating the need to expend the Court's and the parties' resources in discovery and trial (assuming, of course, the Court also grants a stay of proceedings pending appellate review).  This factor alone demonstrates there is no just reason for delay in entering final judgment on that claim.

Accordingly, the Court should direct entry of final judgment on CRN's First Cause of Action and expressly determine there is no just reason for delay in doing so.

> **B.    The Court Should Certify its Order as Involving a Controlling Question of Law Appropriate for Interlocutory Review**

The Court's Order separately qualifies for interlocutory appeal under the distinct standards of 28 U.S.C. § 1292(b).

> **1.    The Factors for Certifying an Issue for Interlocutory Appeal Under 28 U.S.C. § 1292(b)**

Although piecemeal appeals are discouraged through limitation on the Courts of Appeals' general jurisdiction to hear appeals of "final decisions" of the District Courts, 28 U.S.C. § 1291, interlocutory appeals of "controlling questions of law" are permitted when certified by the District Court and when discretionary review is accepted by the Court of Appeals, *id.* § 1292(b).  That section provides:

> (b) When a district judge, in making in a civil action an order not
> otherwise appealable under this section, shall be of the opinion that
> such order involves a controlling question of law as to which there

> is substantial ground for difference of opinion and that an
> immediate appeal from the order may materially advance the
> ultimate termination of the litigation, he shall so state in writing in
> such order.  The Court of Appeals which would have jurisdiction
> of an appeal of such action may thereupon, in its discretion, permit
> an appeal to be taken from such order, if application is made to it
> within ten days after the entry of the order; *Provided, however*,
> That application for an appeal hereunder shall not stay proceedings
> in the district court unless the district judge or the Court of Appeals
> or a judge thereof shall so order.

Accordingly, there are three basic questions the Court must determine to certify an order for interlocutory review: (1) does the order involve a "controlling question of law"; (2) is there "a substantial ground for difference of opinion" with respect to that question; and (3) might immediate appeal "materially advance the ultimate termination of the litigation"?

In this case, Hartford respectfully suggests there is no dispute that the Order involves a "controlling question of law," since the parties and the Court agreed at the outset of the litigation that the issue of whether Hartford had a duty to defend was a pure "issue of law" which the Court could resolve on summary judgment.  Furthermore, there is no dispute that this issue of law must be decided in CRN's favor for its remaining claims to have any vitality.  *See* Initial Report of Plaintiffs and Defendant, Dkt. 10 at 3 ("the parties acknowledge that if the Court rules that Hartford has no duty to defend, Plaintiffs' remaining claims (for contract damages and for breach of the duty of good faith and fair dealing) would necessarily fail, and the case at that point should be dismissed").  Therefore, this issue is "controlling."[3]

Hartford also respectfully suggests that there is no dispute that an immediate appeal may materially advance the ultimate termination of the litigation, precisely because the issue is

---

[3] *See generally* 16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Prac. & Proc.: Jurisdiction* § 3930 at 426-28 (2d ed. 1996) ("the better view [is] that a question is controlling, even though its disposition might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants;" "If summary judgment rulings depend more on questions of law than investigation of the record for genuine issues, however, interlocutory appeal may be appropriate. . . .")

controlling: If the issue were decided in Hartford's favor, the case would be over, and the

discovery, expert discovery, motions and trial contemplated by the parties with respect to CRN's

remaining claims would be unnecessary.[4]

Accordingly, Hartford addresses the second of the "basic questions" listed above,

whether there is a "substantial ground for difference of opinion" with respect to the question of

law decided by the Court.

> **2.     There Is a Substantial Ground for Difference of Opinion Regarding Whether Hartford Had a Duty to Defend a Suit Alleging, Under New York Law, Defamation Arising out of a Government Petition and Related Public Statements**

Hartford respectfully suggests that there is a substantial ground for difference of opinion

with respect to the question of law decided in the Order, *i.e.*, that Hartford had a duty to defend a

suit alleging, under New York law, defamation arising out of government petitioning activity and

related public statements.  Hartford is aware of no other decision (published or unpublished)

squarely addressing whether an insurer has a duty to defend when the underlying action alleges

defamation arising out of petitioning activity.  As Hartford emphasized over many pages of its

briefs, the factual context of the alleged defamation is important because, under the substantive

law at issue (New York's), that context could give rise to a claim for defamation only if the

plaintiff alleged intent to injure.[5]  This requirement to plead intent to injure was necessary to

state a claim, Hartford argued, because the factual context of petitioning the government and

making public statements about it was absolutely privileged under New York law, *unless* the

---

[4] "The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law."  *Id.* at 432.
[5] Dkt. 14 at 21-29; Dkt. 16 at 4-8, 19-21; Dkt. 17 at 1-8.

plaintiff alleged that the petition was filed as a pretext and was a sham, such that the privilege did not arise.

The Court's Memorandum Opinion of July 12, 2007 ("Mem. Op.") asserts that Hartford's argument on this score relies on "the possibility of a successful defense," and looks "outside the 'eight corners' of the documents." Mem. Op. at 12 & n.4. Hartford respectfully disagrees and notes that its argument relies on the allegations pleaded. As a recent case, cited by the Court itself in its Memorandum Opinion, makes clear, to state a claim a plaintiff must allege lack of privilege as a *pleading requirement*. *Rapp v. Robinson*, No. 115574/06, 2007 N.Y. Misc. LEXIS 4773 (Sup. Ct. New York Co. July 6, 2007) ("To establish a cause of action for defamation, plaintiff must show that (1) defendant made a false statement, (2) which was publicized *without privilege*. . . .") (emphasis added). *Rapp* cited the Restatement (Second) of Torts § 558, which states in part: "To create liability for defamation there must be (a) a false and defamatory statement concerning another; (b) *an unprivileged publication* to a third party. . . ." (Emphasis added.) Failure to allege facts to show lack of privilege subjects a complaint to a motion to dismiss—that is, prior to assertion of *any* defenses. *Branca v. Mayesh*, 63 N.Y.2d 994, 483 N.Y.S.2d 1011, 473 N.E.2d 261 (1984), *aff'g for the reasons stated in* 101 A.D.2d 872, 873, 476 N.Y.S.2d 187, 189 (2d Dept. 1984). In *Branca*, the New York Court of Appeals, adopting the reasoning of the Appellate Division, required a motion to dismiss a defamation claim to be granted because the plaintiff had failed to allege facts to support lack of privilege. Specifically, the allegations of the complaint showed the statements at issue were part of judicial proceedings, which gave rise to the absolute privilege under Section 74 of the New York Civil Rights Law. 101 A.D.2d at 873, 476 N.Y.S.2d at 188. The plaintiff claimed that the case was subject to the sham exception to that privilege. *Id.* The court disagreed, because facts to support lack of

privilege had not been pleaded: The sham exception "is inapplicable here *in the absence of any allegation* that the District Court action was brought maliciously and solely for the purpose of later defaming the plaintiff." *Id.* at 873, 476 N.Y.S.2d at 189 (emphasis added).[6]  The court therefore reversed the trial court and required dismissal for failure to plead lack of privilege.

Because of this pleading requirement under New York law, Hartford's position is that Consumerlab *had to allege* intent to injure in order to plead *lack of privilege*, precisely because the allegations of the complaint showed that the alleged defamatory statements were made in connection with submitting a government petition and gave rise to at least three absolute privileges, and failure to allege facts showing lack of privilege, in that context, would fail to state a claim.  Because allegation of lack of privilege is a pleading requirement, Hartford's argument on how applicable privileges confined what claims were legally possible lies squarely within the "eight corners" of the underlying complaint and the Policy and does not rest on anticipated defenses.  It looks to what claim was *legally possible*, given the alleged facts, not whether CRN had a meritorious defense.  As Hartford stated, "Plaintiffs may have had a meritorious defense, but is nonetheless a defense for an uncovered claim."  Dkt. 17 at 10.  Hartford made clear that the only claim that was legally possible on the facts alleged required intent to injure, and was therefore excluded.  In other words, given that Consumerlab alleged defamation arising out of a government petition and related public statements, to state a claim *it had to allege* the petition was a pretext and sham, filed for the purpose of injuring Consumerlab, to plead *lack of privilege*.[7]

---

[6] The scenario in *Branca* is exactly what happened here: CRN moved to dismiss the underlying complaint for failure to state a claim because, it argued, the facts alleged did not demonstrate lack of privilege.

[7] The Court did not discuss Hartford's argument with respect to two out of the three absolute privileges at issue: (1) the common law absolute privilege for statements in judicial or quasi-judicial proceedings; or (2) the statutory privilege for "fair reports" of judicial proceedings under Section 74 of the New York Civil Rights Law.  In addition, with respect to the *Noerr-Pennington* privilege, the Court stated that "it is not clear" that CRN would have a defense

[Footnote cont'd . . .]

The Court's recognition that allegation of lack of privilege is an element of defamation under New York law (Mem. Op. at 9) is difficult to reconcile with its characterization of Hartford's argument—which focused on what Consumerlab had to plead regarding lack of privilege—as relying on the "possibility of a successful defense" and as going "outside the 'eight corners' of the documents," (Mem. Op. at 12 & n.4). This creates a substantial ground for difference of opinion.

Moreover, the fact that it was legally impossible for Consumerlab to allege defamation *without* alleging intent to injure distinguishes this case from *American Cont'l Ins. Co. v. Pooya*, 666 A.2d 1193 (D.C. 1995), in which the court found *it was possible* for the insured to be liable without intent to injure. The Court did not discuss Hartford's argument on this point. This also creates a substantial ground for difference of opinion.

Finally, Hartford is aware of only one other decision construing the policy language at issue here—which is distinct from the language at issue in many other cases, in that it excludes coverage when the insured acted "with the *expectation* of inflicting" injury, rather than with the *"intention"* of doing so. That decision, the *Freightquote* decision,[8] agreed with Hartford that this language excludes coverage when the insured committed an action whose "natural and probable consequence" was the alleged injury.[9] As Hartford argued, that language therefore operates to make the scope of coverage here like that afforded under traditional "occurrence" definitions, because injury that is "expected or intended" from the standpoint of the insured is

---

[Footnote continued]

with respect to statements made outside the original FTC petition (Mem. Op. at 12 n.4). The Court did not address, however, Hartford's arguments that (1) "The *Noerr-Pennington* doctrine immunizes direct statements to the government *as well as statements made in the course of a campaign designed to influence public opinion*" (Dkt. 14 at 23 (emphasis added)); or (2) "Section 74 [of the Civil Rights law] applies to a party's circulation of pleadings to the media" as well as "release of background material" (*id.* at 28).

[8] *Freightquote.com, Inc., v. Hartford Cas. Ins. Co.*, 397 F.3d 888 (10th Cir. 2005).

[9] *Id.* at 894.

excluded from coverage.[10]  That language therefore distinguishes the Policy here from cases involving "offense-based" policies that do not contain an "expected or intended injury" exclusion.  *See, e.g., Fuisz v. Selective Ins. Co.*, 61 F.3d 238, 243-44 (4th Cir. 1995) (exclusion applied to "any act committed by or at the direction of an insured *with intent to cause* . . . personal injury") (emphasis added); *American Guar. and Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605, 612 (5th Cir. 2001) ("Coverage B" for "personal injury liability" contained *no* exclusion, for *either* expected or intended acts; court therefore concludes "under Coverage B, the triggering act may be *intentional*") (emphasis added).[11]  The Court's Order nevertheless treats Hartford's Policy as comparable to "offense-based" policies that do not contain such an exclusion, at issue in other cases, making reference to cases construing occurrence-based policies "inapposite." Mem. Op. at 11.

On this point, Hartford respectfully suggests there is substantial ground for difference of opinion, because it is not appropriate to end analysis of Hartford's Policy by categorizing it as being "offense-based," and thereby treat it like other policies, at issue in other cases, when those policies do not contain the exclusionary language that Hartford's Policy contains.  Rather, Hartford suggests the Court's role is to enforce the contract the parties made, including to enforce the exclusion at issue, which affords narrower coverage than that at issue in the cases cited by the Court, and provides coverage comparable to that at issue in "occurrence-based" policies.  By failing to give effect to the exclusion at issue here, and to recognize it affords narrower coverage than the language at issue in other cases, the Court's ruling essentially rewrites the Policy exclusion to substitute "intention" for "expectation" (or perhaps even deletes

---

[10] Dkt. 14 at 12-17.
[11] The Court relied on the Fifth Circuit's characterization of the policy at issue in *American Guarantee* to characterize Hartford's coverage here: "Offense-based coverage is triggered by the commission of the specified offense and does not require proof of an accidental occurrence."  Mem. Op. at 11 (citing *American Gurantee*).

the exclusion entirely).  This ruling puts the Court in disagreement with *Freightquote,* itself creating substantial ground for difference of opinion, and fails to give effect to the contract language under D.C. law.[12]

Accordingly, Hartford suggests that the Order involves a controlling question of law as to which there is substantial ground for difference of opinion, and that immediate appeal may materially advance the ultimate termination of the litigation.  Under 28 U.S.C § 1292(b), the Order should be certified for interlocutory review.

### C.    Proceedings in this Court Should Be Stayed

The advantage of early appeal of the Court's summary judgment ruling—the potential avoidance of unnecessary expense and activity if the Order were reversed—obviously would only be realized if trial court proceedings were stayed.  Accordingly, if either relief Hartford seeks in this motion is granted, Hartford also requests a stay of proceedings pending appellate review.

### III.    CONCLUSION

For the foregoing reasons, Hartford's motion to direct entry of judgment under Rule 54(b), or, in the alternative, to certify the Court's Order for interlocutory appeal under 28 U.S.C. § 1292(b), and to stay proceedings, should be granted.

Dated: Washington, D.C.
      August 3, 2007

---

[12] *Clayman v. Goodman Props. Inc.*, 518 F.2d 1026, 1037 (D.C. Cir. 1973) ("It is not our function . . . to rewrite their agreement. . . .  Our duty is to enforce the contract as made.").

Respectfully submitted,


_____/s/_____
Patrick F. Hofer, Bar No. 412665
TROUTMAN SANDERS LLP
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004
(202) 274-2950 (tel.)
*Counsel for Defendant Hartford Casualty Insurance Co.*